SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
ORI KATZ, Cal. Bar No. 209561
STEVEN B. SACKS, Cal. Bar No. 98875
ROBERT K. SAHYAN, Cal. Bar No. 253763
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109
Telephone:    415-434-9100
Facsimile:    415-434-3947
Email:        okatz@sheppardmullin.com
              ssacks@sheppardmullin.com
              rsahyan@sheppardmullin.com

Counsel for Debtors and Plaintiffs

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| CECCHI GORI PICTURES, a California corporation; CECCHI GORI USA, INC., a California corporation, | Bank. Case No.: 16-53499 (Jointly Administered with Case No. 16-53500) |
| Debtors, | Chapter 11 |
| | Adv. Case No.  17-05084 |
| CECCHI GORI PICTURES and CECCHI GORI USA, INC., | **DECLARATION OF CARLO DIPASQUALE** |
| Plaintiffs, | |
| v. | |
| GABRIELE ISRAILOVICI, an individual, GIOVANNI NAPPI, an individual, and KLAGI LIMITED (a/k/a KLAGI MANAGEMENT LIMITED and KLAGI LTD.), a Hong Kong corporation | |
| Defendants. | |

I, Carlo Dipasquale, declare:

1.     I am licensed as a real estate agent in the state of Florida and have been so licensed since 2005. I presently work for Cervera Real Estate as a realtor associate and perform most of my work in that capacity in and around Miami Beach, Florida. I served as the Manager of ISNA, LLC, a Florida limited liability company ("ISNA") from January 2013 to February 2014. I am a U.S. citizen and fluent in Italian. Except for those statements made upon information and belief, I have personal knowledge of the matters set forth in this declaration, and could and would testify competently to such matters if called as a witness.

2.     I received a phone call from Gabriele Israilovici in May of 2018. He and I spoke on that call and he told me that I would receive a subpoena for documents relating to ISNA. During the call Mr. Israilovici also told me that I should respond to the subpoena by stating that I did not have the documents or information being requested and that I would not be sending anything in response. I was on a trip to Mexico at the time of the call and told him I would look at the subpoena when I returned to Florida.

3.     When I returned to Florida from my trip I was served with a subpoena from counsel to Cecchi Gori Pictures and Cecchi Gori USA, Inc. (the "Subpoena"). Among other things, the Subpoena requested documents regarding ISNA. Despite Mr. Israilovici's instructions to the contrary, I did produce the documents I had in my possession that were requested in the Subpoena. A true and correct copy of the produced documents is attached to this declaration as Exhibit 1.

4.     I searched my email accounts for documents and communications responsive to the Subpoena. I did not find responsive emails as a result of that search. I believe such emails were deleted in the ordinary course because they were old and I was running into limitations on the number of emails I could save in my account without having to incur additional expense. The deletion of old emails is part of my usual practice.

5.     I was first introduced to Mr. Israilovici in 2012 via a mutual Italian contact. Mr. Israilovici asked me to help him find a property he could occupy on a short term rental

basis. I helped him find such a property on a one-month lease (later extended by a few weeks).

6. I was then asked in late 2012 by Mr. Israilovici to find a condominium in the Miami Beach area that he could purchase as a real estate investment. In or around December 2012, I began to serve as real estate agent to Mr. Israilovici. The representation culminated in ISNA's purchase of condominium unit #2403, 520 West Avenue, Miami Beach, Florida (the "ISNA Condo"). I believe neither Mr. Israilovici nor the other owner of ISNA, Giovanni Nappi, saw the ISNA Condo before it was purchased by ISNA.

7. I have agreed on several occasions to serve as a manager of a limited liability company for the purpose of such company purchasing real property in Miami Beach. I do this as an accommodation for my clients. At Mr. Israilovici's request, I agreed to serve as ISNA's manager in connection with its purchase of the ISNA Condo. Although I acted as manager, ISNA was owned by Mr. Israilovici and Mr. Nappi, and I only acted at their direction.

8. The actions I took as ISNA's manager were performed at the instruction of either Mr. Nappi or Mr. Israilovici, but primarily Mr. Israilovici. I had no financial interest in ISNA and received no distributions or payments from ISNA for my services as its manager. I did receive real estate commissions in connection with the purchase and sale transactions relating to the ISNA Condo.

9. During the period I served as ISNA's manager, ISNA had a bank account at Wells Fargo with an account number ending in 1048 (the "ISNA Account"). I was not aware of any another bank account for ISNA. I did not receive the bank statements for the ISNA Account and I did not view the business affairs of ISNA as any of my business since Mr. Nappi and Mr. Israilovici made the decisions for, and were in control of, ISNA.

10. Mr. Israilovici had a debit card for the ISNA Account. All withdrawals or transfers that I made from ISNA's account were done at Mr. Israilovici's direction. He would typically accompany me to the bank branch in person and give instructions to me in Italian regarding the ISNA Account. I never withdrew or transferred money from the

ISNA Account for my own benefit and never received any funds from the ISNA Account. My withdrawals were for the benefit of Mr. Israilovici.

11. I do not know how ISNA obtained the funds to purchase the ISNA Condo. I told Mr. Israilovici that to purchase the ISNA Condo he would need to arrange for a deposit, followed by the balance of the purchase price, to be wired into escrow by the purchaser. Mr. Israilovici confirmed that he understood this and would arrange to wire funds into escrow on ISNA's behalf to effectuate a closing of the purchase of the ISNA Condo.

12. The ISNA Condo was being rented out when it was purchased and continued to be rented out for several months following the closing of the sale. The rent proceeds from the tenant were deposited into the ISNA Account. To my knowledge, neither Mr. Israilovici nor Mr. Nappi ever lived in the ISNA Condo and the purchase of the ISNA Condo was intended for investment purposes.

13. Mr. Israilovici instructed me in late 2013 to put the ISNA Condo on the market. I did as he requested and served as real estate agent to ISNA in connection with its sale of the ISNA Condo (the "ISNA Condo Sale") for $1,363,000. As part of the ISNA Condo Sale and pursuant to Mr. Israilovici's instructions, I signed (i) a Residential Contract for Purchase and Sale and (ii) a Settlement Statement (together, the "Sale Documents") on behalf of ISNA in my role as manager of ISNA. True and correct copies of the Sale Documents are included in Exhibit 1.

14. The ISNA Condo Sale closed on January 15, 2014 and on that date $1,244,174.92 was deposited from escrow into the ISNA Account in connection with the closing. On January 22, 2014, at Mr. Israilovici's instruction, I wired $1,200,000 from the ISNA Account to the account of an entity called ISNA Trading Corporation ("ISNA Trading"). Attached to this declaration as Exhibit 2 is a true and correct copy of the Outgoing Wire Transfer Request that I executed (the "Wire Request"), by which I requested the transfer of these funds from the ISNA Account to the account of ISNA Trading. Mr. Israilovici accompanied me to the bank branch in person on the day of the

Wire Request.  He provided me with the information needed to complete the Wire Request, including the information regarding the recipient of the wire and the purpose of the funds.  While I do not recall whether he or I filled out the actual Wire Request form, I am certain that the information and instruction came from Mr. Israilovici.

15.     On at least two occasions shortly following the ISNA Condo Sale, I was instructed by Mr. Israilovici to accompany him to a Wells Fargo branch in the Miami Beach area to withdraw cash from the ISNA Account.  Under the instruction of Mr. Israilovici, I accompanied him to a Wells Fargo branch on or about January 17, 2014 and he withdrew $20,000 in cash from the ISNA Account.  This entire amount went directly to Mr. Israilovici.  I did not receive any of these funds.

16.     Upon the instruction of Mr. Israilovici, I again accompanied him to a Wells Fargo branch on or about January 24, 2014 and withdrew $14,000 in cash from the ISNA Account.  This entire amount also went directly to Mr. Israilovici.  I did not receive any of these funds.

17.     Upon Mr. Israilovici's instruction, in late January 2014 I wrote a check from the ISNA Account in the amount of $10,000 to Sun Trust Title, LLC ("Sun Trust").  These funds were paid to Sun Trust in connection with the purchase of condo number A-2 at 1605 Euclid Avenue, Miami Beach, Florida 33139 (the "Klagi Condo") by Klagi, LLC, a Florida limited liability company ("Klagi").  Other than this $10,000 check from the ISNA Account, I do not know how Klagi obtained the funds to purchase the Klagi Condo.

18.     I told Mr. Israilovici in or around late January 2014 that I would no longer act as manager of ISNA, in large part because of Mr. Israilovici's insistence that I accompany him to the bank on multiple occasions, which was taking up my time and was not what I was accustomed to doing for other clients.

1       19.    I served as real estate agent for Klagi in connection with its purchase of the

2 Klagi Condo. In this capacity I communicated directly with Mr. Nappi, who told me he

3 was the owner of Klagi.

4       20.    I again served as real estate agent for Klagi in connection with its sale of the

5 Klagi Condo in late 2014 to Giotec, LLC.

6       21.    Attached to this declaration as <u>Exhibit 3</u> are true and correct copies of checks

7 that I executed, which drew on funds in the ISNA Account. I executed these checks at the

8 instruction of Mr. Israilovici.

9       I declare under penalty of perjury under the laws of the United States of America

10 that the foregoing is true and correct.

11       Executed on this 22 day of June 2018, at Miami Beach, Florida.

12

13                             CARLO DIPASQUALE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 1**

6

**Carlo Dipasquale**
868 Commerce Street
Miami Beach, Florida 33139
Phone: ██████-5094
Email: carlomiami@gmail.com

May 23, 2018

***Sent Via Overnight Carrier – UPS Tracking No.1Z05088X0292674989 &***

***1Z05088X0294166195***

Sheppard, Mullin, Richter & Hampton LLP
c/o Tripp Scott Law
110 SE 6th Street
Suite 1500
Fort Lauderdale, FL 33301

Sheppard, Mullin, Richter & Hampton LLP
Attn: Ori Katz
4 Embarcadero Center
17th Floor
San Francisco, CA 94111
Phone: (415) 434 9100
Email: okatz@sheppardmullin.com

**Reason: Cecchi Gori Pictures, Inc & Cecchi Gori USA, Inc. - Case No. 16-53499 (Jointly administered with Case 16-53500)**

Dear Mr. Katz,

I am receipt of your subpoena dated May 17, 2018 related to the above referenced matter. Below, please find my response to the requested items. In the event you need additional assistance, please do not hesitate to contact me at ██████-5094.

*Items 1(a) - Any and all Documents for the Relevant Period under your Control Concerning Giotec, LLC.*

I am not in custody, possession, or control of responsive documents for item 1(a).

*Items 1(b) - Any and all Documents for the Relevant Period under your Control Concerning ISNA.*

I am not in custody, possession, or control of responsive documents for item 1(b).

7

CG_GD_00001

Items 1(c) - Any and all Documents for the Relevant Period under your Control Concerning ISNA Trading Corp.

I am not in custody, possession, or control of responsive documents for item 1(c).

Items 1(d) - Any and all Documents for the Relevant Period under your Control Concerning the ISNA Condominium Acquisition

Please see attached and/or enclosed items marked Exhibit A.

Items 1(e) - Any and all Documents for the Relevant Period under your Control Concerning the ISNA Condominium Sale.

Please see attached and/or enclosed items marked Exhibit B.

Items 1(f) - Any and all Documents for the Relevant Period under your Control Concerning the Klagi, LLC Condominium Acquisition.

Please see attached and/or enclosed items marked Exhibit C.

Items 1(g) - Any and all Documents for the Relevant Period under your Control Concerning the Klagi, LLC Condominium Sale.

Please see attached and/or enclosed items marked Exhibit D.

Items 1(h) - Any and all Documents for the Relevant Period under your Control Concerning the Giotec, LLC Condominium Acquisition.

Please see attached and/or enclosed items marked Exhibit D.

Items 1(i) - Any and all Documents for the Relevant Period under your Control Concerning any of the individuals named Vittorio Cecchi Gori, Giovanni Nappi, Gabriele Israilovici, Oscar Rey, and Oliver Nepomuceno.

I am not in custody, possession, or control of responsive documents for item 1(i).

Items 1(j) - Any and all Documents for the Relevant Period under your Control Concerning Oscar O. Rey CPA, P.A.

I am not in custody, possession, or control of responsive documents for item 1(j).

Items 1(k) - Any and all Documents for the Relevant Period under your Control Concerning Klagi.

I am not in custody, possession, or control of responsive documents for item 1(k).

8

GG-GD-0002

Items 1(l) - Any and all Documents for the Relevant Period under your Control Concerning Klagi, LLC.

I am not in custody, possession, or control of responsive documents for item 1(l).

Items 2 - Any and all Documents under your Control Concerning any communications during the Relevant Period between you and any other Person Concerning the items described in the foregoing Paragraphs l(a) through 1(l).

I am not in custody, possession, or control of responsive documents for item 2.

9

CG-CD00093

# **EXHIBIT A**

Case: 17-05084   Doc# 73   Filed: 07/01/19   Entered: 07/01/19 14:56:17   Page 11 of 140

CG-CD00004

# Contract for Residential Sale and Purchase



**1. SALE AND PURCHASE:** _____ Christopher Savine _____ ("Seller")

and GABRIELE ISRAILOVICI Gabriel Daniel and/or Assigns _____ ("Buyer")

(the "parties") agree to sell and buy on the terms and conditions specified below the property described as:

Street Address: _____ 520 West Ave., Apt# 2403 _____

City: Miami Beach    Zip Code: 33139    County: Dade

Legal Description: The BENTLEY BAY CONDOUNIT 2#403 BLDG S UNDIV 0.008013% INT IN COMMON

ELEMENTS OFF    Tax ID No.: ██████-0550

together with all existing improvements and attached items, including fixtures; built-in furnishings; major appliances (including but not limited to range(s), refrigerator(s), dishwasher(s), washer(s), and dryer(s)); __0__ (#) ceiling fans (all ceiling fans if left blank); light fixtures; attached wall-to-wall carpeting; and rods, draperies, and other window treatments as of date of Buyer's initial offer. The only other items included in the purchase are: _____

_____

_____

The following attached items are excluded from the purchase: _____

The real and personal property described above as included in the purchase is referred to as the "Property." Personal property listed in this Contract is included in the purchase price, has no contributory value, and is being left for Seller's convenience.

**2. PURCHASE PRICE:** $ 1,150,000.00 _____ payable by Buyer in U.S. currency as follows.

All deposits will be made payable to "Escrow Agent" named below and held in escrow by:

Escrow Agent's Name: SUN Trust TITLE

Escrow Agent's Address: 1507 B  S. UNIVERSITY Dr, PLANTATION FL 33324

Escrow Agent's Phone: ██████-9100

(a) $ 10,000.00 *Initial Deposit ($0 if left blank) (*Check if applicable)
  ☐ accompanies offer
  ☒ to be delivered to Escrow Agent within __3__ days (3 days if left blank) after Effective Date

(b) $ 105,000.00 Additional deposit to be delivered to Escrow Agent by _____ or within __10__ days (10 days if left blank) after Effective Date

(c) $ ____0____ Total Financing (see Paragraph 3 below) (express as a dollar amount or percentage)

(d) $ _____ Other: _____

(e) $ 1,035,000.00 Balance to close (not including Buyer's closing costs, prepaid items, and prorations). All funds paid at Closing must be paid by wire transfer or other Collected funds.

**3. FINANCING: (Check as applicable)**

☒ (a) Buyer will pay cash or obtain financing for the purchase of the Property. This Contract is not contingent on financing or appraised value unless otherwise stated herein.

☐ (b) Buyer will apply for new ☐ conventional ☐ FHA ☐ VA ☐ other (specify) _____ financing specified in Paragraph 2(c) at the prevailing interest rate and loan costs based on Buyer's creditworthiness (the "Financing") within _____ days (5 days if left blank) after Effective Date and provide Seller with either a written Financing commitment or approval letter ("Commitment") or written notice that Buyer is unable to obtain a Commitment within _____ days (the earlier of 30 days after Effective Date or 5 days before Closing Date if left blank) after Effective Date ("Commitment Period"). Buyer will keep Seller and Broker fully informed about loan application status, progress, and Commitment issues and authorizes the mortgage broker and lender to disclose all such information to Seller and Broker. If, after using diligence and good faith, Buyer is unable to obtain a Commitment and provides Seller with written notice before expiration of the Commitment Period that Buyer is unable to obtain a Commitment, either party may thereafter cancel this Contract; and

Buyer ( ) ( ) and Seller ( ) ( ) acknowledge receipt of a copy of this page, which is Page 1 of 9.

CRSP-12  ©2012 Florida Association of Realtors®  All Rights Reserved

Buyer's deposit(s) will be refunded. Buyer's failure to timely provide Seller with written notice that Buyer is unable to obtain a Commitment will result in forfeiture of Buyer's deposit(s) if Buyer fails to close. Once Buyer provides the Commitment to Seller, the financing contingency is waived and Seller will be entitled to retain the deposit(s) if the transaction does not close by the Closing Date unless (i) the Property appraises below the purchase price and either the parties cannot agree on a new purchase price or Buyer elects not to proceed, or (ii) the property related conditions of the Commitment have not been met (except when such conditions are waived by other provisions of this Contract), or (iii) the loan is not funded due to financial failure of Buyer's lender, or (iv) another provision of this Contract provides for cancellation.

**4. CLOSING DATE; OCCUPANCY:** Unless the Closing Date is specifically extended by Seller and Buyer or by any other provision in this Contract, the Closing Date will prevail over all other time periods including, but not limited to, financing and inspection periods. Closing of this Contract (the "Closing") will occur on/or before February 28, 2013 ("Closing Date") at the time established by the Closing Agent, by which time Seller will (i) have removed all personal items and trash from the Property and swept the Property clean and (ii) deliver the deed, occupancy, and possession, along with all keys, garage door openers, and access codes to Buyer. If on Closing Date insurance underwriting is suspended, Buyer may postpone Closing for up to 5 days after the insurance suspension is lifted. If on Closing Date funding from Buyer's lender(s) is not available due to Truth in Lending Act (TILA) notice requirements, Buyer may postpone Closing for up to 5 days if necessary to satisfy TILA notice requirements. If this transaction does not close for any reason, Buyer will immediately return all Seller-provided title evidence, surveys, association documents, and other items, failing which Buyer authorizes Closing Agent to reimburse Seller $_____ ($100 if left blank) from the deposit(s) for the cost of the documents.

**5. CLOSING PROCEDURE; COSTS:** Closing will take place in the county where the Property is located and may be conducted by mail or electronic means. If title insurance insures Buyer for title defects arising between the title binder effective date and recording of Buyer's deed, Closing Agent will disburse at Closing the net sale proceeds to Seller and brokerage fees to Broker as per Paragraph 19. In addition to other expenses provided in this Contract, Seller and Buyer will pay the costs indicated below.

(a) **Seller Costs:**
Taxes and surtaxes on the deed
Recording fees for documents needed to cure title
Repairs and Permits: Seller will pay up to $_____0.00_____ or _____ % (1.5% if left blank) of the purchase price for repairs to warranted items ("Repair Limit"); and up to $_____ or _____ % (1.5% if left blank) of the purchase price for wood-destroying organism treatment and repairs ("WDO Repair Limit"); and up to $_____ or _____ % (1.5% if left blank) of the purchase price for costs associated with closing out open permits and obtaining required permits for unpermitted existing improvements ("Permit Limit").
Other:_____

(b) **Buyer Costs:**
Taxes and recording fees on notes and mortgages
Recording fees on the deed and financing statements
Loan expenses
Lender's title policy
Inspections
Survey
Flood insurance, homeowner's insurance, hazard insurance
Other_____

(c) **Title Evidence and Insurance:** If Seller has an owner's title policy covering the Property, Seller will provide a copy to Buyer and title agent within 5 days after Effective Date.
Check (1) or (2)
☒ (1) The title evidence will be a Paragraph 10(a)(1) owner's title insurance commitment. ☐ Seller will select the title agent and Closing Agent and will pay for the owner's title policy, title search, including tax and lien search; and all other fees charged by title agent and Closing Agent or ☒ Buyer will select the title agent and Closing Agent and pay for the owner's title policy; title search, including tax and lien search; and all other fees charged by title agent and Closing Agent or ☐ Buyer will select the title agent and Closing Agent, and Seller will pay for the owner's title policy; title search, including tax and lien search; and all other fees charged by title agent and Closing Agent.
☐ (2) Seller will provide an abstract as specified in Paragraph 10(a)(2) as title evidence. ☐ Seller ☐ Buyer will pay for the owner's title policy and select the title agent and Closing Agent. Seller will pay fees for title searches, including tax and lien searches, before Closing, and Buyer will pay fees for title searches, including tax and lien searches, after Closing (if any) and all other fees charged by title agent and Closing Agent.



Buyer (____) (____) and Seller (____) (____) acknowledge receipt of a copy of this page, which is Page 2 of 9
CRSP-12  ©2012 Florida Association of Realtors®  All Rights Reserved

(d) **Prorations:** The following items will be made current (if applicable) and prorated as of the day before Closing: real estate taxes (including special benefit tax assessments imposed by a community development district ("CDD")), interest, bonds, assessments, association fees, insurance, rents, and other current expenses and revenues of the Property. If taxes and assessments for the current year cannot be determined, taxes will be prorated on the basis of taxes for the preceding year as of the day before Closing and will be computed and readjusted, at either party's request, when the current taxes are determined with adjustment for exemptions and improvements. If there are completed improvements on the Property by January 1 of the year of the Closing, which improvements were not in existence on January 1 of the prior year, taxes will be prorated based on the prior year's millage and at an equitable assessment to be agreed upon by the parties before Closing, failing which, request will be made to the County Property Appraiser for an informal assessment taking into consideration available exemptions. If the County Property Appraiser is unable or unwilling to perform an informal assessment before Closing, **Seller** and **Buyer** will split the cost of a private appraiser to perform an assessment before Closing. Nothing in this Paragraph will act to extend the Closing Date. This provision will survive Closing.

(e) **Special Assessment by Public Body:** Regarding special assessments imposed by a public body, **Seller** will pay (i) the full amount of liens that are certified, confirmed, and ratified before Closing and (ii) the amount of the last estimate of the assessment if an improvement is substantially completed as of Effective Date but has not resulted in a lien before Closing; and **Buyer** will pay all other amounts. If special assessments may be paid in installments ☐ **Seller** ☒ **Buyer** (**Buyer** if left blank) **will** pay installments due after Closing. If Seller is checked, Seller will pay the assessment in full before or at the time of Closing. Public body does not include a Homeowners' Association or Condominium Association. (Paragraph 5(e) does not apply to a special benefit tax lien imposed by a CDD pursuant to Chapter 190, Florida Statutes, which lien will be treated as an ad valorem tax and prorated pursuant to Paragraph 5(d).

(f) **Tax Withholding:** Seller and Buyer will comply with the Foreign Investment in Real Property Tax Act, which may require Seller to provide additional cash at Closing if **Seller** is a "foreign person" as defined by federal law.

(g) Home Warranty: ☐ **Seller** ☐ **Buyer** ☒ N/A will pay for a home warranty plan issued by _____ at a cost not to exceed $_____. A home warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in appliances in the event of breakdown due to normal wear and tear during the agreement period.

**6.** INSPECTION PERIODS: Buyer will complete all inspections referenced in Paragraphs 7(b), 8(a)(2), 8(b), and 8 (c) by _____ (the earlier of 10 days after Effective Date or 5 days before Closing Date if left blank) ("Inspection Period").

**7.** REAL PROPERTY DISCLOSURES: Seller represents that Seller does not know of any facts that materially affect the value of the Property, including but not limited to violations of governmental laws, rules, and regulations, other than those that Buyer can readily observe or that are known by or have been disclosed to Buyer.

(a) **Energy Efficiency:** Buyer acknowledges receipt of the energy-efficiency information brochure required by Section 553.996, Florida Statutes.

(b) **Radon Gas:** Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Radon levels that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit. Buyer may, within the Inspection Period, have an appropriately licensed person test the Property for radon. If the radon level exceeds acceptable EPA standards, Seller may choose to reduce the radon level to an acceptable EPA level, failing which either party may cancel this Contract.

(c) **Flood Zone:** Buyer is advised to verify by survey, with the lender, and with appropriate government agencies which flood zone the Property is in, whether flood insurance is required, and what restrictions apply to improving the Property and rebuilding in the event of casualty. If the Property is in a Special Flood Hazard Area or Coastal High Hazard Area and the buildings are built below the minimum flood elevation, **Buyer** may cancel this Contract by delivering written notice to **Seller** within 20 days after Effective Date, failing which **Buyer** accepts the existing elevation of the buildings and zone designation of the Property.

(d) **Homeowners' Association:** If membership in a homeowners' association is mandatory, an association disclosure summary is attached and incorporated into this Contract. **BUYER SHOULD NOT SIGN THIS CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE DISCLOSURE SUMMARY.**

(e) **PROPERTY TAX DISCLOSURE SUMMARY:** BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT BUYER MAY BE OBLIGATED TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S OFFICE FOR FURTHER INFORMATION.

Buyer (____) (____) and Seller (____) (____) acknowledge receipt of a copy of this page, which is Page 3 of 9.
CRSP-13 © 2015 Florida Association of Realtors®  All Rights Reserved

Initial

13

Case: 17-05084    Doc# 73    Filed: 07/01/19    Entered: 07/01/19 14:56:17    Page 14 of 140
CG-CP00007

(f) **Mold:** Mold is part of the natural environment that, when accumulated in sufficient quantities, may present health risks to susceptible persons. For more information, contact the county indoor air quality specialist or other appropriate professional.

(g) **Coastal Construction Control Line:** If any part of the Property lies seaward of the coastal construction control line as defined in Section 161.053, Florida Statutes, Seller will provide Buyer with an affidavit or survey as required by law delineating the line's location on the Property, unless Buyer waives this requirement in writing. The Property being purchased may be subject to coastal erosion and to federal, state, or local regulations that govern coastal property, including delineation of the coastal construction control line, rigid coastal protection structures, beach nourishment, and the protection of marine turtles. Additional information can be obtained from the Florida Department of Environmental Protection, including whether there are significant erosion conditions associated with the shoreline of the Property being purchased.
[X] Buyer waives the right to receive a CCCL affidavit or survey.

**8. MAINTENANCE, INSPECTIONS, AND REPAIR:** Seller will keep the Property in the same condition from Effective Date until Closing, except for normal wear and tear ("Maintenance Requirement") and repairs required by this Contract. Seller will provide access and utilities for Buyer's inspections and appraisals. Seller will repair all damages to the Property resulting from the inspections, return the Property to its pre-inspection condition, and provide Seller with paid receipts for all work done on the Property upon its completion. If Seller is unable to complete required repairs or treatments or meet the Maintenance Requirement before Closing, Seller will give Buyer a credit at Closing for the cost of the repairs and maintenance Seller was obligated to perform. At Closing, Seller will assign all assignable repair and treatment contracts to Buyer and provide Buyer with paid receipts for all work done on the Property pursuant to the terms of this Contract.

(a) *Warranty, Inspections, and Repair:*

(1) **Warranty:** Seller warrants that non-leased major appliances; heating, cooling, mechanical, electrical, security, sprinkler, septic, and plumbing systems; seawall; dock; and pool equipment, if any, are and will be maintained in working condition until Closing; that the structures (including roofs, doors, and windows) and pool, if any, are structurally sound and watertight; and that torn or missing screens, missing roof tiles, and fogged windows will be repaired or replaced. Limited remaining life of any warranted item will not be considered a defect that must be repaired or replaced by Seller. Seller does not warrant and is not required to repair cosmetic conditions, unless the cosmetic condition resulted from a defect in a warranted item. Seller is not obligated to bring any item into compliance with existing building code regulations unless necessary to repair a warranted item. "Working condition" means operating in the manner in which the item was designed to operate and "cosmetic conditions" means aesthetic imperfections that do not affect the working condition of the item, including pitted marcite; tears, worn spots, and discoloration of floor coverings/wallpapers/window treatments; caulking in bathroom; nail holes, scratches, dents, scrapes, and chips in ceilings/walls/flooring/tile/ fixtures/mirrors; cracked roof tiles; curling or worn shingles; and minor cracks in floor tiles/windows/driveways/ sidewalks/pool decks/garage and patio floors.

(2) **Professional Inspection:** Buyer may, **at Buyer's expense, have warranted items inspected by a person who specializes in and holds a license (if required by law) to conduct home inspections or who holds a Florida license to repair and maintain the items inspected ("professional inspector").** Buyer must, within 5 days after the end of Inspection Period, deliver written notice of any items that are not in the condition warranted and **a copy of the portion of the inspector's written report dealing with such items to Seller.** If Buyer fails to **timely deliver** written notice, Buyer waives Seller's warranty and accepts the items listed in Subparagraph **(a)** above in their "as is" conditions, except that Seller must meet the Maintenance Requirement.

(3) **Repair:** Seller will obtain repair estimates and is obligated only to make repairs necessary to bring warranted items into the condition warranted, up to the Repair Limit. Seller may, within 5 days after receipt of Buyer's notice of items that are not in the condition warranted, have a second inspection made by a professional inspector and will report repair estimates to **Buyer.** If the first and second inspection reports differ and the parties cannot resolve the differences, **Seller** and **Buyer** together will choose, and equally split the cost of, a third inspector, whose written report will be binding on the parties. If the cost to repair warranted items equals or is less than the Repair Limit, **Seller** will have the repairs made in a workmanlike manner by an appropriately licensed person. If the cost to repair warranted items exceeds the Repair Limit, either party may cancel this Contract unless either party pays the excess or **Buyer** designates which repairs to make at a total cost to **Seller** not exceeding the Repair Limit and accepts the balance of the Property in its "as is" condition.

(b) **Wood-Destroying Organisms:** "Wood-destroying organism" means arthropod or plant life, including termites, powder-post beetles, oldhouse borers, and wood-decaying fungi, that damages or infests seasoned wood in a structure, excluding fences. Buyer may, at Buyer's expense, have the Property inspected by a Florida-licensed pest control business to determine the existence of past or present wood-destroying organism infestation

Buyer (_____) (_____) and Seller (_____) (_____) acknowledge receipt of a copy of this page, which is Page 4 of 9.
CRSP-2  ©2012 Florida Association of Realtors®  All Rights Reserved

Case: 17-05084    Doc# 73    Filed: 07/01/19    Entered: 07/01/19 14:56:17    Page 15 of 140

CG-CB00008

and damage caused by infestation. If the inspector finds evidence of infestation or damage, Buyer will deliver a copy of the inspector's written report to Seller within 5 days after the date of the inspection. If Seller previously treated the Property for the type of wood-destroying organisms found, Seller does not have to treat the Property again if (i) there is no visible live infestation and (ii) Seller transfers to Buyer at Closing a current full treatment warranty for the type of wood-destroying organisms found. Seller will have 5 days after receipt of the inspector's report to have reported damage estimated by a licensed building or general contractor and corrective treatment, if required, estimated by a licensed pest control business. Seller will have treatments and repairs made by an appropriately licensed person at Seller's expense up to the WDO Repair Limit. If the cost to treat and repair the Property exceeds the WDO Repair Limit, either party may pay the excess, failing which either party may cancel this Contract by written notice to the other. If Buyer fails to timely deliver the inspector's written report, Buyer accepts the Property "as is" with regard to wood-destroying organism infestation and damage, subject to the Maintenance Requirement.

(c) **Permits:** Buyer may, at Buyer's expense, inspect and examine records and documents to determine whether any open or expired building permits or unpermitted improvements to the Property exist. Buyer will, before the end of the Inspection Period, deliver written notice to Seller of the existence of such; and Seller will remedy the reported items up to the Permit Limit and have final inspections completed no later than 5 days before Closing. If final inspections cannot be performed due to delays by the governmental entity, Closing will be extended for up to 10 days to complete such final inspections, failing which either party may cancel this Contract; and Buyer's deposit(s) will be refunded. At Closing, Seller will provide Buyer with written documentation that all reported items have been remedied. If the cost to remedy reported items exceeds the Permit Limit, either party may cancel this Contract unless either party pays the excess or Buyer accepts the Property in its "as is" condition and Seller credits Buyer at Closing the amount of the Permit Limit.

(d) **Walk-Through Inspection / Reinspection:** On the day before Closing or at any other time agreeable to the parties, Buyer, and/or Buyer's representative, **may walk** through the Property solely to verify that Seller has made repairs required **by this** Contract, has **met the Maintenance** Requirement, and has met contractual obligations. If Buyer, **and/or** Buyer's representative, **fails** to conduct this inspection, Seller's repair obligations and Maintenance Requirement will be deemed fulfilled.

**9. RISK OF LOSS:** If any portion of the Property is damaged by fire or other casualty before Closing and can be restored by Closing or within 45 days after Closing Date to substantially the same condition as it was on Effective Date, Seller will, at Seller's expense, restore the Property and deliver written notice to Buyer that Seller has completed the restoration; and the parties will close the transaction on the later of Closing Date or 10 days after Buyer receives Seller's notice. Seller will not be obligated to replace trees. If restoration cannot be timely completed, Buyer may cancel this Contract, and **Buyer's** deposit(s) will be refunded; or Buyer may accept the Property "as is" and Seller will credit the deductible and assign the insurance proceeds, if any, to Buyer at Closing in such amounts as are attributable to the Property and not yet expended in restoring the Property to the same condition as it was on Effective Date.

**10. TITLE:** Seller will convey marketable title to the Property by statutory warranty deed or trustee, personal representative, or guardian deed as appropriate to Seller's status.

(a) **Title Evidence:** Title evidence will show legal access to the Property and marketable title of record in Seller in accordance with current title standards adopted by **the Florida Bar**, subject only to the following title exceptions, none of which prevent residential use of the Property: covenants, easements, and restrictions of record; matters of plat; existing zoning and government regulations; oil, **gas,** and mineral rights of record if there is no right of entry; current taxes; mortgages that Buyer will assume; and encumbrances that Seller will discharge before or at Closing. The party paying for the owner's title policy will, at least 5 days before Closing, deliver to Buyer one of following types of title evidence (see Paragraph 5(c)), which must be generally accepted in the county where the Property is located. Seller will use option (2) in Miami-Dade County.

(1) **A title** insurance commitment issued by a Florida-licensed title insurer in the amount of the purchase price and subject only to title exceptions set forth in this Contract.
(2) An **existing** abstract **of title** from a reputable and existing abstract firm (if firm is not existing, then abstract must be certified as correct by an existing firm) purporting to be an accurate synopsis of the instruments affecting title to the Property recorded in the public records of the county where the Property is located and certified to Effective Date. However if such an abstract is not available to Seller, then a prior owner's title policy acceptable to the proposed insurer as a base for reissuance of coverage. **Seller** will pay for copies of all policy exceptions and an update in a format acceptable to Closing Agent from the policy effective date and certified to Buyer or Closing Agent, together with copies of all documents recited in the prior policy and in the update. If a prior policy is not available to Seller then (1) above will be the title evidence.

Buyer (_____) and Seller (_____) acknowledge receipt of a copy of this page, which is Page 5 of 9.
CRSP-12  ©2012 Florida Association of Realtors®   All Rights Reserved

Initial

15

Case: 17-05084    Doc# 73    Filed: 07/01/19    Entered: 07/01/19 14:56:17    Page 16 of 140

277     (b) Title Examination: Buyer will examine the title evidence and deliver written notice to Seller, within 5 days
278 after receipt of title evidence but no later than Closing Date, of any defects that make the title unmarketable.
279 Seller will have 30 days after receiving Buyer's notice of defects ("Curative Period") to cure the defects at
280 Seller's expense. If Seller cures the defects within the Curative Period, Seller will deliver written notice to Buyer
281 and the Closing will occur on Closing Date or within 10 days after Buyer receives Seller's notice if Closing Date
282 has passed. If Seller is unable to cure the defects within the Curative Period, Seller will deliver written notice to
283 Buyer and Buyer will, within 10 days after receiving Seller's notice, either cancel this Contract, extend Curative
284 Period for a specified period not to exceed 120 days, or accept title with existing defects and close the
285 transaction.
286     (c) Survey: Buyer may, at Buyer's expense, have the Property surveyed at least 5 days before Closing Date
287 and must deliver written notice to Seller within 5 days after receiving survey or title insurance commitment,
288 whichever is received later but no later than Closing, of any encroachments on the Property, encroachments by
289 the Property's improvements on other lands, or deed restriction or zoning violations. If Buyer timely delivers such
290 notice, any reported encroachment or violation will be treated in the same manner as a title defect, and Seller's
291 and Buyer's obligations will be determined in accordance with Subparagraph (b) above.

292 **11. EFFECTIVE DATE; TIME; FORCE MAJEURE:**
293     (a) Effective Date: The "Effective Date" of this Contract is the date on which the last of the parties initials or
294 signs and delivers the final offer or counter offer. Time is of the essence for all provisions of this Contract.
295     (b) Time: All time periods will be computed in business days (a "business day" is every calendar day except
296 Saturday, Sunday, and national legal holidays). If any deadline falls on a Saturday, Sunday, or national legal
297 holiday, performance will be due the next business day. All time periods will end at 5:00 p.m. local time (meaning
298 in the county where the Property is located) of the appropriate day.
299     (c) Force Majeure: Seller or Buyer will not be required to perform any obligation under this Contract or be liable
300 to each other for damages so long as the performance or non-performance of the obligation is delayed, caused,
301 or prevented by an "act of God" or "force majeure." An act of God or force majeure is defined as hurricanes,
302 earthquakes, floods, fire, unusual transportation delays, wars, insurrections, and any other cause not reasonably
303 within the control of the Seller or Buyer and which by the exercise of due diligence the non-performing party is
304 unable in whole or in part to prevent or overcome. All time periods, including Closing Date, will be extended (not
305 to exceed 30 days) for the period that the act of God or force majeure is in place. In the event that such act of
306 God or force majeure event continues beyond the 30-day period referenced in this Subparagraph, either party
307 may cancel this Contract by delivering written notice to the other, and Buyer's deposit(s) will be refunded.

308 **12. NOTICES:** All notices will be in writing and will be delivered to the parties and Broker by mail, personal delivery,
309 or electronic media. Except for the notices required by Paragraph 3 of this Contract, Buyer's failure to timely deliver
310 written notice to Seller, when such notice is required by this Contract, regarding any contingency will render
311 that contingency null and void, and this Contract will be construed as if the contingency did not exist. Any
312 notice, document, or item delivered to or received by an attorney or licensee (including a transaction broker)
313 representing a party will be as effective as if delivered to or received by that party.

314 **13. COMPLETE AGREEMENT:** This Contract is the entire agreement between Seller and Buyer. Except for
315 brokerage agreements, no prior or present agreements will bind Seller, Buyer, or Broker unless incorporated
316 into this Contract. Modifications of this Contract will not be binding unless in writing, signed or initialed, and
317 delivered by the party to be bound. Electronic signatures will be acceptable and binding. Signatures, initials, documents
318 referenced in this Contract, counterparts, and written modifications communicated electronically or on paper will be
319 acceptable for all purposes, including delivery, and will be binding. Handwritten or typewritten terms inserted in or
320 attached to this Contract prevail over preprinted terms. If any provision of this Contract is or becomes invalid or
321 unenforceable, all remaining provisions will continue to be fully effective. Seller and Buyer will use diligence and good
322 faith in performing all obligations under this Contract. This Contract will not be recorded in any public records.

323 **14. ASSIGNABILITY; PERSONS BOUND:** Buyer may not assign this Contract without Seller's written consent.
324 The terms "Seller," "Buyer," and "Broker" may be singular or plural. This Contract is binding on the heirs,
325 administrators, executors, personal representatives, and assigns (if permitted) of Seller, Buyer, and Broker.

326 **15. DEFAULT:**
327     (a) Seller Default: If for any reason other than failure of Seller to make Seller's title marketable after diligent
328 effort, Seller fails, refuses, or neglects to perform this Contract, Buyer may choose to receive a return of Buyer's
329 deposit(s) without waiving the right to seek damages or to seek specific performance as per Paragraph 16. Seller
330 will also be liable to Broker for the full amount of the brokerage fee.

Buyer (____) and Seller (____) acknowledge receipt of a copy of this page, which is Page 6 of 9
CRSP-12 ©2012 Florida Association of Realtors®   All Rights Reserved

initial

16

Case: 17-05084    Doc# 73    Filed: 07/01/19    Entered: 07/01/19 14:56:17    Page 17 of
140

CG-CP 00010

**(b) Buyer Default:** If Buyer fails to perform this Contract within the time specified, including timely payment of all deposits, Seller may choose to retain and collect all deposits paid and agreed to be paid as liquidated damages or to seek specific performance as per Paragraph 16; and Broker will, upon demand, receive 50% of all deposits paid and agreed to be paid (to be split equally among Brokers) up to the full amount of the brokerage fee.

**16. DISPUTE RESOLUTION:** This Contract will be construed under Florida law. All controversies, claims, and other matters in question arising out of or relating to this transaction or this Contract or its breach will be settled as follows:

(a) Disputes concerning entitlement to deposits made and agreed to be made: Seller and Buyer will have 30 days after the date conflicting demands are made to attempt to resolve the dispute through mediation. If that fails, Escrow Agent will submit the dispute, if so required by Florida law, to Escrow Agent's choice of arbitration, a Florida court, or the Florida Real Estate Commission ("FREC"). A broker's obligation under Chapter 475, Florida Statutes, and the FREC rules to timely notify the FREC of an escrow dispute and timely resolve the escrow dispute through mediation, arbitration, interpleader, or an escrow disbursement order applies only to brokers and does not apply to title companies, attorneys, or other escrow holders.

(b) All other disputes: Seller, Buyer, and Broker will have 30 days after the date a dispute arises between them to attempt to resolve the matter through mediation, failing which the parties, including Broker, will resolve the dispute through neutral binding arbitration in the county where the Property is located. However, no arbitration arising out of or relating to this transaction or this Contract or its breach will include Broker, unless Broker consents in writing to become a party to the proceeding. A demand for arbitration is prohibited if a civil action requesting the same relief would be barred by Florida statute of limitations. The arbitrator may not alter the Contract terms or award any remedy not provided for in this Contract. The award will be based on the greater weight of the evidence and will state findings of fact and the contractual authority on which it is based. If the parties agree to use discovery, it will be in accordance with the Florida Rules of Civil Procedure, and the arbitrator will resolve all discovery-related disputes. For purposes of this Paragraph, Broker will be treated as a party to this Contract. This clause will survive Closing.

(c) Mediation and Arbitration; Expenses: "Mediation" is a process in which parties attempt to resolve a dispute by submitting it to an impartial mediator who facilitates the resolution of the dispute but who is not empowered to impose a settlement on the parties. Mediation will be in accordance with the rules of the American Arbitration Association ("AAA") or other mediator agreed on by the parties. The parties will equally divide the mediation fee, if any. "Arbitration" is a process in which the parties resolve a dispute by a hearing before a neutral person who decides the matter and whose decision is binding on the parties. Arbitration will be in accordance with the rules of the AAA or other arbitrator agreed on by the parties. Each party to any arbitration will pay its own fees, costs, and expenses, including attorneys' fees, and will equally split the arbitrators' fees and administrative fees of arbitration.

**17. ESCROW AGENT/CLOSING AGENT:** Seller and Buyer authorize Escrow Agent and Closing Agent (collectively "Agent") to receive, deposit, and hold funds and other items in escrow and, subject to Collection, disburse them upon proper authorization and in accordance with Florida law and the terms of this Contract, including disbursing brokerage fees. "Collection" or "Collected" mean any checks tendered or received have become actually and finally collected and deposited in the account of Agent. The parties agree that Agent will not be liable to any person for misdelivery of escrowed items to Seller or Buyer, unless the misdelivery is due to Agent's willful breach of this Contract or gross negligence. If Agent interpleads the subject matter of the escrow, Agent will pay the filing fees and costs from the deposit and will recover reasonable attorneys' fees and costs to be paid from the escrowed funds or equivalent and charged and awarded as court costs in favor of the prevailing party. All claims against Agent will be arbitrated, so long as Agent consents to arbitrate.

**18. PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Seller and Buyer to verify all facts and representations that are important to them and to consult an appropriate professional for legal advice (for example, interpreting contracts, determining the effect of laws on the Property and transaction, status of title, foreign investor reporting requirements, the effect of property lying partially or totally seaward of the coastal construction control line, etc.) and for tax, property condition, environmental, and other specialized advice. Buyer acknowledges that Broker does not reside in the Property and that all representations (oral, written, or otherwise) by Broker are based on Seller representations or public records. **Buyer agrees to rely solely on Seller, professional inspectors, and governmental agencies for verification of the Property condition, square footage, and facts that materially affect Property value.** Seller and Buyer respectively will pay all costs and expenses, including reasonable attorneys' fees at all levels, incurred by Broker and Broker's officers, directors, agents, and employees in connection with or arising from Seller's or Buyer's misstatement or failure to perform contractual obligations. Seller and Buyer hold harmless and release Broker and Broker's officers, directors, agents, and employees from all liability for loss or

Buyer ( ____ ) and Seller ( ____ ) acknowledge receipt of a copy of this page, which is Page 7 of 9.
CRSP-12 ©2012 Florida Association of Realtors®  All Rights Reserved

*Initial*

Case: 17-05084    Doc# 73    Filed: 07/01/19    Entered: 07/01/19 14:56:17    Page 18 of 140

CG-CD00011

386 damage based on (i) Seller's or Buyer's misstatement or failure to perform contractual obligations; (ii) the use or
387 display of listing data by third parties, including but not limited to photographs, images, graphics, video recordings,
388 virtual tours, drawings, written descriptions, and remarks related to the Property; (iii) Broker's performance, at Seller's
389 and/or Buyer's request, of any task beyond the scope of services regulated by Chapter 475, Florida Statutes, as
390 amended, including Broker's referral, recommendation, or retention of any vendor; (iv) products or services provided
391 by any vendor; and (v) expenses incurred by any vendor. Seller and Buyer each assume full responsibility for
392 selecting and compensating their respective vendors. This Paragraph will not relieve Broker of statutory obligations.
393 For purposes of this Paragraph, Broker will be treated as a party to this Contract. This Paragraph will survive Closing.

394 **19. BROKERS:** The licensee(s) and brokerage(s) named below are collectively referred to as "Broker." Instruction
395 to Closing Agent: Seller and Buyer direct Closing Agent to disburse at Closing the full amount of the brokerage fees
396 as specified in separate brokerage agreements with the parties and cooperative agreements between the brokers,
397 except to the extent Broker has retained such fees from the escrowed funds. In the absence of such brokerage
398 agreements, Closing Agent will disburse brokerage fees as indicated below. This Paragraph will not be used to modify
399 any MLS or other offer of compensation made by Seller or listing broker to cooperating brokers.

| 400* | Claudia Savine/3240703 | Carlo Dipasquale / LLC |
|---|---|---|
| 401* | Seller's Sales Associate / License No | Buyer's Sales Associate / License No   311963 |
| 402* | The Keyes Company / 3% | Cervera Real Estate,Inc. / 3% |
| 403* | Listing Firm / Brokerage Fee: ($ or % of purchase price) | Buyer's Firm / Brokerage Fee: ($ or % of purchase price) |

404 **20. ADDENDA:** The following additional terms are included in the attached addenda and incorporated into this
405 Contract (Check if applicable and **attach the addenda**):

| ☐ Additional Clauses | ☐ Inspections | ☒ Property Disclosure |
|---|---|---|
| ☐ Appraisal | ☐ Insulation Disclosure (New Homes) | ☐ Rentals |
| ☒ As is with **Right to Inspect** | ☒ Insurance | ☐ Rezoning |
| ☐ Assignment | ☐ Interest-Bearing Escrow Account | ☐ Sale/Lease of Buyer's Property |
| ☐ Back-up Contract/ | ☐ Lease Option/ | ☐ Seller Financing |
| ☐ Kick-out Clause | ☐ Lease Purchase | ☐ Short Sale Approval |
| ☒ Condominium Association | ☐ Licensee - Personal Int. in Property | ☐ 1031 Exchange |
| ☐ Defective Drywall | ☐ Mold Inspection | ☐ VA Financing |
| ☐ FHA Financing | ☐ Mortgage Assumption | ☐ Other _____ |
| ☐ FIRPTA | ☐ New Mortgage Rates | ☐ Other _____ |
| ☐ Homeowners' Association | ☐ Pre-1978 Housing Lead-Based | ☐ Other _____ |
| ☐ Housing for Older Persons | Paint Warning Statement | ☐ Other _____ |

406* **21. ADDITIONAL TERMS:** Buyer at buyer's option may elect to retain the tenant until the end of the lease term
407* on May 31,2013, in which case, Seller will credit buyer $5250.00 a month from closing until May31,2013 for
408* prepaid rent. Buyer's Election must be made with in 15 days of effective date. If Buyer does not elect to retain
409* the existing tenant, then Seller must relocate the tenant prior to closing.
410* _____
411* _____
412* _____
413* _____
414* _____
415* _____
416* _____
417* _____
418* _____
419* _____
420* _____
421* _____
422* _____
423* _____
424* _____
425* _____

Buyer ( _____ ) and Seller ( _____ ) acknowledge receipt of a copy of this page, which is Page 8 of 9
CRSP-13  ©2012 Florida Association of Realtors®    All Rights Reserved

427 **22. OFFER AND ACCEPTANCE: Buyer** offers to purchase the Property on the above terms and conditions. Unless
428 this Contract is signed by Seller and a copy delivered to Buyer no later than ____5____ ☐ a.m. ☒ p.m. on
429 ____Dec 13 2012____ , this offer will be revoked and Buyer's deposit(s) refunded subject to Collection of
430 funds.
431 ☐ Buyer received a written real property disclosure statement from Seller before making this offer.

432 **23. COUNTER OFFER/REJECTION:**
433 ☐ Seller counters Buyer's offer. (To accept the counter offer, Buyer must sign or initial the counter offered terms
434 and deliver a copy of the acceptance to Seller.) Unless otherwise stated, the time for acceptance of any counter offer
435 will be X days after the date the counter offer is delivered.
436 ☐ Seller rejects Buyer's offer.

437 This is intended to be a legally binding contract. If not fully understood, seek the advice of an attorney before signing.

438 Buyer: _____ Date: 12 / 11 /12
439 Print name: _Gabriele Daniel and/or Assigns_

440 Buyer: _____ Date: _____
441 Print name: _____ Phone: _____
442 Address: _____ Fax: _____
443 _____ Email: _____

444 Seller: _____ Date: 12-11-12
445 Print name: _Christopher Savine_

446 Seller: _____ Date: _____
447 Print name: _____ Phone: _____4848
448 Address: 9000 Island Blvd., #504, Aventura, FL 33160 Fax: _____7297
449 Email: cmsavine@aol.com

450 Effective Date: 12-11-12 (The date on which the last party signed or initialed and delivered the
451 final offer or counter offer.)

Buyer (____) (____) and Seller (____) (____) acknowledge receipt of a copy of this page, which is Page 9 of 9.
CRSP-14 ©2012 Florida Association of Realtors®   All Rights Reserved

Florida Association of REALTORS® and local Board/Association of REALTORS® make no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark that may be used only by real estate licensees who are members of the National Association of REALTORS® and who subscribe to its Code of Ethics.

The copyright laws of the United States (17 U.S. Code) forbid the unauthorized reproduction of blank forms by any means including facsimile or computerized forms.



Addendum to Contract for Residential Sale and Purchase

1  If initialed by all parties, the terms below will be incorporated into the Contract for Residential Sale and Purchase
2* between _____ Christopher Savine _____ ("Seller")
3* and GABRIELE ISRAILOVICI ~~Gabriela Danieli~~ and/or Assigns ("Buyer")
4* concerning the Property described as THE BENTLEY BAY CONDO UNIT 2403 BLDG S UNDIV 0.008013%INT IN
5* COMMON ELEMENTS OFF

6* (  ) (   ) (    ) (    ) (    )  MHAU  Condominium Association: The Property is a condominium which is subject to
7  the rules and regulations of a condominium association ("Association"). If the condominium property is subject to a
8  master Homeowners' Association, also attach Homeowners' Association Addendum. Seller's warranty under
9  Paragraph 8 of this Contract, risk of loss under Paragraph 9 of this Contract, and As Is with Right to Inspect
10 Addendum (if applicable) extend to the unit and limited common elements appurtenant to the Property and not to any
11 other common elements or any other property.

12 1. Documents: Seller will, at Seller's expense, deliver to Buyer the current and complete condominium documents
13 (a current copy of the declaration of condominium, articles of incorporation, bylaws and rules of the Association, and a
14 copy of the most recent year-end financial information and frequently asked questions and answers document if so
15 requested in writing) referenced in Paragraph 11 below no later than 3 days after Effective Date (if Buyer has
16 already received the required documents, indicate receipt by initialing here: (____) (____) and indicate date of
17 receipt here: _____). If this Contract does not close, Buyer will immediately return the
18 documents to Seller.

19 2. Association Approval: If the condominium declaration or bylaws give the Association the right to approve
20 Buyer as a purchaser, this Contract is contingent on such approval by the Association. Buyer will apply for approval
21* within ___5___ days (5 days if left blank) after Effective Date and use diligent effort to obtain approval,
22 including making personal appearances and paying related fees if required. Seller and Buyer will sign and deliver
23 any documents required by the Association to complete the transfer. If Buyer is not approved, this Contract will
24 terminate; and Buyer's deposit(s) will be refunded unless this Contract provides otherwise.

25 3. Right of First Refusal: If the Association has a right of first refusal to buy the Property, this Contract is contingent
26 on the Association deciding not to exercise such right. Seller will, within 3 days after receipt of the Association's
27 decision, give Buyer written notice of the decision. If the Association exercises its right of first refusal, this Contract
28 will terminate, Buyer's deposit(s) will be refunded unless this Contract provides otherwise, and Seller will pay
29 broker's full commission at Closing in recognition that broker procured the sale.

30 4. Application / Transfer Fees: Buyer will pay any application and/or transfer fees charged by the Association.

31* 5. Parking / Boat Slip / Storage Unit: Seller will assign to Buyer at Closing parking space(s) #  2 (VALET) ,
32* boat slip(s) #  0  , and storage unit(s) #  0  .

33 6. Fees: Seller will pay all fines imposed against the Property and any fees the Association charges to
34 provide information about its fees or the Property and will bring maintenance and similar periodic fees and rents
35 on any recreational areas current as of Closing. If after Effective Date, the Association imposes a special
36 assessment for improvements, work, or services, Seller will pay all amounts due before Closing and Buyer will
37* pay all amounts due on or after Closing. If special assessments may be paid in installments ☐ Seller
38* ☐ Buyer (Buyer if left blank) will pay installments due after Closing. If Seller is checked, Seller will pay the
39 assessment in full before or at Closing. Seller represents that he/she is not aware of any pending special or other
40 assessment that has been levied by the Association, except as follows: _____
41* _____

(See Continuation)

CMG

CRSP-12 (Condominium Association Addendum)   ©2012 Florida Association of Realtors®   All Rights Reserved

Initial

Case: 17-05084   Doc# 73   Filed: 07/01/19   Entered: 07/01/19 14:56:17   Page 21 of 140     CGC-CD00014

**Condominium Association Addendum** (Continued)

Seller represents that he/she is not aware of any special or other assessment that has been an item on the agenda or reported in the minutes of the Association within 12 months before Effective Date ("Pending"), except as follows:

_____

If special or other assessments, levied or Pending, exist as of Effective Date and have not been disclosed above by Seller, then Seller will pay such assessments in full before or at Closing.

Seller represents that he/she is not aware of pending or anticipated litigation affecting the Property or the common elements, except as follows: _____

_____

Seller represents that the current assessments, maintenance, and/or association fees are:

$ ___1556.52___ per ___Month___ to ___Bentley Bay Condo Association___

$ _____ per _____ to _____

$ _____ per _____ to _____

and that there ☐ is ☒ is not a recreation or land lease with the Property. If there is a recreation or land lease, the current payment is $ _____ per month.

7. **Damage to Common Elements:** If any portion of the common elements is damaged by fire, hurricane, or other casualty before Closing, either party may cancel this Contract and Buyer's deposit(s) will be refunded if (i) as a result of damage to the common elements, the Property appraises below the purchase price and either the parties cannot agree on a new purchase price or Buyer elects not to proceed, or (ii) the Association cannot determine the assessment attributable to the Property for the damage at least 5 days before Closing, or (iii) the assessment determined or imposed by the Association attributable to the Property for damage to the common elements is greater than $ _____ or _____% (1.5% if left blank) of the purchase price.

8. **Sprinkler System:** If the unit owners voted to forego retrofitting each unit with a fire sprinkler or other engineered life safety system, Seller will provide Buyer, before Closing, a copy of the Association's notice of the vote to forego retrofitting.

9. **Hazard Insurance:** After Closing Buyer may be required to provide the Association with evidence of a currently effective policy of hazard and liability insurance upon request of the Association.

10. **Condominium Governance:** Pursuant to Section 718.503, Florida Statutes, Buyer is entitled to receive from Seller a copy of a governance form provided by the Division of Florida Condominiums, Timeshare and Mobile Homes.

11. **Buyer Acknowledgement / Seller Disclosure: (Check whichever applies)**

☐ THE BUYER HEREBY ACKNOWLEDGES THAT BUYER HAS BEEN PROVIDED A CURRENT COPY OF THE DECLARATION OF CONDOMINIUM, ARTICLES OF INCORPORATION OF THE ASSOCIATION, BYLAWS AND RULES OF THE ASSOCIATION, AND A COPY OF THE MOST RECENT YEAR-END FINANCIAL INFORMATION AND FREQUENTLY ASKED QUESTIONS AND ANSWERS DOCUMENT MORE THAN 3 DAYS, EXCLUDING SATURDAYS, SUNDAYS, AND LEGAL HOLIDAYS, PRIOR TO EXECUTION OF THIS CONTRACT.
☒ THIS AGREEMENT IS VOIDABLE BY BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 3 DAYS, EXCLUDING SATURDAYS, SUNDAYS, AND LEGAL HOLIDAYS, AFTER THE DATE OF EXECUTION OF THIS AGREEMENT BY THE BUYER AND RECEIPT BY BUYER OF A CURRENT COPY OF THE DECLARATION OF CONDOMINIUM, ARTICLES OF INCORPORATION, BYLAWS AND RULES OF THE ASSOCIATION, AND A COPY OF THE MOST RECENT YEAR-END FINANCIAL INFORMATION AND FREQUENTLY ASKED QUESTIONS AND ANSWERS DOCUMENT IF SO REQUESTED IN WRITING. ANY PURPORTED WAIVER OF THESE VOIDABILITY RIGHTS SHALL BE OF NO EFFECT. BUYER MAY EXTEND THE TIME FOR CLOSING FOR A PERIOD OF NOT MORE THAN 3 DAYS, EXCLUDING SATURDAYS, SUNDAYS, AND LEGAL HOLIDAYS, AFTER THE BUYER RECEIVES THE DECLARATION, ARTICLES OF INCORPORATION, BYLAWS AND RULES OF THE ASSOCIATION, AND A COPY OF THE MOST RECENT YEAR-END FINANCIAL INFORMATION AND FREQUENTLY ASKED QUESTIONS AND ANSWERS DOCUMENT IF REQUESTED IN WRITING. BUYER'S RIGHT TO VOID THIS AGREEMENT SHALL TERMINATE AT CLOSING.

Buyer (____) and Seller (____) acknowledge receipt of a copy of this page.
CRSP-12 (Condominium Association Addendum) ©2012 Florida Association of Realtors®  All Rights Reserved

GABRIELL ISRAILOVICH

The clause below will be incorporated into the Contract between: __Christopher Savine__ (Seller,)
and __Gabriell Samiel And/or Assigns__ (Buyer) concerning the Property described as: _____
__the Benton Bay Condo__ only if initialed by all parties.

( ) V. Property Disclosure Statement: This offer is contingent on Seller completing, signing and
delivering to Buyer a written real property disclosure statement within 3 days from Effective Date. If the statement discloses any
material information about the Property that is unacceptable to Buyer, Buyer may cancel this Contract by written notice to
Seller within 5 days from receipt of Seller's written statement.

Buyer ( ) and Seller ( ) acknowledge receipt of a copy of this page.
FAR/A-15    1/03    © 2009    Florida Association of Realtors®    All Rights Reserved    Page ____ of Addendum No ____

instanet
forms

22

CG-CD00016

*GABRIELLE ISRAILOVICI*

The clause below will be incorporated into the Contract between _Christopher Savino_ (Seller) and _Gabrielle Bartoli and/or Assigns_ (Buyer) concerning the Property described as _the Bentley Bay Condo_ only if initialed by all parties.

*mirab*

[ ] - [ Gm ] I. Inspections (check as applicable:

[ ] (1) Self-Inspection: Buyer and Seller agree that unlicensed persons, including the parties themselves, may conduct the inspections (except for Buyer's wood-destroying organism inspection) permitted in Paragraph 8 of the Contract or Paragraph H of this Addendum. However, if the inspection findings differ and the parties cannot resolve the differences, Buyer and Seller together will choose, and will equally split the cost of, a professional inspector as defined in Paragraph 8 of the Contract whose report will be binding on the parties.

[x] (2) Right to Cancel Based on Inspection Results: Within the Inspection Period provided in Paragraph 8 of the Contract, Buyer will, at Buyer's sole expense, complete any desired inspections of the Property in addition to those referenced in Paragraphs 7 and 8(a)(2), if Buyer is for any reason unhappy with a condition of the Property noted in the inspection results. Buyer may cancel the Contract by delivering written notice to Seller along with a copy of the inspection results within 2 days from the end of the Inspection Period, and Buyer will, at Buyer's sole expense, immediately repair all damage resulting from Buyer's inspections and restore the Property to its pre-inspection condition; this obligation will survive termination of the Contract. If the Contract is not cancelled, the parties' obligations remain as specified in the Contract. This Paragraph does not modify or replace the rights and obligations of the parties under Paragraph 8 of the Contract.

Buyer ( GI ) and Seller ( CS ) acknowledge receipt of a copy of this page.

*mirab*

FAR/AS 1/09  © 2009  Florida Association of REALTORS®  All Rights Reserved    Page _____ of Addendum No. _____

*InstanetForms*

Case: 17-05084   Doc# 73   Filed: 07/01/19   Entered: 07/01/19 14:56:17   Page 24 of 140

CG-CD00017

23

GABRIELE ISRAILOVIC

The clause below will be incorporated into the Contract between _Christopher Savine_ (Seller)
and _Gabriele Mann_ and/or _assigns_ (Buyer) concerning the Property described as
the _Bentley Bay Condo_ only if initialed by all parties:

( G I )( )( )( ) L. Insurance: (check all that apply)

☐ (1)(a) Homeowners Insurance: If Buyer is unable to obtain comprehensive homeowner's insurance coverage (including windstorm) from a standard carrier or the Citizen's Property Insurance Corporation at a first year annual premium not to exceed $_____ or _____% of the purchase price by _____ (the earlier of 30 days after Effective Date or 5 days prior to Closing Date if left blank), Buyer may cancel the Contract by delivering written notice to the Seller.
☐ (1)(b) Flood Insurance: If Buyer is unable to obtain flood insurance through the National Flood Insurance Program at a first year premium not to exceed $_____ or _____% of the purchase price by _____ (the earlier of 30 days after Effective Date or 5 days prior to Closing Date if left blank), Buyer may cancel the Contract by delivering written notice to the Seller.

☒ (2) Flood Insurance: Buyer is notified that the Property is located in an area that: ☒ is a defined floodable area and flood insurance is required; ☐ was declared a flood disaster area after September 23, 1994 and received federal disaster relief assistance on the condition that flood insurance be obtained in accordance with applicable federal law. Buyer is required to obtain such flood insurance if the Property is not so insured as of the date of transfer and will be required to maintain flood insurance in accordance with applicable federal law with respect to the Property.

(3) Flood damage to 1st floor: Buyer acknowledges that there have been no representations or guarantees made by the Seller or Broker regarding the usability of the first floor of the subject property. Buyer is aware that any flood damage to the first floor may result in difficulty in obtaining flood insurance and/or may result in adverse enforcement proceedings by local authorities.

(4) Wind-borne Debris Region: Pursuant to Section 627.351, Florida Statutes, a personal lines residential structure that is located in the wind-borne debris region (as defined in Section 1609.2 of the International Building Code) and that has an insured value on the structure of $750,000 or more is not eligible for coverage by Citizens Property Insurance Corporation unless the structure has shutters or opening protections on all openings and such opening protections complied with the Florida Building Code at the time they were installed.

Buyer ( )( ) and Seller ( )( ) acknowledge receipt of a copy of this page.
FAR/BAR-10   1/05  © 2009   Florida Association of REALTORS®   All Rights Reserved
(initial)

Page _____ of Addendum No. _____

InstanetForms

24

# Seller's Real Property Disclosure Statement
FLORIDA ASSOCIATION OF REALTORS ®



REAL ESTATE · MORTGAGE · TITLE

NAME: _____ Christopher Savine
SELLER HAS ☐ HAS NOT ☒ OCCUPIED THE PROPERTY.
DATE SELLER PURCHASED PROPERTY? _____ 9-26-05
IS THE PROPERTY CURRENTLY LEASED? NO ☐ YES ☒ TERMINATION DATE OF LEASE: _____ 5-31-13
DOES THE PROPERTY CURRENTLY HAVE HOMESTEAD EXEMPTION? NO ☒ YES ☐ ; YEAR _____

GENERAL INFORMATION ABOUT PROPERTY:
PROPERTY ADDRESS: _____ 520 West Avenue, Unit 2403, Miami Beach FL 33139
LEGAL DESCRIPTION: _____ The Bentley Bay Condounit 2403 BLDG S UNDIV 0.008013% INT IN COMMON

NOTICE TO BUYER AND SELLER:
In Florida, a Seller is obligated to disclose to a Buyer all known facts that materially affect the value of the property being sold and that are not readily observable. This disclosure statement is designed to assist Seller in complying with the disclosure requirements under Florida law and to assist the Buyer in evaluating the property being considered. This disclosure statement concerns the condition of the real property located at above address. It is not a warranty of any kind by the Seller or any Licensee in this transaction. It is not a substitute for any inspections or warranties the parties may wish to obtain. It is based only upon Seller's knowledge of the property condition. This disclosure is not intended to be a part of any contract for sale and purchase. All parties may refer to this information when they evaluate, market, or present Seller's property to prospective Buyers.
**The following representations are made by the Seller(s) and are not the representations of any real estate licensees.**

## 1. CLAIMS & ASSESSMENTS
**a.** Are you aware of existing, pending, or proposed legal actions, claims, special assessments, municipal service taxing or benefit unit charges or unpaid assessments (including homeowners' association maintenance fees or proposed increases in assessments and/or maintenance fees) affecting the property? NO ☒ YES ☐ If yes, explain: _____

**b.** Have any local, state, or federal authorities notified you that repairs, alterations or corrections of the property are required? NO ☒ YES ☐ If yes, explain: _____

## 2. DEED/HOMEOWNERS' ASSOCIATION RESTRICTIONS
Are You Aware:
**a.** of any deed or homeowner restrictions? NO ☒ YES ☐
**b.** of any proposed changes to any of the restrictions? NO ☒ YES ☐
**c.** of any resale restrictions? NO ☒ YES ☐
**d.** of any restrictions on leasing the property? NO ☒ YES ☐
**e.** If any answer to questions 2a-2e is yes, please explain: _____

**f.** Are access roads private ☐ public ☒ ? If private, describe the terms and conditions of the maintenance agreement: _____
**g.** If there is a homeowner association, is membership mandatory? NO ☐ YES ☒ , and are fees charged by the homeowner association? NO ☐ YES ☒ If yes, explain: 1556.59 monthly

## 3. PROPERTY-RELATED ITEMS
Are You Aware:
**a.** if you have ever had the property surveyed? NO ☒ YES ☐ Date: _____
**b.** if the property was surveyed, did you receive an elevation certificate? NO ☐ YES ☐ Date: N/A
**c.** of any walls, driveways, fences or other features shared in common with adjoining landowners or any encroachments, boundary line disputes, setback violations, or easements affecting the property? NO ☒ YES ☐
**d.** of any portion of the property that is fenced? NO ☒ YES ☐
If any answer to questions 3a-3d is yes, please explain: _____

Buyer (___)(___) and Seller (___)(___) acknowledge receipt of a copy of this page, which is Page 1 of 5 Pages.
SRPD-4   REV. 5/09   © 2009   Florida Association of REALTORS®   All Rights Reserved

formsimplicity
initial

Case: 17-05084    Doc# 73    Filed: 07/01/19    Entered: 07/01/19 14:56:17    Page 26 of 140

CG-CD00010

**4. THE LAND:**

Are You Aware

    **a.** of any past or present settling, soil movement, or sinkhole problems on the property or on adjacent properties? NO ☒ YES ☐

        **i.** of any sinkhole insurance claim that has been made on subject property? NO ☒ YES ☐

        **ii.** if claim made, was claim paid? NO ☐ YES ☐ *N/A*

        **iii.** was the full amount of the insurance proceeds used to repair the sinkhole damage? NO ☐ YES ☐ *N/A*

    **b.** of any past or present drainage or flood problems affecting the property or adjacent properties? NO ☒ YES ☐

    **c.** of any past or present problems with driveways, walkways, patios, seawalls, or retaining walls on the property or adjacent properties due to drainage, flooding, or soil movements? NO ☒ YES ☐

If any answer to questions 4a-4c is yes, please explain: _____

_____

_____

_____

**5. ENVIRONMENT:**

Was the property built before 1978? NO ☒ YES ☐

Are You Aware:

    **a.** of any substances, materials, or products which may be an environmental hazard, such as, but not limited to, asbestos, urea formaldehyde, radon gas, mold, lead-based paint, Chinese/defective drywall, fuel, propane or chemical storage tanks (active or abandoned), or contaminated soil or water on the property? NO ☒ YES ☐ If yes, explain: _____

_____

        **i.** of any damage to the structures located on the property due to any of the substances, materials or products listed in subsection (a) above? NO ☒ YES ☐ If yes, explain: _____

_____

_____

        **ii.** of any corrosion to air conditioner or refrigerator coils, copper tubing, electrical wiring, computer wiring or other household items that have been damaged by sulfur or methane gas emitted from Chinese/defective drywall? NO ☒ YES ☐ If yes, explain: _____

_____

_____

        **iii.** of any clean up, repairs, or remediation of the property due to any of the substances, materials or products listed in subsection (a) above? NO ☒ YES ☐ If yes, explain: _____

_____

_____

    **b.** of any condition or proposed change in the vicinity of the property that does or will materially affect the value of the property, such as, but not limited to, proposed development or proposed roadways? NO ☒ YES ☐

    **c.** of wetlands, mangroves, archeological sites, or other environmentally sensitive areas located on the property? NO ☒ YES ☐

If any answer to questions 5a-5c is yes, please explain: _____

_____

_____

_____

**6. ZONING:**

Are You Aware:

    **a.** of the zoning classification of the property? NO ☒ YES ☐ If yes, identify the zoning classification _____

    **b.** of any zoning violations or nonconforming uses? NO ☒ YES ☐

    **c.** if the property is zoned for its current use? NO ☐ YES ☒

    **d.** of any zoning restrictions affecting additions, improvements or replacement of the property? NO ☒ YES ☐

    **e.** if there are any zoning, land use or administrative regulations which are in conflict with the existing or intended use of the property? NO ☒ YES ☐

Buyer (____) (____) and **Seller** (____) acknowledge receipt of a copy of this page, which is Page 2 of 5 Pages.

SRPD-4   rev. 5/09   © 2009   Florida Association of REALTORS®   All Rights Reserved

*formsimplicity*

*initial.*

26

Case: 17-05084   Doc# 73   Filed: 07/01/19   Entered: 07/01/19 14:56:17   Page 27 of 140

CGC-D000030

**f.** of any restrictions other than association and flood area requirements affecting improvements or replacement of the property? NO ☒ YES ☐
If any answer to questions 6a-6f is yes, please explain: _____
_____
_____
_____

**7. FLOOD:**
Are You Aware:
**a.** if any portion of the property is in a special flood hazard area? NO ☐ YES ☒ *Cond. Disc.*
**b.** does the property require flood insurance? NO ☐ YES ☒ *Cond. Disc.*
**c.** whether any improvements including additions, are located below the base flood elevation? NO ☒ YES ☐
**d.** whether such improvements have been constructed in violation of applicable local flood guidelines? NO ☒ YES ☐
**e.** if any portion of the property is seaward of the coastal construction control line? NO ☒ YES ☐
If any answer to questions 7a-7e is yes, please explain: _____
_____
_____
_____

**8. TERMITES, DRY ROT, PESTS, WOOD DESTROYING ORGANISMS:**
a. Do you have any knowledge of termites, dry rot, pests or wood destroying organisms on or affecting any improvements located on the property or any structural damage to the property by them? NO ☒ YES ☐ If yes, explain: _____
_____
b. Have you ever had the property inspected for termites, dry rot, pest or wood destroying organism?
NO ☒ YES ☐ Date of inspection_____ If so, what was the outcome of the inspection? _____
_____
c. Has the property been treated for termites, dry rot, pest or wood destroying organisms? NO ☒ YES ☐ Date and type of treatment _____
_____,Company name: _____

**9. STRUCTURE-RELATED ITEMS:**
Are You Aware:
**a.** of any structural damage which may have resulted from events including, but not limited to, fire, wind, flood, hail, landslide, or blasting, and which materially affect the value of the property? NO ☒ YES ☐
**b.** of any structural condition or, in the case of a homeowner association, any condition in the common elements that materially affects the value of the property? NO ☒ YES ☐
**c.** of any improvements or additions to the property, whether by you or by others, that have been constructed in violation of building codes or without necessary permits? NO ☒ YES ☐
**d.** of any active permits on the property which have not been closed by a final inspection? NO ☒ YES ☐
If any answer to questions 9a-9d is yes, please explain: _____
_____
_____
_____

**10. ROOF-RELATED ITEMS:**
Are You Aware:
**a.** of any roof or overhang defects? NO ☒ YES ☐
**b.** if the roof has leaked since you owned the property? NO ☒ YES ☐
**c.** if anything was done to correct the leaks? NO ☐ YES ☐ *N/A*
**d.** if the roof has been replaced? NO ☒ YES ☐ If yes, when: _____
**e.** if there is a warranty on the roof? NO ☐ YES ☐ If yes, is it transferable? NO ☐ YES ☐ *Cond. Disc.*
**f.** If the roof been inspected within the last twelve months? NO ☒ YES ☐
If any answer to questions 10a-10f is yes, please explain: _____
_____
_____
_____

Buyer (___) (___) and Seller (___) (___) acknowledge receipt of a copy of this page, which is Page 3 of 5 Pages.
SRPD-4 Rev. 5/09 © 2009 Florida Association of REALTORS® All Rights Reserved

*forms simplicity*

*Initial*

Case: 17-05084    Doc# 73    Filed: 07/01/19    Entered: 07/01/19 14:56:17    Page 28 of
140
CG-CD00021



**SunTrust**
**TITLE**

*7771 West Oakland Park Blvd. Ste. 152 Sunrise, FL. 33351*
*Phone: (954) 354-9100*
*Fax: (954) 343-5835*

December 12, 2012

RE: Christopher Savine and Gabriele Israilovici and/or Assigns
Property Address: 520 West Ave., Apt# 2403, Miami Beach, FL. 33139

To Whom It May Concern;

We are currently in receipt of escrow in the amount of $10,000.00 regarding the above stated property. We look forward to doing business with you. Please feel free to contact us if we may be of further assistance.

Cordially,

*Jose M. Pal*
**Sun Trust Title, LLC**
7771 West Oakland Park Blvd.
Suite 152
Plantation, FL. 33324
Office:  954.354.9100
Fax:     954.343.5835
jpol@gosuntrust.com

The information contained in this transmission is confidential. It is intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please immediately notify and return the original to the sender.

28

CG-CD0032



**Sun Trust TITLE**

*7771 West Oakland Park Blvd. Ste. 152 Sunrise, FL. 33351*
*Phone: (954) 354-9100*
*Fax: (954) 343-5835*

December 28, 2012

RE: Christopher Savine and Gabriele Israilovici and/or Assigns
Property Address: 520 West Ave., Apt# 2403, Miami Beach, FL. 33139

To Whom It May Concern;

We are currently in receipt of escrow in the amount of $1,190,000.00 regarding the above stated property. The total amount currently held in escrow is $1,200,000.00. We look forward to doing business with you. Please feel free to contact us if we may be of further assistance.

Cordially,

*Jose M. Pol*

**Sun Trust Title, LLC**
7771 West Oakland Park Blvd.
Suite 152
Plantation, FL. 33324
Office:  954.354.9100
Fax:    954.343.5835
jpol@gosuntrust.com

The information contained in this transmission is confidential. It is intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please immediately notify and return the original to the sender.

# Walk-Thru (Sales)



Date: 18 / Jan / 13

Seller: Christopher Savino

Buyer: Gabriele Israilovich

Property Address: 520 West Ave # 2603 MB FL 33139

Building Name: Bentley Bay

## Appliances:

| | | | |
|---|---|---|---|
| Range | ☑ Electric ☐ Gas | Garbage Disposal | ☐ |
| Oven | ☑ | Trash Compactor | ☐ |
| Microwave | ☑ | Washer | ☑ |
| Refrigerator | ☑ | Dryer | ☑ |
| Dishwasher | ☑ | Central A/C | ☑ |
| Alarm System | ☐ | Ceiling Fans | ☐ |

## Keys:

| | | | |
|---|---|---|---|
| House/Apt Front Door | ☑ | Gate Card | ☐ |
| Garage Door Opener | ☑ | Common Areas | ☐ |
| Mailbox Key | ☑ | | |

## We agree that this property is in satisfactory condition except:

_____

_____

_____

Seller _Christine Larue_    Buyer _signature_

Seller _____    Buyer _____

30

Case: 17-05084   Doc# 73   Filed: 07/01/19   Entered: 07/01/19 14:56:17   Page 31 of 140

CG-CD00034



January 11, 2013

Gabriele Israilovici
520 West Avenue # 2403
Miami Beach, FL 33139

To Whom It May Concern:

The Sales Application for Unit # 2403 has been accepted by the Bentley Bay Condominium Association, Inc. Board of Directors. Association's approval is conditioned upon payment in full of all sums owed to the Association related to the unit as of the date of the closing. Any such payment will be made on or before the date of closing.

Thank you and welcome to The Bentley Bay.

The Bentley Bay Condominium Assoc., Inc.

By: _____
        Janne Keskinen, as President

STATE FO FLORIDA        )

COUNTY OF MIAMI-DADE )

The foregoing instrument was acknowledged before me on this __11__ day of January, 2013, by _Janne Keskinen_ as _President_. He/she/they is/are personally known to me and/or has/have produced Florida Drivers License number_____
as identification.

_____
Notary Public – State of Florida
Print Name: _STEVE G. MASON_
My Commission expires:

STEVE G. MASON
NOTARY PUBLIC
STATE OF FLORIDA
Comm# EE177262
Expires 3/7/2016

The Bentley Bay Condominium Association Inc  540 West Ave Miami FL 33139 Ph: 305-604-8655 Fax: 305-604-8660

**Receipt of Condominium Documents** 

BUYER ACKNOWLEDGES RECEIVING A CURRENT COPY OF THE DECLARATION OF CONDOMINIUM, ARTICLES OF INCORPORATION, BYLAWS, AND RULES OF THE ASSOCIATION, AND A COPY OF THE MOST RECENT YEAR-END FINANCIAL INFORMATION, AND FREQUENTLY ASKED QUESTIONS AND ANSWERS DOCUMENT IF SO REQUESTED IN WRITING; ALL OF WHICH RELATE TO

_____Bentley Bay_____, A CONDOMINIUM,
(Name of condominium in which unit being sold is located)

ON THE DATE INDICATED BELOW.

_____     12 / 20 / 12
BUYER                                Date

_____     _____
BUYER                                Date

RCD-4   Rev. 10/05   © 2005   Florida Association of REALTORS®   All Rights Reserved

Case: 17-05084    Doc# 73    Filed: 07/01/19    Entered: 07/01/19 14:56:17    Page 33 of 140

CG-CD00036

**A.**

**Sun Trust Title, LLC**
1507B S. University Drive
Plantation, Florida 33324
(954) 354-9100  fax: (954) 343-5835

| **B.** | TYPE OF LOAN | |
|---|---|---|
| 1. ☐ FHA | 2. ☐ FMHA | 3. ☐ CONV UNINS |
| 4. ☐ VA | 5. ☐ CONV INS | |
| 6. File Number | | 7. Loan Number |
| 12-339 | | |
| 8. Mortgage Ins. Case No. | | |

**C.** NOTE: *This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked (poc) were paid outside the closing. They are shown here for informational purposes and are not included in the totals.*

| | |
|---|---|
| D. Buyer: | ISNA, LLC |
| E. Seller: | Christopher Savine |
| F. Lender: | |
| G. Property: | 520 West Ave  Apt # 2403 |
| | Miami Beach, Miami-dade County, Florida 33139 |
| H. Settlement Agent: | Sun Trust Title, LLC |
| Place of Settlement: | 1507B S. University Drive, Plantation, Florida 33324  Broward County |
| I. Settlement Date: | January 21, 2013 |

| J. | Summary of Buyer's Transaction | | K. | Summary of Seller's Transaction | |
|---|---|---|---|---|---|
| **100. Gross Amount Due From Buyer:** | | | **400. Gross Amount Due To Seller:** | | |
| 101. | Contract Sales Price | 1,150,000.00 | 401. | Contract Sales Price | 1,150,000.00 |
| 102. | Personal Property | | 402. | Personal Property | |
| 103. | Settlement Charges to Buyer (line 1400) | 11,712.50 | 403. | | |
| **Adjustments for Items Paid by Seller in Advance:** | | | **Adjustments for Items Paid by Seller in Advance:** | | |
| 106. | City / Town Taxes | | 406. | City / Town Taxes | |
| 107. | County / Parish Taxes | | 407. | County / Parish Taxes | |
| 108. | Assessments Jan 21, 2013 thru Jan 31, 2013 | 552.31 | 408. | Assessments Jan 21, 2013 thru Jan 31, 2013 | 552.31 |
| **120.** | **Gross Amount Due from Buyer:** | **1,162,264.81** | **420.** | **Gross Amount Due to Seller:** | **1,150,552.31** |
| **200. Amounts Paid by or in Behalf of Buyer:** | | | **500. Reductions in Amount Due to Seller:** | | |
| 201. | Deposit / Earnest Money | 10,000.00 | 501. | Excess Deposit (see instructions) | |
| 202. | Principal Amount of New Loan | | 502. | Settlement Charges to Seller (Line 1400) | 77,499.00 |
| 203. | Existing Loan(s) | | 503. | Existing Loan(s) | |
| 204. | Tenant Rent - February 1st through May 31st | 21,000.00 | 504. | Payoff of First Mortgage to Bank of America | 361,880.07 |
| 205. | Tenant Rent - Security Deposit | 5,250.00 | 505. | Payoff of Second Mortgage to Wells Fargo | 430,998.04 |
| 206. | Tenant Rent - Jan 21st throught Jan 31 | 1,862.90 | 506. | Purchase Money Mortgage | |
| 207. | | | 507. | Tenant Rent - February 1st through May 31st | 21,000.00 |
| 208. | | | 508. | Tenant Rent - Security Deposit | 5,250.00 |
| 209. | | | 509. | Tenant Rent - Jan 21 through Jan 31 | 1,862.90 |
| **Adjustments for Items Unpaid by Seller:** | | | **Adjustments for Items Unpaid by Seller:** | | |
| 210. | City / Town Taxes | | 510. | City / Town Taxes | |
| 211. | County / Parish Taxes Jan 1, 2013 thru Jan 20, 2013 | 650.18 | 511. | County / Parish Taxes Jan 1, 2013 thru Jan 20, 2013 | 650.18 |
| 212. | Assessments | | 512. | Assessments | |
| **220.** | **Total Paid by / for Buyer:** | **38,763.08** | **520.** | **Total Reductions in Amount Due Seller:** | **899,140.19** |
| **300. Cash at Settlement from / to Buyer:** | | | **600. Cash at Settlement to / from Seller:** | | |
| 301. | Gross Amount due from Buyer (line 120) | 1,162,264.81 | 601. | Gross Amount due to Seller (line 420) | 1,150,552.31 |
| 302. | Less Amount Paid by/for Buyer (line 220) | 38,763.08 | 602. | Less Reductions Amount due Seller (line 520) | 899,140.19 |
| **303.** | **Cash From Buyer:** | **$1,123,501.73** | **603.** | **Cash To Seller:** | **$251,412.12** |

Buyer Initials: _____ *QD  POA*  ISNA, LLC

Seller Initials: _____  Christopher Savine

Case: 17-05084   Doc# 73   Filed: 07/01/19   Entered: 07/01/19 14:56:17   Page 34 of 140

CG-CB00037

| L. | Settlement Charges | | | Paid from Buyer's Funds at Settlement | Paid from Seller's Funds at Settlement |
|---|---|---|---|---|---|
| 700. | Total Sales / Broker's Commission: | | | | |
| | Based on Price $1,150,000.00 @ 6.00% = $69,000.00 | | | | |
| | Division of Commission as follows | | | | |
| 701. | 34,500.00 to The Keyes Company | | | | |
| 702. | 34,500.00 to Cervera Real Estate, Inc. | | | | |
| 703. | Commission Paid at Settlement | | | | 69,000.00 |
| 704. | Transaction Fee to The Keyes Company | | | | 349.00 |
| 705. | | | | | |
| 800. | Items Payable in Connection with Loan: | | | | |
| 801. | Loan Origination Fee | | | | |
| 802. | Loan Discount | | | | |
| 803. | Appraisal Fee | | | | |
| 804. | Credit Report | | | | |
| 805. | Lender's Inspection Fee | | | | |
| 806. | Mortgage Insurance Application Fee | | | | |
| 807. | Assumption Fee | | | | |
| 900. | Items Required by Lender to be Paid in Advance: | | | | |
| 901. | Daily interest charge from Jan 21, 2013 | | | | |
| 902. | Mortgage Insurance Premium | | | | |
| 903. | Hazard Insurance Premium | | | | |
| 904. | Flood Insurance Premium | | | | |
| 1000. | Reserves Deposited with Lender: | | | | |
| 1001. | Hazard Insurance | | | | |
| 1002. | Mortgage Insurance | | | | |
| 1003. | City Property Taxes | | | | |
| 1004. | County Property Taxes | | | | |
| 1005. | Annual Assessments | | | | |
| 1100. | Title Charges: | | | | |
| 1101. | Settlement or Closing Fee to Sun Trust Title, LLC | | | | 3,100.00 | 200.00 |
| 1102. | Abstract or Title Search to L & V Title and Abstract Services | | | | 150.00 | |
| 1103. | Lien Search to Reliable Lien Search | | | | 165.00 | |
| 1104. | Title Insurance Binder | | | | |
| 1105. | Document Preparation | | | | |
| 1106. | Notary Fees | | | | |
| 1107. | Attorney Fees | | | | |
| | (includes above item numbers; | | | | |
| 1108. | Title Insurance to Sun Trust Title, LLC | | | | 5,450.00 | |
| | (includes above item numbers; | | | | |
| 1109. | Lender's Coverage | 0.00 | | | |
| 1110 | Owner's Coverage | 1,150,000.00 | Risk Rate Premium: | $5,450.00 | |
| 1111. | Endorsement 4.1 | | | | 25.00 | |
| 1200. | Government Recording and Transfer Charges: | | | | |
| 1201. | Recording Fees: Deed 18.50 Mortgage 0.00 Releases 54.00 | | | | 72.50 | |
| 1202. | City/County Tax/Stamps: Deed 0.00 Mortgage 0.00 | | | | |
| 1203. | State Tax/Stamps: Deed 6,900.00 Mortgage 0.00 | | | | | 6,900.00 |
| 1204. | Intangible Tax to Clerk of the Circuit Court | | | | |
| 1205. | | | | | |
| 1300. | Additional Settlement Charges: | | | | |
| 1301. | Survey | | | | |
| 1302. | Pest Inspection | | | | |
| 1303. | Corportae Consulting Services to Allegiant Financial Advisors | | | | 2,500.00 | |
| 1304. | Legal Fees to Rothman & Tobin PA | | | | | 900.00 |
| 1305. | Condominium Association Estoppel Letter to Sun Trust Title, LLC | | | | | 150.00 |
| 1306. | Reimbursement for Condominium Approval Application to Carlo Dipasquale | | | | 250.00 | |
| 1400. | Total Settlement Charges (Enter on line 103, Section J and line 502, Section K) | | | | $11,712.50 | $77,499.00 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of HUD-1 Settlement Statement.

Buyer: _Colo dispezen RDA_                         Seller: _Christopher Savino_

ISNA, LLC                                           Christopher Savino

Seller:                                             _as atty n g[mt]_

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

Settlement Agent: ____                              Date: January 21, 2013

Jose Pol

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine or imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

HUD-1 May 2007                                      OMB No. 2502-0265
January 21, 2013 1:45 PM                            RESPA handbook 4305.2

# **EXHIBIT B**

CG-CD00039

DocuSign Envelope ID: 5DEEF867-300C-4DF2-8AE5-216020FD6F01
DocuSign Envelope ID: 902EF925-2ECE-4734-6846-C64C861191E8

## "AS IS" Residential Contract For Sale And Purchase
THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR



1* **PARTIES:** _____ ISNA LLC _____ ("Seller"),
2* and _____ Adriana Ruppert & Heinrich Leopold Lehner _____ ("Buyer"),
3  agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal Property
4  (collectively "Property") pursuant to the terms and conditions of this AS IS Residential Contract For Sale And Purchase and
5  any riders and addenda ("Contract"):
6  **1. PROPERTY DESCRIPTION:**
7*   (a) Street address, city, zip: _____ 520 WEST AV #2403, Miami Beach, FL 33139-6788 _____
8*   (b) Property is located in: ___Miami-Dade___ County, Florida. Real Property Tax ID No.: _____-0550
9*   (c) Real Property: The legal description is THE BENTLEY BAY CONDO UNIT 2403 BLDG S UNDIV 0.008013% INT IN
10     COMMON ELEMENTS OFF REC 23222-1234 COC 23850-1352 09 2005 1
11
12     together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and attached
13     wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded in Paragraph 1(e) or by other terms
14     of this Contract.
15   (d) Personal Property: Unless excluded in Paragraph 1(e) or by other terms of this Contract, the following items which
16     are owned by Seller and existing on the Property as of the date of the initial offer are included in the purchase:
17     range(s)/oven(s), refrigerator(s), dishwasher(s), disposal, ceiling fan(s), intercom, light fixture(s), drapery rods and
18     draperies, blinds, window treatments, smoke detector(s), garage door opener(s), security gate and other access
19     devices, and storm shutters/panels ("Personal Property").
20*    Other Personal Property items included in this purchase are: _____
21     _____
22     Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer.
23*   (e) The following items are excluded from the purchase: N/A

25                               **PURCHASE PRICE AND CLOSING**

26* **2. PURCHASE PRICE** (U.S. currency): ......................................................$    1,363,000
27*   (a) Initial deposit to be held in escrow in the amount of (checks subject to COLLECTION) ............$    136,300
28     The initial deposit made payable and delivered to "Escrow Agent" named below
29*    **(CHECK ONE):** (i) ☐ accompanies offer or (ii) ☒ is to be made within ___3___ (if left blank,
30     then 3) days after Effective Date. IF NEITHER BOX IS CHECKED, THEN OPTION (ii)
31     SHALL BE DEEMED SELECTED.
32*    Escrow Agent Information: Name: _____ North American Title Company _____
33*    Address: _____ 777 Arthur Godfrey Road, Suite 401 Miami Beach, FL 33140 _____
34*    Phone: __305-672-4550__ E-mail: __marteaga@nat.com__ Fax: __305-921-0749__
35*   (b) Additional deposit to be delivered to Escrow Agent within _____ (if left blank, then 10)
36*    days after Effective Date. ...................................................................$    0.00
37     (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit")
38*   (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8.............$    0.00
39*   (d) Other: _____ N/A _____ ...........................................$
40   (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire
41*    transfer or other COLLECTED funds ...........................................................$    1,226,700
42     NOTE: For the definition of "COLLECTION" or "COLLECTED" see STANDARD S.
43  **3. TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE DATE:**
44*   (a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before __December 6, 2013__
45*    _____, this offer shall be deemed withdrawn and the Deposit, if any, shall be returned to
46     Buyer. Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the day the
47     counter-offer is delivered.
48   (b) The effective date of this Contract shall be the date when the last one of the Buyer and Seller has signed or initialed
49*    and delivered this offer or final counter-offer ("Effective Date").
50  **4. CLOSING DATE:** Unless modified by other provisions of this Contract, the closing of this transaction shall occur and
51     the closing documents required to be furnished by each party pursuant to this Contract shall be delivered ("Closing") on
52*    __on or before 1/30/2014 1/31/14__, ("Closing Date"), at the time established by the Closing Agent.
53  **5. EXTENSION OF CLOSING DATE:**
54   (a) If Closing funds from Buyer's lender(s) are not available at time of Closing due to Truth in Lending Act (TILA) notice
55     requirements, Closing shall be extended for such period necessary to satisfy TILA notice requirements, not to
56     exceed 7 days.

Buyer's Initials _____ Page 1 of 11     Seller's Initials _____ ω _____
FloridaRealtors/FloridaBar-ASIS-2   Rev.6/13 © 2013 Florida Realtors®and The Florida Bar. All rights reserved.
Serial#: 065274-400136-6273951

36

Case: 17-05084   Doc# 73   Filed: 07/01/19   Entered: 07/01/19 14:56:17   Page 37 of
140

57    (b) If extreme weather or other condition or event constituting "Force Majeure" (see STANDARD G) causes: (i)
58    disruption of utilities or other services essential for Closing or (ii) Hazard, Wind, Flood or Homeowners' insurance,
59    to become unavailable prior to Closing, Closing shall be extended a reasonable time up to 3 days after restoration
60    of utilities and other services essential to Closing and availability of applicable Hazard, Wind, Flood or
61    Homeowners' insurance. If restoration of such utilities or services and availability of insurance has not occurred
62*    within   14   (if left blank, then 14) days after Closing Date, then either party may terminate this Contract by
63    delivering written notice to the other party, and Buyer shall be refunded the Deposit, thereby releasing Buyer and
64    Seller from all further obligations under this Contract.

65 **6. OCCUPANCY AND POSSESSION:**
66    (a) Unless the box in Paragraph 6(b) is checked, Seller shall, at Closing, deliver occupancy and possession of the
67    Property to Buyer free of tenants, occupants and future tenancies. Also, at Closing, Seller shall have removed all
68    personal items and trash from the Property and shall deliver all keys, garage door openers, access devices and
69    codes, as applicable, to Buyer. If occupancy is to be delivered before Closing, Buyer assumes all risks of loss to the
70    Property from date of occupancy, shall be responsible and liable for maintenance from that date, and shall be
71    deemed to have accepted the Property in its existing condition as of time of taking occupancy.
72*    (b) ☒ CHECK IF PROPERTY IS SUBJECT TO LEASE(S) OR OCCUPANCY AFTER CLOSING. If Property is
73    subject to a lease(s) after Closing or is intended to be rented or occupied by third parties beyond Closing, the facts
74    and terms thereof shall be disclosed in writing by Seller to Buyer and copies of the written lease(s) shall be
75    delivered to Buyer, all within 5 days after Effective Date. If Buyer determines, in Buyer's sole discretion, that the
76    lease(s) or terms of occupancy are not acceptable to Buyer, Buyer may terminate this Contract by delivery of
77    written notice of such election to Seller within 5 days after receipt of the above items from Seller, and Buyer shall be
78    refunded the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Estoppel
79    Letter(s) and Seller's affidavit shall be provided pursuant to STANDARD D. If Property is intended to be occupied
80    by Seller after Closing, see Rider U. POST-CLOSING OCCUPANCY BY SELLER.
81* **7. ASSIGNABILITY: (CHECK ONE):** Buyer ☐ may assign and thereby be released from any further liability under this
82*    Contract; ☒ may assign but not be released from liability under this Contract; or ☐ may not assign this Contract.

83                                            **FINANCING**

84 **8. FINANCING:**
85*    ☒ (a) Buyer will pay cash or may obtain a loan for the purchase of the Property. There is no financing contingency to
86    Buyer's obligation to close .
87*    ☐ (b) This Contract is contingent upon Buyer obtaining a written loan commitment for a ☐ conventional ☐ FHA ☐ VA
88*    or ☐ other _____ (describe) loan on the following terms within _____ (if left blank, then 30) days after
89*    Effective Date ("Loan Commitment Date") for (CHECK ONE): ☐ fixed, ☐ adjustable, ☐ fixed or adjustable rate loan in
90*    the Loan Amount (See Paragraph 2(c)), at an initial interest rate not to exceed _____ % (if left blank, then prevailing
91*    rate based upon Buyer's creditworthiness), and for a term of _____ (if left blank, then 30) years ("Financing").

92*    Buyer shall make mortgage loan application for the Financing within _____ (if left blank, then 5) days after Effective
93    Date and use good faith and diligent effort to obtain a written loan commitment for the Financing ("Loan Commitment")
94    and thereafter to close this Contract. Buyer shall keep Seller and Broker fully informed about the status of mortgage
95    loan application and Loan Commitment and authorizes Buyer's mortgage broker and Buyer's lender to disclose such
96    status and progress to Seller and Broker.

97
98    Upon Buyer's receipt of Loan Commitment, Buyer shall provide written notice of same to Seller. If Buyer does not
99    receive Loan Commitment by Loan Commitment Date, then thereafter either party may cancel this Contract up to the
100    earlier of:
101        (i.) Buyer's delivery of written notice to Seller that Buyer has either received Loan Commitment or elected to
102        waive the financing contingency of this Contract; or
103        (ii.) 7 days prior to Closing Date.

104    If either party timely cancels this Contract pursuant to this Paragraph 8 and Buyer is not in default under the terms of
105    this Contract, Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further obligations under
106    this Contract. If neither party has timely canceled this Contract pursuant to this Paragraph 8, then this financing
107    contingency shall be deemed waived by Buyer.

108    If Buyer delivers written notice of receipt of Loan Commitment to Seller and this Contract does not thereafter close, the
109    Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's default; (2) Property related conditions of the
110    Loan Commitment have not been met (except when such conditions are waived by other provisions of this Contract); (3)
111    appraisal of the Property obtained by Buyer's lender is insufficient to meet terms of the Loan Commitment; or (4) the
112    loan is not funded due to financial failure of Buyer's lender, in which event(s) the Deposit shall be returned to Buyer,
113    thereby releasing Buyer and Seller from all further obligations under this Contract.

Buyer's Initials ___ ___              Page 2 of 11              Seller's Initials ___ ___

FloridaRealtors/FloridaBar-ASIS-2  Rev.6/15 © 2015 Florida Realtors® and The Florida Bar.  All rights reserved.
Serial#: 065276-400136-4273991

CG-CD00031

114* ☐ (c) Assumption of existing mortgage (see rider for terms).
115* ☐ (d) Purchase money note and mortgage to Seller (see riders; addenda; or special clauses for terms).
116 **CLOSING COSTS, FEES AND CHARGES**
117 **9. CLOSING COSTS; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:**
118 **(a) COSTS TO BE PAID BY SELLER:**
119 • Documentary stamp taxes and surtax on deed, if any     • HOA/Condominium Association estoppel fees
120 • Owner's Policy and Charges (if Paragraph 9(c) (i) is checked)     • Recording and other fees needed to cure title
121 • Title search charges (if Paragraph 9(c) (iii) is checked)     • Seller's attorneys' fees
122* • Other: _____ N/A _____
123     If, prior to Closing, Seller is unable to meet the AS IS Maintenance Requirement as required by Paragraph 11 a
124 sum equal to 125% of estimated costs to meet the AS IS Maintenance Requirement shall be escrowed at Closing. If
125 actual costs to meet the AS IS Maintenance Requirement exceed escrowed amount, Seller shall pay such actual
126 costs. Any unused portion of escrowed amount(s) shall be returned to Seller.
127 **(b) COSTS TO BE PAID BY BUYER:**
128 • Taxes and recording fees on notes and mortgages     • Loan expenses
129 • Recording fees for deed and financing statements     • Appraisal fees
130 • Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked)     • Buyer's Inspections
131 • Survey (and elevation certification, if required)     • Buyer's attorneys' fees
132 • Lender's title policy and endorsements     • All property related insurance
133 • HOA/Condominium Association application/transfer fees     • Owner's Policy Premium (if Paragraph
134     9 (c) (iii) is checked.)
135* • Other: _____ N/A _____
136* **(c) TITLE EVIDENCE AND INSURANCE: At least _____ (if left blank, then 5) days prior to Closing Date, a title
137 insurance commitment issued by a Florida licensed title insurer, with legible copies of instruments listed as
138 exceptions attached thereto ("Title Commitment") and, after Closing, an owner's policy of title insurance (see
139 STANDARD A for terms) shall be obtained and delivered to Buyer. If Seller has an owner's policy of title insurance
140 covering the Real Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date.
141 The owner's title policy premium, title search, municipal lien search and closing services (collectively, "Owner's
142 Policy and Charges") shall be paid, as set forth below
143 (CHECK ONE):**
144* ☐ (i) Seller shall designate Closing Agent and pay for Owner's Policy and Charges (but not including charges for
145 closing services related to Buyer's lender's policy and endorsements and loan closing, which amounts shall be paid
146 by Buyer to Closing Agent or such other provider(s) as Buyer may select); or
147* ☐ (ii) Buyer shall designate Closing Agent and pay for Owner's Policy and Charges and charges for closing
148 services related to Buyer's lender's policy, endorsements, and loan closing; or
149* ☒ (iii) **(MIAMI-DADE/BROWARD REGIONAL PROVISION):** Seller shall furnish a copy of a prior owner's policy of
150 title insurance or other evidence of title and pay fees for: (A) a continuation or update of such title evidence, which
151 is acceptable to Buyer's title insurance underwriter for reissue of coverage; (B) tax search; and (C) municipal lien
152 search. Buyer shall obtain and pay for post-Closing continuation and premium for Buyer's owner's policy, and if
153* insured, Buyer's lender's policy. Seller shall not be obligated to pay more than $ 200.00 (if left blank,
154 then $200.00) for abstract continuation or title search ordered or performed by Closing Agent.
155 **SURVEY:** At least 5 days prior to Closing, Buyer may, at Buyer's expense, have the Real Property surveyed and
156 certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real Property, a copy shall
157 be furnished to Buyer and Closing Agent within 5 days after Effective Date.
158* **(e) HOME WARRANTY:** At Closing, ☐ Buyer ☐ Seller ☒ N/A shall pay for a home warranty plan issued by
159* _____ at a cost not to exceed $ N/A . A home
160 warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in
161 appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.
162* **SPECIAL ASSESSMENTS:** At Closing, Seller shall pay: (i) the full amount of liens imposed by a public body
163 ("public body" does not include a Condominium or Homeowner's Association) that are certified, confirmed and
164 ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an
165 improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being imposed
166 on the Property before Closing. Buyer shall pay all other assessments. If special assessments may be paid in
167 installments **(CHECK ONE):**
168* ☒ (a) Seller shall pay installments due prior to Closing and Buyer shall pay installments due after Closing.
169 Installments prepaid or due for the year of Closing shall be prorated.
170* ☒ (b) Seller shall pay the assessment(s) in full prior to or at the time of Closing.
171 IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.

Buyer's Initials _____ RH L _____    Page 3 of 11    Seller's Initials _____ (9) _____

FloridaRealtors/FloridaBar-ASIS-2 Rev.6/13 © 2013 Florida Realtors®and The Florida Bar. All rights reserved.
Serial#: 065274-400138-6273801

Case: 17-05084   Doc# 73   Filed: 07/01/19   Entered: 07/01/19 14:56:17   Page 39 of 140

172 This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district (CDD)
173 pursuant to Chapter 190, F.S., which lien shall be prorated pursuant to STANDARD K.

**DISCLOSURES**

175 **10. DISCLOSURES:**
176 (a) **RADON GAS:** Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in sufficient
177 quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal
178 and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon
179 testing may be obtained from your county health department.
180 (b) **PERMITS DISCLOSURE:** Except as may have been disclosed by Seller to Buyer in a written disclosure, Seller
181 does not know of any improvements made to the Property which were made without required permits or made
182 pursuant to permits which have not been properly closed.
183 (c) **MOLD:** Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or
184 desires additional information regarding mold, Buyer should contact an appropriate professional.
185 (d) **FLOOD ZONE; ELEVATION CERTIFICATION:** Buyer is advised to verify by elevation certificate which flood zone
186 the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to improving
187 the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area" or "Coastal
188 Barrier Resources Act" designated area or otherwise protected area identified by the U.S. Fish and Wildlife Service
189 under the Coastal Barrier Resources Act and the lowest floor elevation for the building(s) and /or flood insurance
190 rating purposes is below minimum flood elevation or is ineligible for flood insurance through the National Flood
191* Insurance Program, Buyer may terminate this Contract by delivering written notice to Seller within _____ (if left
192 blank, then 20) days after Effective Date, and Buyer shall be refunded the Deposit thereby releasing Buyer and
193 Seller from all further obligations under this Contract, failing which Buyer accepts existing condition of buildings and
194 flood zone designation of Property. The National Flood Insurance Reform Act of 2012 (referred to as Biggert-
195 Waters 2012) may phase in actuarial rating of pre-FIRM non-primary structures
196 (residential structures in which the insured or spouse does not reside for at least 80% of the year) and an elevation
197 certificate may be required for actuarial rating.
198 (e) **ENERGY BROCHURE:** Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information Brochure
199 required by Section 553.996, F.S.
200 (f) **LEAD-BASED PAINT:** If Property includes pre-1978 residential housing, a lead-based paint disclosure is
201 mandatory.
202 (g) **HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS**
203 **CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE HOMEOWNERS' ASSOCIATION/COMMUNITY**
204 **DISCLOSURE, IF APPLICABLE.**
205 (h) **PROPERTY TAX DISCLOSURE SUMMARY:** BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT
206 PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO
207 PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY
208 IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER
209 PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY
210 PROPERTY APPRAISER'S OFFICE FOR INFORMATION.
211 (i) **FIRPTA TAX WITHHOLDING:** Seller shall inform Buyer in writing if Seller is a "foreign person" as defined by the
212 Foreign Investment in Real Property Tax Act ("FIRPTA"). Buyer and Seller shall comply with FIRPTA, which may
213 require Seller to provide additional cash at Closing. If Seller is not a "foreign person", Seller can provide Buyer, at or
214 prior to Closing, a certification of non-foreign status, under penalties of perjury, to inform Buyer and Closing Agent
215 that no withholding is required. See STANDARD V for further information pertaining to FIRPTA. Buyer and Seller
216 are advised to seek legal counsel and tax advice regarding their respective rights, obligations, reporting and
217 withholding requirements pursuant to FIRPTA.
218 (j) **SELLER DISCLOSURE:** Seller knows of no facts materially affecting the value of the Real Property which are not
219 readily observable and which have not been disclosed to Buyer. Except as provided for in the preceding sentence,
220 Seller extends and intends no warranty and makes no representation of any type, either express or implied, as to
221 the physical condition or history of the Property. Except as otherwise disclosed in writing Seller has received no
222 written or verbal notice from any governmental entity or agency as to a currently uncorrected building,
223 environmental or safety code violation.

224 **PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS**

225 **11. PROPERTY MAINTENANCE:** Except for ordinary wear and tear and Casualty Loss, Seller shall maintain the Property,
226 including, but not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("AS IS
227 Maintenance Requirement").

Buyer's Initials _CA_ _RH.L_ Page 4 of 11 Seller's Initials _CD_ _____
FloridaRealtors/FloridaBar-ASIS-4 Rev.6/10 © 2015 Florida Realtors® and The Florida Bar. All rights reserved.
Serial: 065278-406138-4273951

39

**12. PROPERTY INSPECTION; RIGHT TO CANCEL:**

(a) *PROPERTY INSPECTIONS AND RIGHT TO CANCEL: Buyer shall have* ___15___ *(if left blank, then 15) days after Effective Date ("Inspection Period") within which to have such inspections of the Property performed as Buyer shall desire during the Inspection Period. If Buyer determines, in Buyer's sole discretion, that the Property is not acceptable to Buyer, Buyer may terminate this Contract by delivering written notice of such election to Seller prior to expiration of Inspection Period. If Buyer timely terminates this Contract, the Deposit paid shall be returned to Buyer, thereupon, Buyer and Seller shall be released of all further obligations under this Contract; however, Buyer shall be responsible for prompt payment for such inspections, for repair of damage to, and restoration of, the Property resulting from such inspections, and shall provide Seller with paid receipts for all work done on the Property (the preceding provision shall survive termination of this Contract). Unless Buyer exercises the right to terminate granted herein, Buyer accepts the physical condition of the Property and any violation of governmental, building, environmental, and safety codes, restrictions, or requirements, but subject to Seller's continuing AS IS Maintenance Requirement, and Buyer shall be responsible for any and all repairs and improvements required by Buyer's lender.*

(b) **WALK-THROUGH INSPECTION/RE-INSPECTION:** On the day prior to Closing Date, or on Closing Date prior to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and follow-up walk-through, if necessary) inspection of the Property solely to confirm that all items of Personal Property are on the Property and to verify that Seller has maintained the Property as required by the AS IS Maintenance Requirement and has met all other contractual obligations.

(c) **SELLER ASSISTANCE AND COOPERATION IN CLOSE-OUT OF BUILDING PERMITS:** If Buyer's inspection of the Property identifies open or needed building permits, then Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control relating to improvements to the Property which are the subject of such open or needed Permits, and shall promptly cooperate in good faith with Buyer's efforts to obtain estimates of repairs or other work necessary to resolve such Permit issues. Seller's obligation to cooperate shall include Seller's execution of necessary authorizations, consents, or other documents necessary for Buyer to conduct inspections and have estimates of such repairs or work prepared, but in fulfilling such obligation, Seller shall not be required to expend, or become obligated to expend, any money.

(d) **ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES:** At Buyer's option and cost, Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties to Buyer.

### ESCROW AGENT AND BROKER

**13. ESCROW AGENT:** Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds and other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow within the State of Florida and, subject to **COLLECTION**, disburse them in accordance with terms and conditions of this Contract. Failure of funds to become **COLLECTION** shall not excuse Buyer's performance. When conflicting demands for the Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent may take such actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties or liabilities under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow until the parties agree to its disbursement or until a final judgment of a court of competent jurisdiction shall determine the rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction of the dispute. An attorney who represents a party and also acts as Agent may represent such party in such action. Upon notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate, except to the extent of accounting for any items previously delivered out of escrow. If a licensed real estate broker, Agent will comply with provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve escrow disputes through mediation, arbitration, interpleader or an escrow disbursement order.

Any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder, or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent. Agent shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is due to Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing or termination of this Contract.

**14. PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify Property condition, square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or public records. **BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) OF BROKER.**

Buyer's Initials ___C A R H L___          Page 5 of 11          Seller's Initials ___CJ___
FloridaRealtors/FloridaBar-ASIS-3  Rev. 4/17 © 2017 Florida Realtors® and The Florida Bar.  All rights reserved.
Serial#: 066275-400138-6273851

40

287    Buyer and Seller (individually, the "Indemnifying Party") each individually indemnifies, holds harmless, and releases
288    Broker and Broker's officers, directors, agents and employees from all liability for loss or damage, including all costs
289    and expenses, and reasonable attorney's fees at all levels, suffered or incurred by Broker and Broker's officers,
290    directors, agents and employees in connection with or arising from claims, demands or causes of action instituted by
291    Buyer or Seller based on: (i) inaccuracy of information provided by the Indemnifying Party or from public records; (ii)
292    Indemnifying Party's misstatement(s) or failure to perform contractual obligations; (iii) Broker's performance, at
293    Indemnifying Party's request, of any task beyond the scope of services regulated by Chapter 475, F.S., as amended,
294    including Broker's referral, recommendation or retention of any vendor for, or on behalf of Indemnifying Party; (iv)
295    products or services provided by any such vendor for, or on behalf of, Indemnifying Party; and (v) expenses incurred by
296    any such vendor. Buyer and Seller each assumes full responsibility for selecting and compensating their respective
297    vendors and paying their own costs under this Contract whether or not this transaction closes. This Paragraph 14 will
298    not relieve Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes of this Paragraph 14,
299    Broker will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or termination of this Contract.

300                         **DEFAULT AND DISPUTE RESOLUTION**

301    **15. DEFAULT:**
302      (a)  **BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract, including
303           payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the Deposit for the
304           account of Seller as agreed upon liquidated damages, consideration for execution of this Contract, and in full
305           settlement of any claims, whereupon Buyer and Seller shall be relieved from all further obligations under this
306           Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity to enforce Seller's rights
307           under this Contract. The portion of the Deposit, if any, paid to Listing Broker upon default by Buyer, shall be split
308           equally between Listing Broker and Cooperating Broker, provided however, Cooperating Broker's share shall not be
309           greater than the commission amount Listing Broker had agreed to pay to Cooperating Broker.
310      (b)  **SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after reasonable
311           diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract, Buyer may elect to
312           receive return of Buyer's Deposit without thereby waiving any action for damages resulting from Seller's breach,
313           and, pursuant to Paragraph 16, may seek to recover such damages or seek specific performance.
314    This Paragraph 15 shall survive Closing or termination of this Contract.
315    **16. DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question between Buyer and Seller
316    arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be settled as
317    follows:
318      (a)  Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to
319           resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under Paragraph
320           16(b).
321      (b)  Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida
322           Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules"). The
323           mediator must be certified or must have experience in the real estate industry. Injunctive relief may be sought
324           without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16 may be
325           resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph 16 shall
326           survive Closing or termination of this Contract.
327    **17. ATTORNEY'S FEES; COSTS:** The parties will split equally any mediation fee incurred in any mediation permitted by
328    this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in
329    conducting the mediation. In any litigation permitted by this Contract, the prevailing party shall be entitled to recover
330    from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting the litigation.
331    This Paragraph 17 shall survive Closing or termination of this Contract.

332                  **STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")**

333    **18. STANDARDS:**
334      **A.  TITLE:**
335      (i) **TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in Paragraph
336      9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall be issued and
337      delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at or before Closing
338      and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance in the amount of the
339      Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the Real Property, subject only to the
340      following matters: (a) comprehensive land use plans, zoning, and other land use restrictions, prohibitions and
341      requirements imposed by governmental authority; (b) restrictions and matters appearing on the Plat or otherwise
342      common to the subdivision; (c) outstanding oil, gas and mineral rights of record without right of entry; (d) unplatted
343      public utility easements of record (located contiguous to real property lines and not more than 10 feet in width as to rear
344      or front lines and 7 1/2 feet in width as to side lines); (e) taxes for year of Closing and subsequent years, and (f)

Buyer's Initials   _RH. L_           Page 6 of 11          Seller's Initials   _(s)_         

FloridaRealtors/FloridaBar-ASIS-2  Rev.6/13 © 2013 Florida Realtors® and The Florida Bar. All rights reserved.
Serial#: 045276-400136-4273861

DocuSign Envelope ID: 5DEEF867-300C-4DF2-8AE5-218020FD6F01

DocuSign Envelope ID: 902EF925-2ECE-4734-8846-C84C861191E8

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

345    assumed mortgages and purchase money mortgages, if any (if additional items, attach addendum); provided, that, none
346    prevent use of Property for **RESIDENTIAL PURPOSES**. If there exists at Closing any violation of items identified in (b)
347    -- (f) above, then the same shall be deemed a title defect. Marketable title shall be determined according to applicable
348    Title Standards adopted by authority of The Florida Bar and in accordance with law.
349    **(ii) TITLE EXAMINATION:** Buyer shall have 5 days after receipt of Title Commitment to examine it and notify Seller in
350    writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and it is delivered
351    to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after date of receipt to
352    examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period") after receipt of Buyer's
353    notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify Seller, Buyer shall be deemed to
354    have accepted title as it then is. If Seller cures defects within Cure Period, Seller will deliver written notice to Buyer (with
355    proof of cure acceptable to Buyer and Buyer's attorney) and the parties will close this Contract on Closing Date (or if
356    Closing Date has passed, within 10 days after Buyer's receipt of Seller's notice). If Seller is unable to cure defects
357    within Cure Period, then Buyer may, within 5 days after expiration of Cure Period, deliver written notice to Seller: (a)
358    extending Cure Period for a specified period not to exceed 120 days within which Seller shall continue to use
359    reasonable diligent effort to remove or cure the defects ("Extended Cure Period"); or (b) electing to accept title with
360    existing defects and close this Contract on Closing Date (or if Closing Date has passed, within the earlier of 10 days
361    after end of Extended Cure Period or Buyer's receipt of Seller's notice), or (c) electing to terminate this Contract and
362    receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. If
363    after reasonable diligent effort, Seller is unable to timely cure defects, and Buyer does not waive the defects, this
364    Contract shall terminate, and Buyer shall receive a refund of the Deposit, thereby releasing Buyer and Seller from all
365    further obligations under this Contract.
366    **B. SURVEY:** If Survey discloses encroachments on the Real Property or that improvements located thereon encroach
367    on setback lines, easements, or lands of others, or violate any restrictions, covenants, or applicable governmental
368    regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of such matters,
369    together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later than Closing. If Buyer
370    timely delivers such notice and Survey to Seller, such matters identified in the notice and Survey shall constitute a title
371    defect, subject to cure obligations of STANDARD A above. If Seller has delivered a prior survey, Seller shall, at Buyer's
372    request, execute an affidavit of "no change" to the Real Property since the preparation of such prior survey, to the
373    extent the affirmations therein are true and correct.
374    **C. INGRESS AND EGRESS:** Seller represents that there is ingress and egress to the Real Property and title to the
375    Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of access.
376    **D. LEASE INFORMATION:** Seller shall, at least 10 days prior to Closing, furnish to Buyer estoppel letters from
377    tenant(s)/occupant(s) specifying nature and duration of occupancy, rental rates, advanced rent and security deposits
378    paid by tenant(s) or occupant(s)("Estoppel Letter(s)"). If Seller is unable to obtain such Estoppel Letter(s) the same
379    information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit and Buyer may
380    thereafter contact tenant(s) or occupant(s) to confirm such information. If Estoppel Letter(s) or Seller's affidavit, if any,
381    differ materially from Seller's representations and lease(s) provided pursuant to Paragraph 6, or if tenant(s)/occupant(s)
382    fail or refuse to confirm Seller's affidavit, Buyer may deliver written notice to Seller within 5 days after receipt of such
383    information, but no later than 5 days prior to Closing Date, terminating this Contract and receive a refund of the Deposit,
384    thereby releasing Buyer and Seller from all further obligations under this Contract. Seller shall, at Closing, deliver and
385    assign all leases to Buyer who shall assume Seller's obligations thereunder.
386    **E. LIENS:** Seller shall furnish to Buyer at Closing an affidavit attesting (i) to the absence of any financing statement,
387    claims of lien or potential lienors known to Seller and (ii) that there have been no improvements or repairs to the Real
388    Property for 90 days immediately preceding Closing Date. If the Real Property has been improved or repaired within
389    that time, Seller shall deliver releases or waivers of construction liens executed by all general contractors,
390    subcontractors, suppliers and materialmen in addition to Seller's lien affidavit setting forth names of all such general
391    contractors, subcontractors, suppliers and materialmen, further affirming that all charges for improvements or repairs
392    which could serve as a basis for a construction lien or a claim for damages have been paid or will be paid at Closing.
393    **F. TIME:** Calendar days shall be used in computing time periods. Time is of the essence in this Contract.
394    Other than time for acceptance and Effective Date as set forth in Paragraph 3, any time periods provided for or dates
395    specified in this Contract, whether preprinted, handwritten, typewritten or inserted herein, which shall end or occur on a
396    Saturday, Sunday, or a national legal holiday (see 5 U.S.C. 6103) shall extend to 5:00 p.m. (where the Property is
397    located) of the next business day.
398    **G. FORCE MAJEURE:** Buyer or Seller shall not be required to perform any obligation under this Contract or be liable
399    to each other for damages so long as performance or non-performance of the obligation is delayed, caused or
400    prevented by Force Majeure. "Force Majeure" means: hurricanes, earthquakes, floods, fire, acts of God, unusual
401    transportation delays, wars, insurrections, acts of terrorism, and any other cause not reasonably within control of Buyer
402    or Seller, and which, by exercise of reasonable diligent effort, the non-performing party is unable in whole or in part to
403    prevent or overcome. All time periods, including Closing Date, will be extended for the period that the Force Majeure
404    prevents performance under this Contract, provided, however, if such Force Majeure continues to prevent performance

Buyer's Initials _____    Page 7 of 11    Seller's Initials _____

FloridaRealtors/FloridaBar-ASIS-2   Rev.9/13 © 2013 Florida Realtors®and The Florida Bar. All rights reserved.
Serial#: 065276-400138-4273861

42

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

under this Contract more than 14 days beyond Closing Date, then either party may terminate this Contract by delivering written notice to the other and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.

**H. CONVEYANCE:** Seller shall convey marketable title to the Real Property by statutory warranty, trustee's, personal representative's, or guardian's deed, as appropriate to the status of Seller, subject only to matters described in STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer, be transferred by absolute bill of sale with warranty of title, subject only to such matters as may be provided for in this Contract.

**I. CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:**

**(i) LOCATION:** Closing will take place in the county where the Real Property is located at the office of the attorney or other closing agent ("Closing Agent") designated by the party paying for the owner's policy of title insurance, or, if no title insurance, designated by Seller. Closing may be conducted by mail or electronic means.

**(ii) CLOSING DOCUMENTS:** Seller shall at or prior to Closing, execute and deliver, as applicable, deed, bill of sale, certificate(s) of title or other documents necessary to transfer title to the Property, construction lien affidavit(s), owner's possession and no lien affidavit(s), and assignment(s) of leases. Seller shall provide Buyer with paid receipts for all work done on the Property pursuant to this Contract. Buyer shall furnish and pay for, as applicable the survey, flood elevation certification, and documents required by Buyer's lender.

**(iii) PROCEDURE:** The deed shall be recorded upon COLLECTION of all closing funds. If the Title Commitment provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the escrow closing procedure required by STANDARD J shall be waived, and Closing Agent shall, **subject to COLLECTION of all closing funds**, disburse at Closing the brokerage fees to Broker and the net sale proceeds to Seller.

**J. ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following escrow and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent for a period of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault of Buyer, Buyer shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days from date of receipt of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit and all Closing funds paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and, simultaneously with such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-convey the Property to Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely demand for refund of the Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening defect except as may be available to Buyer by virtue of warranties contained in the deed or bill of sale.

**K. PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as of the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes (including special benefit tax assessments imposed by a CDD), interest, bonds, association fees, insurance, rents and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if assumable, in which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required by prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will be credited to Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated based on current year's tax with due allowance made for maximum allowable discount, homestead and other exemptions. If Closing occurs on a date when current year's millage is not fixed but current year's assessment is available, taxes will be prorated based upon such assessment and prior year's millage. If current year's assessment is not available, then taxes will be prorated on prior year's tax. If there are completed improvements on the Real Property by January 1st of year of Closing, which improvements were not in existence on January 1st of prior year, then taxes shall be prorated based upon prior year's millage and at an equitable assessment to be agreed upon between the parties, failing which, request shall be made to the County Property Appraiser for an informal assessment taking into account available exemptions. A tax proration based on an estimate shall, at either party's request, be readjusted upon receipt of current year's tax bill. This STANDARD K shall survive Closing.

**L. ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller shall, upon reasonable notice, provide utilities service and access to Property for appraisals and inspections, including a walk-through (or follow-up walk-through if necessary) prior to Closing.

**M. RISK OF LOSS:** If, after Effective Date, but before Closing, Property is damaged by fire or other casualty ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does not exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed pursuant to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated cost to complete restoration (not to exceed 1.5% of Purchase Price), will be escrowed at Closing. If actual cost of restoration exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5%, or receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.

Buyer's Initials _____ _____ Page 8 of 11 Seller's Initials _____ (J) _____

FloridaRealtors/FloridaBar-ASIS-2   Rev.5/15 © 2015 Florida Realtors® and The Florida Bar.  All rights reserved.

Serial#: 065276-400138-6273951

Case: 17-05084   Doc# 73   Filed: 07/01/19   Entered: 07/01/19 14:56:17   Page 44 of
140

CGC-C200037

DocuSign Envelope ID: 5DEEF887-3DCC-4DF2-8AE5-218D2DFD6F01

DocuSign Envelope ID: 902EF925-2ECE-4734-9846-C64C861191E8

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

**N. 1031 EXCHANGE:** If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneously with Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate in all reasonable respects to effectuate the Exchange, including execution of documents; provided, however, cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be contingent upon, nor extended or delayed by, such Exchange.

**O. CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; DELIVERY; COPIES; CONTRACT EXECUTION:** Neither this Contract nor any notice of it shall be recorded in any public records. This Contract shall be binding on, and inure to the benefit of, the parties and their respective heirs or successors in interest. Whenever the context permits, singular shall include plural and one gender shall include all. Notice and delivery given by or to the attorney or broker (including such broker's real estate licensee) representing any party shall be as effective as if given by or to that party. All notices must be in writing and may be made by mail, personal delivery or electronic (including "pdf") media. A facsimile or electronic (including "pdf") copy of this Contract and any signatures hereon shall be considered for all purposes as an original. This Contract may be executed by use of electronic signatures, as determined by Florida's Electronic Signature Act and other applicable laws.

**P. INTEGRATION; MODIFICATION:** This Contract contains the full and complete understanding and agreement of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or representations shall be binding upon Buyer or Seller unless included in this Contract. No modification to or change in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended to be bound by it.

**Q. WAIVER:** Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or rights.

**R. RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Riders, addenda, and typewritten or handwritten provisions shall control all printed provisions of this Contract in conflict with them.

**S. COLLECTION or COLLECTED: "COLLECTION" or "COLLECTED" means any checks tendered or received, including Deposits, have become actually and finally collected and deposited in the account of Escrow Agent or Closing Agent. Closing and disbursement of funds and delivery of closing documents may be delayed by Closing Agent until such amounts have been COLLECTED in Closing Agent's accounts.**

**T. LOAN COMMITMENT:** "Loan Commitment" means a statement by the lender setting forth the terms and conditions upon which the lender is willing to make a particular mortgage loan to a particular borrower. Neither a pre-approval letter nor a prequalification letter shall be deemed a Loan Commitment for purposes of this Contract .

**U. APPLICABLE LAW AND VENUE:** This Contract shall be construed in accordance with the laws of the State of Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the county where the Real Property is located.

**V. FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA"):** If a seller of U.S. real property is a "foreign person" as defined by FIRPTA, Section 1445 of the Internal Revenue Code requires the buyer of the real property to withhold 10% of the amount realized by the seller on the transfer and remit the withheld amount to the Internal Revenue Service (IRS) unless an exemption to the required withholding applies or the seller has obtained a Withholding Certificate from the IRS authorizing a reduced amount of withholding. Due to the complexity and potential risks of FIRPTA, Buyer and Seller should seek legal and tax advice regarding compliance, particularly if an "exemption" is claimed on the sale of residential property for $300,000 or less.

(i)   No withholding is required under Section 1445 if the Seller is not a "foreign person", provided Buyer accepts proof of same from Seller, which may include Buyer's receipt of certification of non-foreign status from Seller, signed under penalties of perjury, stating that Seller is not a foreign person and containing Seller's name, U.S. taxpayer identification number and home address (or office address, in the case of an entity), as provided for in 26 CFR 1.1445-2(b). Otherwise, Buyer shall withhold 10% of the amount realized by Seller on the transfer and timely remit said funds to the IRS.

(ii)  If Seller has received a Withholding Certificate from the IRS which provides for reduced or eliminated withholding in this transaction and provides same to Buyer by Closing, then Buyer shall withhold the reduced sum, if any required, and timely remit said funds to the IRS.

(iii) If prior to Closing Seller has submitted a completed application to the IRS for a Withholding Certificate and has provided to Buyer the notice required by 26 CFR 1.1445-1(c) (2)(i)(B) but no Withholding Certificate has been received as of Closing, Buyer shall, at Closing, withhold 10% of the amount realized by Seller on the transfer and, at Buyer's option, either (a) timely remit the withheld funds to the IRS or (b) place the funds in escrow, at Seller's expense, with an escrow agent selected by Buyer and pursuant to terms negotiated by the parties, to be subsequently disbursed in accordance with the Withholding Certificate issued by the IRS or remitted directly to the IRS if the Seller's application is rejected or upon terms set forth in the escrow agreement.

(iv) In the event the net proceeds due Seller are not sufficient to meet the withholding requirement(s) in this transaction, Seller shall deliver to Buyer, at Closing, the additional COLLECTED funds necessary to satisfy the applicable requirement and thereafter Buyer shall timely remit said funds to the IRS or escrow the funds for disbursement in accordance with the final determination of the IRS, as applicable.

Buyer's Initials _____   Page 9 of 11   Seller's Initials _____

FloridaRealtors/FloridaBar-ASIS-2   Rev.6/14 © 2015 Florida Realtors® and The Florida Bar. All rights reserved.
Serial#: 065276-400138-6273951

44

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

525 (v) Upon remitting funds to the IRS pursuant to this STANDARD, Buyer shall provide Seller copies of IRS Forms 8288
526 and 8288-A, as filed.
527 **W.** RESERVED
528 **X. BUYER WAIVER OF CLAIMS:** *To the extent permitted by law, Buyer waives any claims against Seller and*
529 *against any real estate licensee involved in the negotiation of this Contract for any damage or defects*
530 *pertaining to the physical condition of the Property that may exist at Closing of this Contract and be*
531 *subsequently discovered by the Buyer or anyone claiming by, through, under or against the Buyer. This*
532 *provision does not relieve Seller's obligation to comply with Paragraph 10(j). This Standard X shall survive*
533 *Closing.*
534

**ADDENDA AND ADDITIONAL TERMS**

535 **19. ADDENDA:** The following additional terms are included in the attached addenda or riders and incorporated into this
536* Contract (Check if applicable):

| | | | |
|---|---|---|---|
| ☒ A. Condominium Rider | ☐ M. Defective Drywall | ☐ X. Kick-out Clause | |
| ☐ B. Homeowners' Assn. | ☐ N. Coastal Construction Control Line | ☐ Y. Seller's Attorney Approval | |
| ☐ C. Seller Financing | ☐ O. Insulation Disclosure | ☐ Z. Buyer's Attorney Approval | |
| ☐ D. Mortgage Assumption | ☐ P. Lead Based Paint Disclosure | ☐ AA. Licensee-Personal Interest in | |
| ☐ E. FHA/VA Financing | (Pre-1978 Housing) | Property | |
| ☐ F. Appraisal Contingency | ☐ Q. Housing for Older Persons | ☐ BB. Binding Arbitration | |
| ☐ G. Short Sale | ☐ R. Rezoning | ☒ Other Property Disclosure | |
| ☐ H. Homeowners'/Flood Ins. | ☐ S. Lease Purchase/ Lease Option | ☒ FIRPTA | |
| ☐ I. RESERVED | ☐ T. Pre-Closing Occupancy by Buyer | | |
| ☐ J. Interest-Bearing Acct. | ☐ U. Post-Closing Occupancy by Seller | | |
| ☐ K. RESERVED | ☐ V. Sale of Buyer's Property | | |
| ☐ L. RESERVED | ☐ W. Back-up Contract | | |

537* **20. ADDITIONAL TERMS:** 1. IN ANY LITIGATION, INCLUDING BREACH, ENFORCEMENT OR INTERPRETATION, ARISING
538 OUT OF THIS CONTRACT, THE PREVAILING PARTY IN SUCH LITIGATION, WHICH SHALL INCLUDE SELLER, BUYER
539 AND ANY BROKERS ACTING IN AGENCY OR NON AGENCY RELATIONSHIPS AUTHORIZED BY CHAPTER 475, F.S.,
540 AS AMENDED, SHALL BE ENTITLED TO RECOVER FROM THE NON-PREVAILING PARTY REASONABLE ATTORNEY'S
541 FEES, COST AND EXPENSES.
542
543 2. PARTY REPRESENTED BY SBI REALTY, WILL PAY AN ADMINISTRATIVE FEE OF $395, PAYABLE AT CLOSING.
544
545 3. SELLER WILL SATISFY ALL LIENS AND/OR OPEN PERMITS PRIOR TO DATE OF CLOSING.
546
547 4. IN THE EVENT THERE ARE ANY OPEN PERMITS THAT REQUIRE COSTS TO BE INCURRED FOR CLOSURE
548 THEREOF, THEN SELLER WILL HAVE THE OPTION OF PAYING THOSE COSTS, AND IF SELLER CHOOSES NOT TO
549 PAY THOSE COSTS, THEN BUYER WILL HAVE THE OPTION OF EITHER ACCEPTING THE OPEN PERMIT(S) OR
550 CANCELING THE CONTRACT.
551 ~~5. Buyer is buying the property without the current Tenant lease obligations. Seller must provide proof of current Tenant~~
552 ~~contract being canceled.~~
553

554 **COUNTER-OFFER/REJECTION**

555* ☐ Seller counters Buyer's offer (to accept the counter-offer, Buyer must sign or initial the counter-offered terms and deliver
556 a copy of the acceptance to Seller).
557* ☐ Seller rejects Buyer's offer.

558 **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE ADVICE OF**
559 **AN ATTORNEY PRIOR TO SIGNING.**

560 **THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.**

561 *Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the terms and*
562 *conditions in this Contract should be accepted by the parties in a particular transaction. Terms and conditions should be*
563 *negotiated based upon the respective interests, objectives and bargaining positions of all interested persons.*

Buyer's Initials [ARHL] Page 10 of 11 Seller's Initials [CO]
FloridaRealtors/FloridaBar-ASIS-2 Rev.8/13 © 2013 Florida Realtors® and The Florida Bar. All rights reserved.
Serial#: 083278-400138-6273991

Case: 17-05084   Doc# 73   Filed: 07/01/19   Entered: 07/01/19 14:56:17   Page 46 of
140

564 AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK TO BE
565 COMPLETED.
566
567
568* Buyer _____    Date: 12/5/2013
569
570
571
572
573* Buyer _____    Date: 12/5/2013
574
575
576
577
578* Seller _____    Date: 12/06/13
579
580
581
582
583* Seller _____    Date: _____
584
585 Buyer's address for purposes of notice          Seller's address for purposes of notice
586* _____        _____
587* _____        _____
588* _____        _____
589
590 **BROKER:** Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers entitled to
591 compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct Closing Agent to
592 disburse at Closing the full amount of the brokerage fees as specified in separate brokerage agreements with the parties
593 and cooperative agreements between the Brokers, except to the extent Broker has retained such fees from the escrowed
594 funds. This Contract shall not modify any MLS or other offer of compensation made by Seller or Listing Broker to
595 Cooperating Brokers.
596
597* _____Edgar Alba_____              _____Carlo Dipasquale_____
598 **Cooperating Sales Associate, if any**          **Listing Sales Associate**
599
600* ____South Beach International Realty 3%____       ____Cervera Real Estate Inc. 2.5%____
601 **Cooperating Broker, if any**                   **Listing Broker**

FloridaRealtors/FloridaBar-ASIS-2    Rev.8/13 © 2013 Florida Realtors® and The Florida Bar. All rights reserved.
Serial: 065276-400136-4272951

46

DocuSign Envelope ID: 5DEEF867-300C-4DF2-8AE5-216020FD6F01

DocuSign Envelope ID: 902EF925-2ECE-4734-9846-C64C861191E8

### Addendum to Contract for Residential Sale and Purchase



1  If initialed by all parties, the terms below will be incorporated into the Contract for Residential Sale and Purchase
2* between _____ ISNA LLC _____ ("Seller")
3* and _____ Adriana Ruppert & Heinrich Leopold Lehner _____ ("Buyer")
4* concerning the Property described as 520 WEST AV #2403, Miami Beach, FL 33139-6768
5* _____

6* (_____) **Property Disclosure:** This Contract is contingent on **Seller** completing, signing,
7  and delivering to **Buyer** a written real property disclosure statement within 3 days after Effective Date. If the
8  statement discloses any material information about the Property that is unacceptable to **Buyer**, **Buyer** may cancel
9  this Contract by giving written notice to **Seller** within 3 days after receipt of **Seller's** written statement; and **Buyer's**
10 deposit(s) will be refunded.

CRSP-12 (Property Disclosure Addendum)   ©2012 Florida Association of Realtors®   All Rights Reserved

Serial#: 036448-680135-3335792

47

DocuSign Envelope ID: 5DEEF867-300C-4DF2-8AE5-218020FD6F01

DocuSign Envelope ID: 902EF925-2ECE-4734-9846-C64C861191EB

**Comprehensive Rider to the**
**Residential Contract For Sale And Purchase**
THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR



If initialed by all parties, the clauses below will be incorporated into the Florida Realtors*/Florida Bar Residential Contract
For Sale And Purchase between_____ISNA LLC_____(SELLER)
and_____Adriana Ruppert & Heinrich Leopold Lehner_____(BUYER)
concerning the Property described as 520  WEST AV #2403, Miami Beach, FL 33139-6768

**Buyer's Initials** [A.R.] [H.L.]  **Seller's Initials** [AO]

## A. CONDOMINIUM RIDER

1. **CONDOMINIUM ASSOCIATION APPROVAL:**
   The Association's approval of Buyer (CHECK ONE): ☒ is ☐ is not required. If approval is required, this Contract is contingent upon Buyer being approved by the Association no later than _____5_____ (if left blank, then 5) days prior to Closing. Within _____5_____ (if left blank, then 5) days after Effective Date Seller shall initiate the approval process with the Association and Buyer shall apply for such approval. Buyer and Seller shall sign and deliver any documents required by the Association in order to complete the transfer of the Property and each shall use diligent effort to obtain such approval, including making personal appearances if required. If Buyer is not approved within the stated time period, this Contract shall terminate and Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

2. **RIGHT OF FIRST REFUSAL:**
   (a) The Association (CHECK ONE): ☐ has ☒ does not have a right of first refusal ("Right"). If the Association has a Right, this Contract is contingent upon the Association, within the time permitted for the exercise of such Right, either providing written confirmation to Buyer that the Association is not exercising that Right, or failing to timely exercise such Right pursuant to the terms of the Declaration of Condominium ("Declaration", which reference includes all amendments thereto).
   (b) The members of the Association (CHECK ONE): ☐ have ☒ do not have a Right. If the members do have a Right, this Contract is contingent upon the members, within the time permitted for the exercise of such Right, either providing written confirmation to Buyer that the members are not exercising that Right, or failing to timely exercise such Right pursuant to the terms of the Declaration.
   (c) Buyer and Seller shall, within _____5_____ (if left blank, then 5) days after Effective Date, sign and deliver any documents required as a condition precedent to the exercise of the Right, and shall use diligent effort to submit and process the matter with the Association and members, including personal appearances, if required.
   (d) If, within the stated time period, the Association, the members of the Association, or both, fail to provide the written confirmation or the Right has not otherwise expired, then this Contract shall terminate and the Deposit shall be refunded to the Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.
   (e) If the Association or a member timely exercises its or their Right, this Contract shall terminate and the Deposit shall be refunded to Buyer (unless this Contract provides otherwise), thereby releasing Buyer and Seller from all further obligations under this Contract, and Seller shall pay to Broker the full commission at Closing in recognition that Broker procured the sale.

3. **FEES; ASSESSMENTS; PRORATIONS; LITIGATION:**
   (a) Condominium Association assessment(s) and Rents: Seller represents that the current Association assessment(s) installments is/are
   $____1,157.00____ payable (CHECK ONE): ☒ monthly ☐ quarterly ☐ semi-annually ☐ annually
   and if more than one Association assessment
   $_____ payable (CHECK ONE): ☐ monthly ☐ quarterly ☐ semi-annually ☐ annually
   and the current rent on recreation areas, if any, is
   $_____ payable (CHECK ONE): ☐ monthly ☐ quarterly ☐ semi-annually ☐ annually

Page 1 of 3   A. CONDOMINIUM RIDER                                            (SEE CONTINUATION)
CR-2  Rev. 8/13  © 2013 Florida Realtors® and The Florida Bar.  All rights reserved.

Serial#: 063983-600138-6564343

48

DocuSign Envelope ID: 5DEEF667-300C-4DF2-8AE5-218020FD6F01

DocuSign Envelope ID: 902EF925-2ECE-4734-9846-C64C561191E8

### A. CONDOMINIUM RIDER (CONTINUED)

All annual assessments levied by the Association and rent on recreational areas, if any, shall be made current by Seller at Closing, and Buyer shall reimburse Seller for prepayments.

(b) Fees: Seller shall, at Closing, pay all fines imposed against the Unit by the Condominium Association as of Closing Date and any fees the Association charges to provide information about the Property, assessment(s) and fees.

*If Property is part of a Homeowners' Association, see Rider B. HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE for further information including additional assessments and fees.*

(c) Special Assessments and Prorations:



  (i) Seller represents that Seller is not aware of any special or other assessment that has been levied by the Association or that has been an item on the agenda, or reported in the minutes, of the Association within twelve (12) months prior to Effective Date, ("pending") except as follows: _____ _____

  (ii) If special assessments levied or pending exist as of the Effective Date are disclosed above by Seller and may be paid in installments (CHECK ONE):  ☑ Buyer  ☒ Seller (if left blank, then Buyer) shall pay installments due after Closing Date. **If Seller is checked, Seller shall pay the assessment in full prior to or at the time of Closing.**

  (iii) If special assessments levied or pending exist as of the Effective Date and have not been disclosed above by Seller, then Seller shall pay such assessments in full at the time of Closing.

  (iv) If, after Effective Date, the Association imposes a special assessment for improvements, work or services, which was not pending as of the Effective Date, then Seller shall pay all amounts due before Closing Date and Buyer shall pay all amounts due after Closing Date.

  (v) A special assessment shall be deemed levied for purposes of this paragraph on the date when the assessment has been approved as required for enforcement pursuant to Florida law and the condominium documents listed in Paragraph 5.

  (vi) Association assets and liabilities, including Association reserve accounts, shall not be prorated.

(d) Litigation: Seller represents that Seller is not aware of pending or anticipated litigation affecting the Property or the common elements, if any, except as follows: _____ _____ _____

**4. SPRINKLER SYSTEM RETROFIT:**

If, pursuant to Sections 718.112(2)(l), F.S., the Association has voted to forego retrofitting its fire sprinkler system or handrails and guardrails for the condominium units, then prior to Closing Seller shall furnish to Buyer the written notice of Association's vote to forego such retrofitting.

**5. NON-DEVELOPER DISCLOSURE:**

(CHECK ONE):

  ☐ **(a) THE BUYER HEREBY ACKNOWLEDGES THAT BUYER HAS BEEN PROVIDED A CURRENT COPY OF THE DECLARATION OF CONDOMINIUM, ARTICLES OF INCORPORATION OF THE ASSOCIATION, BYLAWS AND RULES OF THE ASSOCIATION, AND A COPY OF THE MOST RECENT YEAR-END FINANCIAL INFORMATION AND FREQUENTLY ASKED QUESTIONS AND ANSWERS DOCUMENT MORE THAN 3 DAYS, EXCLUDING SATURDAYS, SUNDAYS, AND LEGAL HOLIDAYS, PRIOR TO EXECUTION OF THIS CONTRACT.**

  ☒ **(b) THIS AGREEMENT IS VOIDABLE BY BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 3 DAYS, EXCLUDING SATURDAYS, SUNDAYS, AND LEGAL HOLIDAYS, AFTER THE DATE OF EXECUTION OF THIS AGREEMENT BY THE BUYER AND RECEIPT BY BUYER OF A CURRENT COPY OF THE DECLARATION OF CONDOMINIUM, ARTICLES OF INCORPORATION, BYLAWS AND RULES OF THE ASSOCIATION, AND A COPY OF THE MOST RECENT YEAR-END FINANCIAL INFORMATION AND FREQUENTLY ASKED QUESTIONS AND ANSWERS DOCUMENT IF SO REQUESTED IN WRITING. ANY PURPORTED WAIVER OF THESE VOIDABILITY RIGHTS SHALL BE OF NO EFFECT. BUYER MAY EXTEND THE TIME FOR CLOSING FOR A PERIOD OF NOT MORE THAN 3 DAYS, EXCLUDING SATURDAYS, SUNDAYS, AND**

Page 2 of 3   A. CONDOMINIUM RIDER                                      (SEE CONTINUATION)
CR-2  Rev. 8/13 © 2013 Florida Realtors® and The Florida Bar.  All rights reserved.

Serial#: 063993-500138-5994243

49

DocuSign Envelope ID: 5DEEF867-300C-4DF2-8AE5-218020FD6F01

DocuSign Envelope ID: 902EF925-2ECE-4734-9646-C84C861191E8

## A. CONDOMINIUM RIDER (CONTINUED)

**LEGAL HOLIDAYS, AFTER THE BUYER RECEIVES THE DECLARATION, ARTICLES OF INCORPORATION, BYLAWS AND RULES OF THE ASSOCIATION, AND A COPY OF THE MOST RECENT YEAR-END FINANCIAL INFORMATION AND FREQUENTLY ASKED QUESTIONS AND ANSWERS DOCUMENT IF REQUESTED IN WRITING. BUYER'S RIGHT TO VOID THIS AGREEMENT SHALL TERMINATE AT CLOSING.**

6. **BUYER'S REQUEST FOR DOCUMENTS:**
Buyer is entitled, at Seller's expense, to current copies of the condominium documents specified in Paragraph 5, above. Buyer (**CHECK ONE**): ☒ requests ☐ does not request a current copy of the documents specified in Paragraph 5, above. If this Contract does not close, Buyer shall immediately return the documents to Seller or reimburse Seller for the cost of the documents.

7. **BUYER'S RECEIPT OF DOCUMENTS:**
(**COMPLETE AND CHECK ONLY IF CORRECT**) ☐ Buyer received the documents described in Paragraph 5, above, on _____

8. **COMMON ELEMENTS; PARKING:**
The Property includes the unit being purchased and an undivided interest in the common elements and appurtenant limited common elements of the condominium, as specified in the Declaration. Seller's right and interest in or to the use of the following parking space(s), garage, and other areas are included in the sale of the Property and shall be assigned to Buyer at Closing, subject to the Declaration:
Parking Space(s) # _____ Garage # _____ Other: _____

9. **INSPECTIONS AND REPAIRS:**
The rights and obligations arising under Paragraphs 11 and 12 of this Contract to maintain, repair, replace or treat are limited to Seller's individual condominium unit and unless Seller is otherwise responsible do not extend to common elements, limited common elements, or any other part of the condominium property.

10. **GOVERNANCE FORM:**
PURSUANT TO CHAPTER 718, FLORIDA STATUTES, BUYER IS ENTITLED TO RECEIVE FROM SELLER A COPY OF THE GOVERNANCE FORM IN THE FORMAT PROVIDED BY THE DIVISION OF FLORIDA CONDOMINIUMS, TIMESHARES AND MOBILE HOMES OF THE DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION, SUMMARIZING THE GOVERNANCE OF THE CONDOMINIUM ASSOCIATION.

Page 3 of 3   A. CONDOMINIUM RIDER
CR-2  Rev. 8/13 © 2013 Florida Realtors® and The Florida Bar. All rights reserved.

Serial#: 063953-600138-5664243

50

DocuSign Envelope ID: EDD7E95E-0FCA-4653-B282-6CAB8E7C6941

1'  The clause below will be incorporated into the Contract between _____ ISNA LLC _____ (Seller)
2'  and __ADRIANA Rupperti & Heinrich Leopold L^h__ (Buyer) concerning the Property described as
3'  _____ BENTLEY BAY _____ only if initialed by all parties:

4'  _____ **W. Foreign Investment in Real Property Tax Act ("FIRPTA"):** If a **Seller** is a "foreign person" as
5'  defined by FIRPTA, Section 1445 of the Internal Revenue Code requires Buyer to withhold 10% of the amount realized by the
6'  **Seller** on the transfer and remit the withheld amount to the Internal Revenue Service (IRS) unless an exemption applies. The
7'  primary exemptions are (1) **Seller** provides **Buyer** with an affidavit that **Seller** is not a "foreign person", (2) **Seller** provides
8'  **Buyer** with a Withholding Certificate providing for reduced or eliminated withholding, or (3) the gross price is $300,000 or
9'  less. Buyer is an individual who purchases the Property to use as a residence, and **Buyer** or a member of **Buyer's** family has
10'  definite plans to reside at the Property for at least 50% of the number of days the Property is in use during each of the first two
11'  12 month periods after transfer. The IRS requires **Buyer** and **Seller** to have a U.S. federal taxpayer identification number
12'  ("TIN"). Buyer and **Seller** agree to execute and deliver as directed any instrument, affidavit or statement reasonably necessary
13'  to comply with FIRPTA requirements including applying for a TIN within 3 days from Effective Date and delivering their
14'  respective TIN or Social Security numbers to the Closing Agent. If **Seller** applies for a withholding certificate but the application
15'  is still pending as of closing, **Buyer** will place the 10% tax in escrow at **Seller's** expense to be disbursed in accordance with
16'  the final determination of the IRS, provided **Seller** so requests and gives Buyer notice of the pending application in accordance
17'  with Section 1445. If Buyer does not pay sufficient cash at closing to meet the withholding requirement, **Seller** will deliver to
18'  Buyer at closing the additional cash necessary to satisfy the requirement. Buyer will timely disburse the funds to the IRS and
19'  provide Seller with copies of the tax forms and receipts.

20'  Buyer ( _____ and Seller ( __ (s) __ ) acknowledge receipt of a copy of this page.           Page ____ of Addendum No. ____
21'  FARA-10  1/09   © 2009  Florida Association of Realtors®   All Rights Reserved                                          *Instanet Forms*

51

Case: 17-05084   Doc# 73   Filed: 07/01/19   Entered: 07/01/19 14:56:17   Page 52 of
140

CG-CD00046

DocuSign Envelope ID: EDD7E95E-0FCA-4653-B282-6CAB8E7C6941

Condominium Disclosure Statement

**FloridaRealtors®**
The Voice for Real Estate® in Florida

NAME: **ISNA LLC**
SELLER HAS [X] HAS NOT [ ] OCCUPIED THE PROPERTY.
DATE SELLER PURCHASED PROPERTY? **01/2013**
IS THE PROPERTY CURRENTLY LEASED? NO [ ] YES [X] TERMINATION DATE OF LEASE: **June 1st 2014**
DOES THE PROPERTY CURRENTLY HAVE HOMESTEAD EXEMPTION? NO [X] YES [ ] YEAR
GENERAL INFORMATION ABOUT PROPERTY:
PROPERTY ADDRESS: **520 West Ave # 2603 Miami Beach FL 33139**
LEGAL DESCRIPTION: **Bentley Bay South Tower**
NOTICE TO BUYER AND SELLER:
**In Florida, a Seller is obligated to disclose to a Buyer all known facts that materially affect the value of the property being sold and that are not readily observable. This disclosure statement is designed to assist Seller in complying with the disclosure requirements under Florida law and to assist the Buyer in evaluating the property being considered. This disclosure statement concerns the condition of the real property located at above address. It is not a warranty of any kind by the Seller or any Licensee in this transaction. It is not a substitute for any inspections or warranties the parties may wish to obtain. It is based only upon Seller's knowledge of the property condition. This disclosure is not intended to be a part of any contract for sale and purchase. All parties may refer to this information when they evaluate, market, or present Seller's property to prospective Buyers.**

## The following representations are made by the Seller(s) and are not the representations of any real estate licensees.

*Chapter 718 of the Florida Statutes allows a Buyer to void a purchase and sale agreement by delivering written notice of the Buyer's intention to cancel within 3 days, excluding Saturdays, Sundays and legal holidays, after the date of execution of the agreement by the Buyer and receipt by Buyer of a current copy of the Declaration of Condominium, Articles of Incorporation, Bylaws and Rules of the Association, and a copy of the most recent year-end financial information and frequently asked questions and answers document if so requested in writing.*

### A. THE UNIT

**1. CONDOMINIUM ASSOCIATION DOCUMENTS**
Are You Aware:
a. of any proposed changes to any of the condominium documents? NO [X] YES [ ]
b. of any resale restrictions? NO [X] YES [ ]
c. of any restrictions on leasing the property? NO [ ] YES [X] CAN BE RENTED 4 TIMES A YEAR (3 months minimum)
d. if the condominium unit is subject to a master homeowner's association? NO [X] YES [ ]
e. If any answer to questions 2a-2d is yes, please explain: _____

**2. CLAIMS & ASSESSMENTS**
a. Are you aware of existing, pending, or proposed legal actions, claims, special assessments, municipal service taxing or benefit unit charges or unpaid assessments (including condominium assessment/association maintenance fees or proposed increases in assessments and/or maintenance fees) affecting the property? NO [X] YES [ ]
If yes, explain: _____

b. Have any local, state, or federal authorities notified you that repairs, alterations or corrections of the property are required? NO [X] YES [ ] If yes, explain: _____

**3. OCCUPANCY AND OWNERSHIP INFORMATION**
a. unit is [ ] owner occupied [ ] Non-rental second home [X] long term lease which expires on **June 1st 2014** [ ] short-term vacation rental program [ ] other _____
b. does the unit currently qualify for homestead exemption? NO [X] YES [ ]
c. unit ownership is evidenced by [ ] fee simple deed [ ] leasehold assignment

Buyer (___) (___) and Seller (___) (___) acknowledge receipt of a copy of this page, which is Page 1 of 5 Pages.
CD-2    08/09 © 2009    Florida Association of REALTORS®    All Rights Reserved

Serial#:

52

DocuSign Envelope ID: E0D7E95E-0FCA-4653-B2B2-6CAB8E7C6941

**4. MATERIAL ALTERATIONS TO UNIT:**
    **a.** Are you aware of any material alterations to the inside of the unit? NO ☒ YES ☐
    **b.** Were the alterations made in violation of applicable building codes or without necessary permits? NO ☒ YES ☐
    If any answer to questions 4a or 4b is yes, please explain: _____

**5. ENVIRONMENT:**
    **I.** Was the property built before 1978? NO ☒ YES ☐
    **II.** Are You Aware:
        **a.** of any substances, materials, or products which may be an environmental hazard, such as, but not limited to, asbestos, urea formaldehyde, radon gas, mold, lead-based paint, Chinese/defective drywall, fuel, propane or chemical storage tanks (active or abandoned), or contaminated soil or water in the unit? NO ☐ YES ☐
            **I.** of any damage to the structures located in the unit due to any of the substances, materials or products listed in subsection (a) above? NO ☐ YES ☐
            **II.** of any corrosion to air conditioner or refrigerator coils, copper tubing, electrical wiring, computer wiring or other household items that have been damaged by sulfur or methane gas emitted from Chinese/defective drywall? NO ☐ YES ☐
            **III.** of any clean up, repairs, or remediation of the unit due to any of the substances, materials or products listed in subsection (a) above? NO ☐ YES ☐
        **b.** of any condition or proposed change in the vicinity of the unit that does or will materially affect the value of the unit, such as, but not limited to, proposed development or proposed roadways? NO ☐ YES ☐
    If any answer to questions 5(II)a-b is yes, please explain: _____
    _____
    _____

**6. FLOOD:**
    Are You Aware:
    **a.** if any portion of the unit has been flooded by storm surge? NO ☒ YES ☐
    **b.** if the unit requires flood insurance? NO ☐ YES ☒
    If any answer to questions 6a-6b is yes, please explain: _____
    _____

**7. TERMITES, DRY ROT, PESTS, WOOD DESTROYING ORGANISMS:**
    **a.** Do you have any knowledge of termites, dry rot, pests or wood destroying organisms on or affecting any part of the unit or any structural damage to the unit by them? NO ☒ YES ☐ If yes, explain: _____

    **b.** Have you ever had the property inspected for termites, dry rot, pest or wood destroying organism? NO ☒ YES ☐
    Date of inspection _____ If so, what was the outcome of the inspection? _____

    **c.** Has the unit been treated for termites, dry rot, pest or wood destroying organisms? NO ☒ YES ☐ Date and type of treatment _____, Company name: _____
    **d.** Do you have any termite contracts or termite bonds on the unit? NO ☒ YES ☐ If yes, are the bonds transferable? NO ☐ YES ☐

**8. PLUMBING-RELATED ITEMS:**
    **a.** What is your drinking water source? Public ☒ Private ☐ Well ☐ Other Source ☐
    **b.** Do you have a water conditioning/treatment system? NO ☒ YES ☐ If yes, type: _____
    Owned ☐ Leased ☐ What is the balance owed on the system? $ _____
    **c.** Do you have sewer ☒ septic ☐ system? If septic system describe the location of each system: _____
    **d.** Are you aware of any plumbing leaks since you have owned the unit? NO ☒ YES ☐ If yes, explain: _____

**9. MAJOR APPLIANCES:**
    Indicate existing equipment:
    Range ☐ Oven ☒ Microwave ☒ Dishwasher ☒ Garbage Disposal ☐
    Trash Compactor ☐ Refrigerator ☒ Freezer ☒ Washer ☒ Dryer ☐
    Are any of these appliances leased? NO ☒ YES ☐ Are any of these gas appliances? NO ☐ YES ☐
    Is the water heater: owned ☐ leased ☐ ; is the water heater: electric ☐ gas ☐
    Are you aware of any problems with these appliances, including whether any of the appliances have leaked or overflowed, since you have owned the unit? NO ☒ YES ☐ If yes, explain: _____

Buyer ( _____ ) and Seller ( ____ ) ( ____ ) acknowledge receipt of a copy of this page, which is Page 2 of 5 Pages.
CD-2   06/09  © 2009  Florida Association of REALTORS ®  All Rights Reserved
Serial#:

53

**10. ELECTRICAL SYSTEM:**
Are You Aware:
    a. of any damaged or malfunctioning switches, receptacles, or wiring? NO ☑ YES ☐
    b. of any conditions that materially affect the value or operating capacity of the electrical system? NO ☑ YES ☐
    If answers to questions 10a or 10b is yes, please explain: _____

**11. HEATING AND AIR CONDITIONING:**
Indicate existing equipment:
    **Air conditioning/Heating:**
    Central ☑ Window/Wall ☐ Number of units_____
    Electric ☑ Fuel Oil ☐ Gas ☐ Other ☐
    What year was the outside condensing unit placed in service: _____
    What year was the inside air handler unit placed in service: _____
    **Solar Heating:**
    Owned ☐ Leased ☐
    **Wood-burning stove:** NO ☑ YES ☐
    **Fireplace:** NO ☑ YES ☐ Describe fireplace equipment: _____
    Are you aware of any defects, malfunctioning or condensation problems regarding these items, since you have
    owned the unit? NO ☐ YES ☐ If yes, explain: _____

**12. FIRE SPRINKLER:**
Are You Aware:
    a. if the unit or common elements have been retrofitted with a fire sprinkler or other engineered life safety system?
    NO ☑ YES ☐
    If yes, is there a pending special assessment for retrofitting? NO ☑ YES ☐ How much? _____
    If no, has there been a two-thirds vote of the unit owners to forego retrofitting? NO ☐ YES ☐

**13. OTHER EQUIPMENT:**
Indicate existing equipment:
    Security System: NO ☑ YES ☐ Leased ☐ Owned ☐ Connected to Central Monitor ☐ Monthly Fee $_____
    Smoke Detectors: NO ☐ YES ☑ , Number of smoke detectors? _____
    Garage door openers? NO ☑ YES ☐ , Number of transmitters? _____
    Humidistat? NO ☐ YES ☐ Humidifier? NO ☐ YES ☐
    Electric air filters? NO ☐ YES ☐
    Vent fans? NO ☐ YES ☐
    Paddle fans? NO ☐ YES ☐ , Number of paddle fans? _____

**14. MAINTENANCE CONTRACTS:**
Are You Aware:
    a. of any appliance or equipment maintenance/repair contracts? NO ☑ YES ☐ If yes, Date expire _____
    Are they transferable? NO ☐ YES ☐

**B. LIMITED COMMON ELEMENTS**

Are there any facilities outside the unit such as designated parking space(s), storage closets, boat slips, pool cabanas, ga-
rages, car ports etc. that are for your exclusive use? NO ☐ YES ☐ If yes, identify the facility and whether a separate deed or
other legal document grants the exclusive right to use ___Valet only___

**C. COMMON ELEMENTS**

**1. INSURANCE:**
Are You Aware:
    a. if the association maintains full replacement value flood insurance on portions of the condominium property
    required to be insured by the Declaration of Condominium? NO ☐ YES ☑
    b. if the association maintains full replacement value against named perils (fire, windstorm, wind-driven rain etc.) on
    portions of the condominium property required to be insured by the Declaration of Condominium? NO ☐ YES ☐
    If any answer to questions 1a or 1b is yes, please explain: _____

Buyer ( _____ ) ( _____ ) and Seller ( CO ) ( _____ ) acknowledge receipt of a copy of this page, which is Page 3 of 5 Pages.
CD-2  06/09  © 2009  Florida Association of REALTORS®  All Rights Reserved
Serial#:

54

**2. STRUCTURE-RELATED ITEMS:**

Are You Aware:

**a.** of any structural damage to the condominium building or roof which may have resulted from events including, but not limited to, hurricane, fire, wind, flood, hail, landslide, or blasting, and which materially affect the value of the unit?
NO☒ YES☐

**b.** of any damage to the amenities and/or any other common element that materially affects the value of the unit?
NO☒ YES☐

**c.** of any improvements or additions to the common elements that have been constructed in violation of building codes or without necessary permits? NO☒ YES☐

**d.** of any active permits on the common elements which have not been closed by a final inspection? NO☒ YES☐

**e.** of any special assessments to correct any damage to the condominium building, roof or common elements?
NO☒ YES☐

If any answer to questions 2a-2e is yes, please explain: _____

_____

_____

_____

**3. ALTERATION/CONVEYANCE OF COMMON ELEMENTS:**

Are you aware of any proposed plan to materially alter the common elements, expand the common elements, or convey any part of the common elements? NO☒ YES☐  If yes, please explain: _____

_____

**D. COASTAL CONSTRUCTION CONTROL LINE**

Are you aware if the condominium property☐ is☐ is not located partially or totally seaward of the coastal construction control line as defined in Chapter 161.053 of the Florida Statutes?

**E. FEES**

**1. Condominium assessment fee:** $ 1,556.52 due☒ monthly☐ quarterly
Check all items included in the condominium assessment/association fee:☐ water and sewer☐ electricity☐ telephone☐ high speed internet☐ pest control☐ basic TV cable☐ appliance maintenance☐ club membership☐ leasehold or ground lease fee☐ recreational lease fee☐ reserves on limited common elements☐ other

**2. Master association fee:** $_____ due☐ monthly☐ quarterly☐ N/A

**3. Common element use fee:** $_____ due☐ monthly☐ quarterly☐ N/A

**4. Limited common element use fee:** $_____ due☐ monthly☐ quarterly☐ N/A
(in addition to fee in E1 above)

**F. OTHER MATTERS**

Is there anything else that materially affects the value of the unit? NO☐ YES☐  If yes, explain: _____

_____

**ACKNOWLEDGEMENT OF SELLER**

The undersigned Seller represents that the information set forth in the above disclosure statement is accurate and complete to the best of the Seller's knowledge on the date signed below. Seller does not intend for this disclosure statement to be a warranty or guaranty of any kind. Seller hereby authorizes disclosure of the information contained in this disclosure statement to prospective Buyers of the property. Seller understands and agrees that Seller will notify the Buyer in writing within five business days after Seller becomes aware that any information set forth in this disclosure statement has become inaccurate or incorrect in any way during the term of the pending purchase by the Buyer.

Seller: _Carlo Dipasqua_____ / _Carlo Dipasquale_____ Date: _12_/_12_/_13_
              (signature)                                    (print)

Seller: _____ / _____ Date: _____
              (signature)                                    (print)

Buyer (_____) and Seller (_CD_) (_____) acknowledge receipt of a copy of this page, which is Page 4 of 5 Pages.

CD-2    06/09  © 2009    Florida Association of REALTORS®    All Rights Reserved

Serial#:

55

**RECEIPT AND ACKNOWLEDGMENT OF BUYER**

Seller is using this form to disclose Seller's knowledge of the condition of the real property and improvements located on the property as of the date signed by Seller. This disclosure form is not a warranty of any kind. The information contained in the disclosure is limited to information to which the seller has knowledge. It is not intended to be a substitute for any inspections or professional advice the Buyer may wish to obtain. An independent professional inspection is encouraged and may be helpful to verify the condition of the property and to determine the cost of repairs, if any. Buyer understands these representations are not made by any real estate licensee.

Buyer hereby acknowledges having received a copy of this disclosure statement.

Buyer: _____ / Adriana Ruppert        Date: 12/13/2013
(signature)                              (print)

Buyer: _____ / Heinrich Leopold Lehner  Date: 12/13/2013
(signature)                              (print)

Buyer ( _____ ) and Seller ( _____ ) ( _____ ) acknowledge receipt of a copy of this page, which is Page 5 of 5 Pages.

CD-2  06 /09  © 2009    Florida Association of REALTORS®    All Rights Reserved

Serial#:

56

CG-CD00050

DocuSign Envelope ID: 7E71DC27-3E8F-469F-9954-B9876DD2417F

**Receipt of Condominium/Cooperative Documents**



(Check One)

☒ **Condominium Documents:  Buyer** ACKNOWLEDGES RECEIVING A CURRENT COPY OF THE DECLARATION OF CONDOMINIUM, ARTICLES OF INCORPORATION, BYLAWS, AND RULES OF THE ASSOCIATION, AND A COPY OF THE MOST RECENT YEAR-END FINANCIAL INFORMATION, AND FREQUENTLY ASKED QUESTIONS AND ANSWERS DOCUMENT IF SO REQUESTED IN WRITING;  ALL OF WHICH RELATE TO

_____ The Bentley Bay Condominium _____, A CONDOMINIUM,
(Name of condominium in which unit being sold is located)

ON THE DATE INDICATED BELOW.

☐ **Cooperative  Documents:  Buyer** ACKNOWLEDGES RECEIVING A CURRENT COPY OF THE  ARTICLES OF INCORPORATION, BYLAWS, AND RULES OF THE ASSOCIATION, AND QUESTION AND ANSWER SHEET IF SO REQUESTED IN WRITING; ALL OF WHICH RELATE TO

_____, A COOPERATIVE,
(Name of cooperative in which unit being sold is located)

ON THE DATE INDICATED BELOW.

DocuSigned by:

**BUYER** 950E32E4B8...                                              12/11/2013
                                                                    **Date**

DocuSigned by:

**BUYER** C630D0C24B5...                                            12/11/2013
                                                                    **Date**

Rev. 03/11 © 2011  Florida Realtors® All Rights Reserved

Serial#: 089557-700138-6784282

57



**NORTH AMERICAN TITLE COMPANY**

*Like Clockwork®*

777 Arthur Godfrey Road, Suite 401
Miami Beach, Florida 33140
Phone: (305)672-4550
Fax:    (305)921-0749

December 11, 2013

TO:    Edgar Alba□□South Beach International Realty

PH:    (305)842-1717

FAX:   (305)538-7393

RE: PROPERTY ADDRESS520 West Avenue #2403 , Miami Beach, FL 33139 (the "Property")

BUYER(S) NAME(S):    Adriana Ruppert and Heinrich Leopold Lehner

Dear Edgar:

Please be advised that our office has received a ( X ) WIRE or ( ) CHECK in the amount of $136,300.00 to be credited towards the purchase of the Property.

Total deposit held by us through this date is  $136,300.00.

If we may be of further assistance, please do not hesitate to contact us.

Very truly yours,

Martha Perez, Escrow Clerk
MRPerez@nat.com

58

OMB NO. 2502-0265

**A.**

**U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT**

**SETTLEMENT STATEMENT**

| B. TYPE OF LOAN: |
| --- |
| 1. ☐ FHA   2. ☐ FmHA   3. ☒ CONV. UNINS.   4. ☐ VA   5. ☐ CONV. INS. |
| 6. FILE NUMBER:  11660-13-00078 |
| 7. LOAN NUMBER: |
| 8. MORTGAGE INS CASE NUMBER: |

**C. NOTE:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(POC)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

1.0  336   (11660-13-00078/FR01/660-13-00078sjb)

| D. NAME AND ADDRESS OF BUYER: | E. NAME AND ADDRESS OF SELLER: | F. NAME AND ADDRESS OF LENDER: |
| --- | --- | --- |
| Heinrich Leopold Lehner | ISNA, LLC, | |
| Adriana Ruppert | a Florida limited liability company | |
| | 520 West Ave., #2403 | |
| | Miami Beach, FL 33139 | |

| G. PROPERTY LOCATION: | H. SETTLEMENT AGENT:        14706 | I. SETTLEMENT DATE: |
| --- | --- | --- |
| 520 West Avenue 2403 | North American Title Company | |
| Miami Beach, FL 33139 | | January 14, 2014 |
| Miami-Dade County, Florida | PLACE OF SETTLEMENT | |
| Unit 2403, Building S | | |
| The Bentley Bay | 777 Arthur Godfrey Road, Suite 401 | |
| ORB 23222, Page 1234 | Miami Beach, Florida 33140 | |

| J. SUMMARY OF BUYER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
| --- | --- | --- | --- |
| **100. GROSS AMOUNT DUE FROM BUYER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract Sales Price | 1,363,000.00 | 401. Contract Sales Price | 1,363,000.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Buyer (Line 1400) | 6,959.00 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| *Adjustments For Items Paid By Seller in advance* | | *Adjustments For Items Paid By Seller in advance* | |
| 106. City Taxes               to | | 406. City Taxes                to | |
| 107. County Taxes            to | | 407. County Taxes             to | |
| 108. Assessments      01/14/14  to  01/31/14 | 853.58 | 408. Assessments      01/14/14  to  01/31/14 | 853.58 |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BUYER** | 1,370,812.58 | **420. GROSS AMOUNT DUE TO SELLER** | 1,363,853.58 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BUYER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | 138,300.00 | 501. Excess Deposit (See Instructions) | |
| 202. Principal Amount of New Loan(s) | | 502. Settlement Charges to Seller (Line 1400) | 116,361.56 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff First Mortgage | |
| 205. | | 505. Payoff Second Mortgage | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| *Adjustments For Items Unpaid By Seller* | | *Adjustments For Items Unpaid By Seller* | |
| 210. City Taxes               to | | 510. City Taxes                to | |
| 211. County Taxes   01/01/14  to  01/14/14 | 506.62 | 511. County Taxes   01/01/14  to  01/14/14 | 506.62 |
| 212. Assessments            to | | 512. Assessments             to | |
| 213. | | 513. | |
| 214. Prorated JAN Rent thru 1/31 | 2,810.48 | 514. Prorated JAN Rent thru 1/31 | 2,810.48 |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BUYER** | 139,617.10 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | 119,678.66 |
| **300. CASH AT SETTLEMENT FROM/TO BUYER:** | | **600. CASH AT SETTLEMENT TO/FROM SELLER:** | |
| 301. Gross Amount Due From Buyer (Line 120) | 1,370,812.58 | 601. Gross Amount Due To Seller (Line 420) | 1,363,853.58 |
| 302. Less Amount Paid By/For Buyer (Line 220) | 139,617.10 | 602. Less Reductions Due Seller (Line 520) | 119,678.66 |
| 303. CASH ( X FROM ) (  TO ) BUYER | 1,231,195.48 | 603. CASH (  X TO ) (  FROM ) SELLER | 1,244,174.92 |

By signing page 2 of this statement, the signatories acknowledge receipt of a completed copy of page 1 of this two page statement.

59

Case: 17-05084    Doc# 73    Filed: 07/01/19    Entered: 07/01/19 14:56:17    Page 60 of 140

CG-CD00053

| | | | | BUYERS FUNDS AT SETTLEMENT | SELLERS FUNDS AT SETTLEMENT |
|---|---|---|---|---|---|
| *Division of Commission (line 700) as Follows:* | | | | | |
| 701. $ 34,075.00 | to | Cervera Real Estate Inc. | | | |
| 702. $ 40,890.00 | to | South Beach International Realty | | | |
| 703. Commission Paid at Settlement | | | | | 74,965.00 |
| 704. Administrative Fee | | to | South Beach International Realty | 395.00 | |
| Note: Line 701 includes Adjustment of | | | For | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | | | |
| 801. Loan Origination Fee | % | to | | | |
| 802. Loan Discount | % | to | | | |
| 803. Appraisal Fee | | to | | | |
| 804. Credit Report | | to | | | |
| 805. Lender's Inspection Fee | | to | | | |
| 806. Mortgage Ins. App. Fee | | to | | | |
| 807. Assumption Fee | | to | | | |
| 808. | | | | | |
| 809. | | | | | |
| 810. | | | | | |
| 811. | | | | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | | | |
| 901. Interest From | | @ $ | /day ( days %) | | |
| 902. MIP Totfax for Life/Of loan for | | months to | | | |
| 903. Hazard Insurance Premium for | 1.0 years | | | | |
| 904. Flood Insurance Premium | 1.0 years | | | | |
| 905. | | | | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | | | | |
| 1001. Hazard Insurance | | months @ $ | per month | | |
| 1002. Mortgage Insurance | | months @ $ | per month | | |
| 1003. City Taxes | | months @ $ | per month | | |
| 1004. County Taxes | | months @ $ | per month | | |
| 1005. Assessments | | months @ $ | per month | | |
| 1006. Flood Insurance Premium | | months @ $ | per month | | |
| 1007. | | months @ $ | per month | | |
| 1008. Aggregate Adjustment | | months @ $ | per month | | |
| **1100. TITLE CHARGES** | | | | | |
| 1101. Settlement or Closing Fee | | to North American Title Company | | 300.00 | |
| 1102. Abstract or Title Search | | to North American Title Company | | 200.00 | 200.00 |
| 1103. Title Examination | | to North American Title Company | | | |
| 1104. Title Insurance Binder | | to North American Title Company | | | |
| 1105. Document Preparation | | to North American Title Company | | | |
| 1106. E-Recording | | to North American Title Company | | 4.50 | |
| 1107. Attorney's Fees | | | | | |
| (includes above item numbers: | | | ) | | |
| 1108. Title Insurance | | to North American Title Company/Chicago Title Insurance Company | | 5,982.50 | |
| (includes above item numbers: | | | ) | | |
| 1109. Lender's Coverage | | $ | | | |
| 1110. Owner's Coverage | | $ 1,363,000.00 | 5,982.50 | | |
| 1111. Endorsements | | North American Title Company | | | |
| 1112. Endorsements | | North American Title Company | | | |
| 1113. Endorsements | | North American Title Company | | | |
| 1114. Wire fee for lender's funds | | North American Title Company | | | |
| 1115. CONDO Estoppel Ltr-Advanced | | to North American Title Company | | | 300.00 |
| 1116. Shipping and Handling | | to North American Title Company | | 50.00 | 50.00 |
| 1117. Endorsements | | North American Title Company | | | |
| 1118. Recertification Fee | | North American Title Company | | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | | | |
| 1201. Recording Fees: Deed $ | 27.00; Mortgage $ | | Releases $ | 27.00 | |
| 1202. City/County Tax/Stamps:Deed | | | Mortgage | | |
| 1203. State Tax/Stamps: | Deed | | Mortgage | | 8,178.00 |
| 1204. | | Miami-Dade County Clerk of the Circuit Court | 8,178.00 | | |
| 1205. Misc. Tax/Stamps | | Miami-Dade County Clerk of the Circuit Court | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | | | |
| 1301. Survey | | to | | | |
| 1302. Pest Inspection | | to | | | |
| 1303. Lien Search | | to Reliable Lien Search | | | 65.00 |
| 1304. 2014 RE Taxes | | to Miami Dade Tax Collector | | | 14,620.71 |
| 1305. See addl'l disb. exhibit | | | | | 18,052.85 |
| **1400. TOTAL SETTLEMENT CHARGES (Enter on Lines 103, Section J and 502, Section K)** | | | | 6,959.00 | 116,361.06 |

The undersigned hereby acknowledge receipt of a completed copy of pages 1&2 of this statement & any attachments referred to herein.

Buyer _____  Seller ESNA, LLC, a Florida limited li, a Florida limited liability company

Hezekib Leopold Lanes                BY: _____

I HAVE CAREFULLY REVIEWED THE HUD-1 SETTLEMENT STATEMENT AND TO THE BEST OF MY KNOWLEDGE AND BELIEF, IT IS A TRUE AND ACCURATE STATEMENT OF ALL RECEIPTS AND DISBURSEMENTS MADE ON MY ACCOUNT OR BY ME IN THIS TRANSACTION. I FURTHER CERTIFY THAT I HAVE RECEIVED A COPY OF THE HUD-1 SETTLEMENT STATEMENT.

Address Property _____

TO THE BEST OF MY KNOWLEDGE, THE HUD-1 SETTLEMENT STATEMENT WHICH I HAVE PREPARED IS A TRUE AND ACCURATE ACCOUNT OF THE FUNDS WHICH WERE RECEIVED AND HAVE BEEN OR WILL BE DISBURSED BY THE UNDERSIGNED AS PART OF THE SETTLEMENT OF THIS TRANSACTION.

_____
North American Title Company
Settlement Agent

WARNING: IT IS A CRIME TO KNOWINGLY MAKE FALSE STATEMENTS TO THE UNITED STATES ON THIS OR ANY SIMILAR FORM. PENALTIES UPON CONVICTION CAN INCLUDE A FINE AND IMPRISONMENT. FOR DETAILS SEE: TITLE 18 U.S. CODE SECTION 1001 & SECTION 1010.

S1FLOEH.0737 Rev. 10/01/2007

{11989-13-00079 / 11989-13-00079 / 48 }

| | | | | |
|---|---|---|---|---|
| 803. Appraisal Fee | to | | | |
| 804. Credit Report | to | | | |
| 805. Lender's Inspection Fee | to | | | |
| 806. Mortgage Ins. App. Fee | to | | | |
| 807. Assumption Fee | to | | | |
| 808. | | | | |
| 809. | | | | |
| 810. | | | | |
| 811. | | | | |

**900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE**

| | | | | |
|---|---|---|---|---|
| 901. Interest From | to | @ $ | /day ( days %) | |
| 902. MIP Tofins. for LifeOfLoan for | months to | | | |
| 903. Hazard Insurance Premium for | 1.0 years to | | | |
| 904. Flood Insurance Premium | 1.0 years | | | |
| 905. | | | | |

**1000. RESERVES DEPOSITED WITH LENDER**

| | | | |
|---|---|---|---|
| 1001. Hazard Insurance | months @ $ | per month | |
| 1002. Mortgage Insurance | months @ $ | per month | |
| 1003. City Taxes | months @ $ | per month | |
| 1004. County Taxes | months @ $ | per month | |
| 1005. Assessments | months @ $ | per month | |
| 1006. Flood Insurance Premium | months @ $ | per month | |
| 1007. | months @ $ | per month | |
| 1008. Aggregate Adjustment | months @ $ | per month | |

**1100. TITLE CHARGES**

| | | | |
|---|---|---|---|
| 1101. Settlement or Closing Fee | to North American Title Company | 300.00 | 300.00 |
| 1102. Abstract or Title Search | to North American Title Company | 200.00 | 200.00 |
| 1103. Title Examination | to North American Title Company | | |
| 1104. Title Insurance Binder | to North American Title Company | | |
| 1105. Document Preparation | to North American Title Company | | |
| 1106. E-Recording | to North American Title Company | 4.50 | |
| 1107. Attorney's Fees | | | |
| (includes above item numbers: ) | | | |
| 1108. Title Insurance | to North American Title Company/Chicago Title Insurance Company | 5,982.50 | |
| (includes above item numbers: ) | | | |
| 1109. Lender's Coverage | $ | | |
| 1110. Owner's Coverage | $ 1,363,000.00 | 5,982.50 | |
| 1111. Endorsements | North American Title Company | | |
| 1112. Endorsements | North American Title Company | | |
| 1113. Endorsements | North American Title Company | | |
| 1114. Wire fee for lender's funds | North American Title Company | | |
| 1115. CONDO Estoppel Ltr-Advanced | to North American Title Company | | 300.00 |
| 1116. Shipping and Handling | to North American Title Company | 50.00 | 50.00 |
| 1117. Endorsements | North American Title Company | | |
| 1118. Recertification Fee | North American Title Company | | |

**1200. GOVERNMENT RECORDING AND TRANSFER CHARGES**

| | | | |
|---|---|---|---|
| 1201. Recording Fees: Deed $ 27.00; Mortgage $ ; Releases $ | | 27.00 | |
| 1202. City/County Tax/Stamps: Deed ; Mortgage | | | |
| 1203. State Tax/Stamps: Deed 8,178.00; Mortgage | | | 8,178.00 |
| 1204. | Miami-Dade County Clerk of the Circuit Court | | |
| 1205. Misc. Tax/Stamps | Miami-Dade County Clerk of the Circuit Court | | |

**1300. ADDITIONAL SETTLEMENT CHARGES**

| | | | |
|---|---|---|---|
| 1301. Survey | to | | |
| 1302. Pest Inspection | to | | |
| 1303. Lien Search | to Reliable Lien Search | | 95.00 |
| 1304. 2014 RE Taxes | to Miami Dade Tax Collector | | 14,520.71 |
| 1305. See addt'l disb. exhibit | to | | 2,856.20 |
| **1400. TOTAL SETTLEMENT CHARGES (Enter on Lines 103, Section J and 502, Section K)** | | 6,959.00 | 106,276.91 |

The undersigned hereby acknowledge receipt of a completed copy of pages 1&2 of this statement & any attachments referred to herein.
I HAVE CAREFULLY REVIEWED THE HUD-1 SETTLEMENT STATEMENT AND TO THE BEST OF MY KNOWLEDGE AND BELIEF, IT IS A TRUE AND ACCURATE STATEMENT OF ALL RECEIPTS AND DISBURSEMENTS MADE ON MY ACCOUNT OR BY ME IN THIS TRANSACTION. I FURTHER CERTIFY THAT I HAVE RECEIVED A COPY OF THE HUD-1 SETTLEMENT STATEMENT.

Buyer _____          Seller _____ SNA, LLC, a Florida limited l, a Florida limited liability company
Heinrich Leopold Lehner                        BY: _____

_____
Adrian Ruppert

TO THE BEST OF MY KNOWLEDGE, THE HUD-1 SETTLEMENT STATEMENT WHICH I HAVE PREPARED IS A TRUE AND ACCURATE ACCOUNT OF THE FUNDS WHICH WERE RECEIVED AND HAVE BEEN OR WILL BE DISBURSED BY THE UNDERSIGNED AS PART OF THE SETTLEMENT OF THIS TRANSACTION.

North American Title Company
Settlement Agent

WARNING: IT IS A CRIME TO KNOWINGLY MAKE FALSE STATEMENTS TO THE UNITED STATES ON THIS OR ANY SIMILAR FORM. PENALTIES UPON

# **EXHIBIT C**

Case: 17-05084   Doc# 73   Filed: 07/01/19   Entered: 07/01/19 14:56:17   Page 63 of
140

CG-CD00056

# "AS IS" Residential Contract For Sale And Purchase

THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR

*Florida Realtors*

1* PARTIES: ROGER AND ELISA GOLDBLATT JTRS _____ ("Seller"),
2* and GIOVANNI NAPPI AND/OR ASSIGNS _____ ("Buyer"),
3 agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal Property
4 (collectively "Property") pursuant to the terms and conditions of this AS IS Residential Contract For Sale And Purchase and
5 any riders and addenda ("Contract"):
6 **1. PROPERTY DESCRIPTION:**
7* (a) Street address, city, zip: 1605 EUCLID AVE # A-2 MIAMI BEACH, FL 33139
8* (b) Property is located in: MIAMI-DADE _____ County, Florida. Real Property Tax ID No.: _____-86-50
9* (c) Real Property: The legal description is THE NORMA CONDOUNT A-2 UNDIV 16.687205%
10 INT IN common elements OFF
11
12 together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and attached
13 wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded in Paragraph 1(e) or by other terms
14 of this Contract.
15 (d) Personal Property: Unless excluded in Paragraph 1(e) or by other terms of this Contract, the following items which
16 are owned by Seller and existing on the Property as of the date of the initial offer are included in the purchase:
17 range(s)/oven(s), refrigerator(s), dishwasher(s), disposal, ceiling fan(s), intercom, light fixture(s), drapery rods and
18 draperies, blinds, window treatments, smoke detector(s), garage door opener(s), security gate and other access
19 devices, and storm shutters/panels ("Personal Property").
20* Other Personal Property items included in this purchase are: _____
21
22 Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer.
23* (e) The following items are excluded from the purchase: _____ GN
24 _____ RG $ 335,000
25 _____ $ 339,000

## PURCHASE PRICE AND CLOSING

26* **2. PURCHASE PRICE** (U.S. currency): _____ $ 320,000
27 (a) Initial deposit to be held in escrow in the amount of (checks subject to COLLECTION) _____ $ 10,000
28 The initial deposit made payable and delivered to 'Escrow Agent' named below
29* (CHECK ONE): (i) ☐ accompanies offer or (ii) ☒ is to be made within 3 ☐ (if left blank,
30 then 3) days after Effective Date IF NEITHER BOX IS CHECKED, THEN OPTION (i)
31 SHALL BE DEEMED SELECTED.
32* Escrow Agent Information: Name: SUNTRUST TITLE _____ RG GN
33* Address: 7771 WEST OAKLAND PARK BLVD SUITE 152 SUNRISE FL 33351
34* Phone: 954-336-9100 E-mail: CCASAS @ gosuntitle.com Fax: _____ 23,900
35* (b) Additional deposit to be delivered to Escrow Agent within 10 (if left blank, then 10)
36 days after Effective Date _____ $ 22,000
37 (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit")
38* (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8 _____ $
39* (d) Other: _____ $
40 (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire
41* transfer or other COLLECTED funds _____ $ BALANCE
42 NOTE: For the definition of "COLLECTION" or "COLLECTED" see STANDARD S.
43 **3. TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE TIME:**
44* (a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before on, before Jan 24 th
45* 2016 _____, this offer shall be deemed withdrawn and the Deposit, if any, shall be returned to
46 Buyer. Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the day the
47 counter-offer is delivered.
48 (b) The effective date of this Contract shall be the date when the last one of the Buyer and Seller has signed or initialed
49 and delivered this offer or final counter-offer ("Effective Date").
50 **4. CLOSING DATE:** Unless modified by other provisions of this Contract, the closing of this transaction shall occur and
51 the closing documents required to be furnished by each party pursuant to this Contract shall be delivered ("Closing") on
52* on, before 30 days from effective ("Closing Date"), at the time established by the Closing Agent.
53 **5. EXTENSION OF CLOSING DATE:**
54 (a) If Closing funds from Buyer's lender(s) are not available at time of Closing due to Truth in Lending Act (TILA) notice
55 requirements, Closing shall be extended for such period necessary to satisfy TILA notice requirements, not to
56 exceed 7 days.

Buyer's Initials: GN _____ Page 1 of 11 _____ Seller's Initials: RG
FloridaRealtors/FloridaBar-ASIS-7 Rev 8/13 © 2013 Florida Realtors® and The Florida Bar. All rights reserved.
Serial# 019876-700139-2102466

63

Case: 17-05084   Doc# 73   Filed: 07/01/19   Entered: 07/01/19 14:56:17   Page 64 of 140

CGC 000057

DocuSign Envelope ID: xxxxxxxxxxxxxxx    xxxxxxxxxxxxxxxx

(b) If extreme weather or other condition or event constituting "Force Majeure" (see STANDARD G) causes: (i) disruption of utilities or other services essential for Closing or (ii) Hazard, Wind, Flood or Homeowners' insurance, to become unavailable prior to Closing, Closing shall be extended a reasonable time up to 3 days after restoration of utilities and other services essential to Closing and availability of applicable Hazard, Wind, Flood or Homeowners' insurance. If restoration of such utilities or services and availability of insurance has not occurred within _____ (if left blank, then 14) days after Closing Date, then either party may terminate this Contract by delivering written notice to the other party, and Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

**6.   OCCUPANCY AND POSSESSION:**

(a)  Unless the box in Paragraph 6(b) is checked, Seller shall, at Closing, deliver occupancy and possession of the Property to Buyer free of tenants, occupants and future tenancies. Also, at Closing, Seller shall have removed all personal items and trash from the Property and shall deliver all keys, garage door openers, access devices and codes, as applicable, to Buyer. If occupancy is to be delivered before Closing, Buyer assumes all risks of loss to the Property from date of occupancy, shall be responsible and liable for maintenance from that date, and shall be deemed to have accepted the Property in its existing condition as of time of taking occupancy.

(b)  ☐ CHECK IF PROPERTY IS SUBJECT TO LEASE(S) OR OCCUPANCY AFTER CLOSING. If Property is subject to a lease(s) after Closing or is intended to be rented or occupied by third parties beyond Closing, the facts and terms thereof shall be disclosed in writing by Seller to Buyer and copies of the written lease(s) shall be delivered to Buyer, all within 5 days after Effective Date. If Buyer determines, in Buyer's sole discretion, that the lease(s) or terms of occupancy are not acceptable to Buyer, Buyer may terminate this Contract by delivery of written notice of such election to Seller within 5 days after receipt of the above items from Seller, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Estoppel Letter(s) and Seller's affidavit shall be provided pursuant to STANDARD D. If Property is intended to be occupied by Seller after Closing, see Rider U, POST-CLOSING OCCUPANCY BY SELLER.

**7.   ASSIGNABILITY: (CHECK ONE):** Buyer ☐ may assign and thereby be released from any further liability under this Contract; ☒ may assign but not be released from liability under this Contract; or ☐ may not assign this Contract.

<b>FINANCING</b>

**8.   FINANCING:**

☒ (a) Buyer will pay cash or may obtain a loan for the purchase of the Property. There is no financing contingency to Buyer's obligation to close .

☐ (b) This Contract is contingent upon Buyer obtaining a written loan commitment for a ☐ conventional ☐ FHA ☐ VA or ☐ other _____ (describe) loan on the following terms within _____ (if left blank, then 30) days after Effective Date ("Loan Commitment Date") for (CHECK ONE): ☐ fixed, ☐ adjustable, ☐ fixed or adjustable rate loan in the Loan Amount (See Paragraph 2(c)), at an initial interest rate not to exceed _____ % (if left blank, then prevailing rate based upon Buyer's creditworthiness), and for a term of _____ (if left blank, then 30) years ("Financing").

Buyer shall make mortgage loan application for the Financing within _____ (if left blank, then 5) days after Effective Date and use good faith and diligent effort to obtain a written loan commitment for the Financing ("Loan Commitment") and thereafter to close this Contract. Buyer shall keep Seller and Broker fully informed about the status of mortgage loan application and Loan Commitment and authorizes Buyer's mortgage broker and Buyer's lender to disclose such status and progress to Seller and Broker.

Upon Buyer's receipt of Loan Commitment, Buyer shall provide written notice of same to Seller. If Buyer does not receive Loan Commitment by Loan Commitment Date, then thereafter either party may cancel this Contract up to the earlier of:

(i.) Buyer's delivery of written notice to Seller that Buyer has either received Loan Commitment or elected to waive the financing contingency of this Contract; or

(ii.) 7 days prior to Closing Date.

If either party timely cancels this Contract pursuant to this Paragraph 8 and Buyer is not in default under the terms of this Contract, Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. If neither party has timely canceled this Contract pursuant to this Paragraph 8, then this financing contingency shall be deemed waived by Buyer.

If Buyer delivers written notice of receipt of Loan Commitment to Seller and this Contract does not thereafter close, the Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's default; (2) Property related conditions of the Loan Commitment have not been met (except when such conditions are waived by other provisions of this Contract); (3) appraisal of the Property obtained by Buyer's lender is insufficient to meet terms of the Loan Commitment; or (4) the loan is not funded due to financial failure of Buyer's lender, in which event(s) the Deposit shall be returned to Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.

Buyer's Initials _____ _____    Page 2 of 11    Seller's Initials [RG] _____

FloridaRealtors/FloridaBar-ASIS-2   Rev.3/13 © 2013 Florida Realtors® and The Florida Bar. All rights reserved.

Serial: 019673-700136-2892469

64

Case: 17-05084    Doc# 73    Filed: 07/01/19    Entered: 07/01/19 14:56:17    Page 65 of 140

DocuSign Envelope ID: ... DocuSign Envelope ID: ...

114* ☐ (c) Assumption of existing mortgage (see rider for terms).
115* ☐ (d) Purchase money note and mortgage to Seller (see riders; addenda; or special clauses for terms).

## CLOSING COSTS, FEES AND CHARGES

116

9. **CLOSING COSTS; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:**

117
118  (a) **COSTS TO BE PAID BY SELLER:**
119  • Documentary stamp taxes and surtax on deed, if any    • HOA/Condominium Association estoppel fees
120  • Owner's Policy and Charges (if Paragraph 9(c)(i) is checked)    • Recording and other fees needed to cure title
121  • Title search charges (if Paragraph 9(c)(iii) is checked)    • Seller's attorneys' fees
122* • Other:
123*  If, prior to Closing, Seller is unable to meet the AS IS Maintenance Requirement as required by Paragraph 11 a
124*  sum equal to 125% of estimated costs to meet the AS IS Maintenance Requirement shall be escrowed at Closing. If
125*  actual costs to meet the AS IS Maintenance Requirement exceed escrowed amount, Seller shall pay such actual
126*  costs. Any unused portion of escrowed amount(s) shall be returned to Seller.

127  (b) **COSTS TO BE PAID BY BUYER:**
128  • Taxes and recording fees on notes and mortgages    • Loan expenses
129  • Recording fees for deed and financing statements    • Appraisal fees
130  • Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked)    • Buyer's inspections
131*  • Survey (and elevation certification, if required)    • Buyer's attorneys' fees
132  • Lender's title policy and endorsements    • All property related insurance
133  • HOA/Condominium Association application/transfer fees    • Owner's Policy Premium (if Paragraph
134     9 (c) (ii) is checked)
135* • Other:

136*  (c) **TITLE EVIDENCE AND INSURANCE:** At least _____ (if left blank, then 5) days prior to Closing Date, a title
137  insurance commitment issued by a Florida licensed title insurer, with legible copies of instruments listed as
138  exceptions attached thereto ("Title Commitment") and, after Closing, an owner's policy of title insurance (see
139  STANDARD A for terms) shall be obtained and delivered to Buyer. If Seller has an owner's policy of title insurance
140  covering the Real Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date.
141  The owner's title policy premium, title search, municipal lien search and closing services (collectively, "Owner's
142  Policy and Charges") shall be paid, as set forth below
143  (CHECK ONE):
144* ☐ (i) Seller shall designate Closing Agent and pay for Owner's Policy and Charges (but not including charges for
145  closing services related to Buyer's lender's policy and endorsements and loan closing, which amounts shall be paid
146  by Buyer to Closing Agent or such other provider(s) as Buyer may select); or
147* ☒ (ii) Buyer shall designate Closing Agent and pay for Owner's Policy and Charges and charges for closing
148  services related to Buyer's lender's policy, endorsements, and loan closing; or
149* ☒ (iii) [MIAMI-DADE/BROWARD REGIONAL PROVISION]: Seller shall furnish a copy of a prior owner's policy of
150  title insurance or other evidence of title and pay fees for: (A) a continuation or update of such title evidence, which
151  is acceptable to Buyer's title insurance underwriter for reissue of coverage; (B) tax search; and (C) municipal lien
152  search. Buyer shall obtain and pay for post-Closing continuation and premium for Buyer's owner's policy, and if
153* applicable, Buyer's lender's policy. Seller shall not be obligated to pay more than $ _____ (if left blank,
154  then $200.00) for abstract continuation or title search ordered or performed by Closing Agent.
155  (d) **SURVEY:** At least 5 days prior to Closing, Buyer may, at Buyer's expense, have the Real Property surveyed and
156  certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real Property, a copy shall
157  be furnished to Buyer and Closing Agent within 5 days after Effective Date.
158* (e) **HOME WARRANTY:** At Closing, ☐ Buyer ☐ Seller ☒ N/A shall pay for a home warranty plan issued by
159* _____ at a cost not to exceed $ _____. A home
160  warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in
161  appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.
162  (f) **SPECIAL ASSESSMENTS:** At Closing, Seller shall pay: (i) the full amount of liens imposed by a public body
163  ("public body" does not include a Condominium or Homeowner's Association) that are certified, confirmed and
164  ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an
165  improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being imposed
166  on the Property before Closing. Buyer shall pay all other assessments. If special assessments may be paid in
167  installments (CHECK ONE):
168* ☐ (a) Seller shall pay installments due prior to Closing and Buyer shall pay installments due after Closing.
169  Installments prepaid or due for the year of Closing shall be prorated.
170* ☒ (b) Seller shall pay the assessment(s) in full prior to or at the time of Closing.
171  IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.

Buyer's Initials _____ GP _____    Page 3 of 11    Seller's Initials _____ RG _____
FloridaRealtors/FloridaBar-ASIS-2  Rev.8/13 © 2013 Florida Realtors® and The Florida Bar. All rights reserved.

65

172    This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district (CDD)
173    pursuant to Chapter 190, F.S., which lien shall be prorated pursuant to STANDARD K.

## DISCLOSURES

175    **10. DISCLOSURES:**
176    (a) **RADON GAS:** Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in sufficient
177    quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal
178    and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon
179    testing may be obtained from your county health department.
180    (b) **PERMITS DISCLOSURE:** Except as may have been disclosed by Seller to Buyer in a written disclosure, Seller
181    does not know of any improvements made to the Property which were made without required permits or made
182    pursuant to permits which have not been properly closed.
183    (c) **MOLD:** Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or
184    desires additional information regarding mold, Buyer should contact an appropriate professional.
185    (d) **FLOOD ZONE; ELEVATION CERTIFICATION:** Buyer is advised to verify by elevation certificate which flood zone
186    the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to improving
187    the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area" or "Coastal
188    Barrier Resources Act" designated area or otherwise protected area identified by the U.S. Fish and Wildlife Service
189    under the Coastal Barrier Resources Act and the lowest floor elevation for the building(s) and /or flood insurance
190    rating purposes is below minimum flood elevation or is ineligible for flood insurance through the National Flood
191*   Insurance Program, Buyer may terminate this Contract by delivering written notice to Seller within _____ (if left
192    blank, then 20) days after Effective Date, and Buyer shall be refunded the Deposit thereby releasing Buyer and
193    Seller from all further obligations under this Contract, failing which Buyer accepts existing elevation of buildings and
194    flood zone designation of Property. The National Flood Insurance Reform Act of 2012 (referred to as Biggert-
195    Waters 2012) may phase in actuarial rating of pre-Flood Insurance Rate Map (pre-FIRM) non-primary structures
196    (residential structures in which the insured or spouse does not reside for at least 80% of the year) and an elevation
197    certificate may be required for actuarial rating
198    (e) **ENERGY BROCHURE:** Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information Brochure
199    required by Section 553.996, F.S.
200    (f) **LEAD-BASED PAINT:** If Property includes pre-1978 residential housing, a lead-based paint disclosure is
201    mandatory.
202    (g) **HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS
203    CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE HOMEOWNERS' ASSOCIATION/COMMUNITY
204    DISCLOSURE, IF APPLICABLE.**
205    (h) **PROPERTY TAX DISCLOSURE SUMMARY: BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT
206    PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO
207    PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY
208    IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER
209    PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY
210    PROPERTY APPRAISER'S OFFICE FOR INFORMATION.**
211    (i) **FIRPTA TAX WITHHOLDING:** Seller shall inform Buyer in writing if Seller is a "foreign person" as defined by the
212    Foreign Investment in Real Property Tax Act ("FIRPTA"). Buyer and Seller shall comply with FIRPTA, which may
213    require Seller to provide additional cash at Closing. If Seller is not a "foreign person", Seller can provide Buyer, at or
214    prior to Closing, a certification of non-foreign status, under penalties of perjury, to inform Buyer and Closing Agent
215    that no withholding is required. See STANDARD V for further information pertaining to FIRPTA. Buyer and Seller
216    are advised to seek legal counsel and tax advice regarding their respective rights, obligations, reporting and
217    withholding requirements pursuant to FIRPTA.
218    (j) **SELLER DISCLOSURE:** Seller knows of no facts materially affecting the value of the Real Property which are not
219    readily observable and which have not been disclosed to Buyer. Except as provided for in the preceding sentence,
220    Seller extends and intends no warranty and makes no representation of any type, either express or implied, as to
221    the physical condition or history of the Property. Except as otherwise disclosed in writing Seller has received no
222    written or verbal notice from any governmental entity or agency as to a currently uncorrected building,
223    environmental or safety code violation.

224    **PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS**

225    **11. PROPERTY MAINTENANCE:** Except for ordinary wear and tear and Casualty Loss, Seller shall maintain the Property,
226    including, but not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("AS IS
227    Maintenance Requirement").

Buyer's Initials _GN_    Page 4 of 11    Seller's Initials _KC_
FloridaRealtors/FloridaBar-ASIS-2  Rev.8/13 © 2013 Florida Realtors and The Florida Bar. All rights reserved.
Serial# #59075-740138-2612483

Case: 17-05084    Doc# 73    Filed: 07/01/19    Entered: 07/01/19 14:56:17    Page 67 of
140

Docusign Envelope ID: ...

**12. PROPERTY INSPECTION; RIGHT TO CANCEL:**

(a) *PROPERTY INSPECTIONS AND RIGHT TO CANCEL: Buyer shall have __10__ (if left blank, then 15) days after Effective Date ("Inspection Period") within which to have such inspections of the Property performed as Buyer shall desire during the Inspection Period. If Buyer determines, in Buyer's sole discretion, that the Property is not acceptable to Buyer, Buyer may terminate this Contract by delivering written notice of such election to Seller prior to expiration of Inspection Period. If Buyer timely terminates this Contract, the Deposit paid shall be returned to Buyer, thereupon, Buyer and Seller shall be released of all further obligations under this Contract; however, Buyer shall be responsible for prompt payment for such inspections, for repair of damage to, and restoration of, the Property resulting from such inspections, and shall provide Seller with paid receipts for all work done on the Property (the preceding provision shall survive termination of this Contract). Unless Buyer exercises the right to terminate granted herein, Buyer accepts the physical condition of the Property and any violation of governmental, building, environmental, and safety codes, restrictions, or requirements, but subject to Seller's continuing AS IS Maintenance Requirement, and Buyer shall be responsible for any and all repairs and improvements required by Buyer's lender.*

(b) *WALK-THROUGH INSPECTION/RE-INSPECTION: On the day prior to Closing Date, or on Closing Date prior to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and follow-up walk-through, if necessary) inspection of the Property solely to confirm that all items of Personal Property are on the Property and to verify that Seller has maintained the Property as required by the AS IS Maintenance Requirement and has met all other contractual obligations.*

(c) *SELLER ASSISTANCE AND COOPERATION IN CLOSE-OUT OF BUILDING PERMITS: If Buyer's inspection of the Property identifies open or needed building permits, then Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control relating to improvements to the Property which are the subject of such open or needed Permits, and shall promptly cooperate in good faith with Buyer's efforts to obtain estimates of repairs or other work necessary to resolve such Permit issues. Seller's obligation to cooperate shall include Seller's execution of necessary authorizations, consents, or other documents necessary for Buyer to conduct inspections and have estimates of such repairs or work prepared, but in fulfilling such obligation, Seller shall not be required to expend, or become obligated to expend, any money.*

(d) *ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES: At Buyer's option and cost, Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties to Buyer.*

**ESCROW AGENT AND BROKER**

**13. ESCROW AGENT:** Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds and other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow within the State of Florida and, subject to COLLECTION, disburse them in accordance with terms and conditions of this Contract. Failure of funds to become COLLECTED shall not excuse Buyer's performance. When conflicting demands for the Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent may take such actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties or liabilities under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow until the parties agree to its disbursement or until a final judgment of a court of competent jurisdiction shall determine the rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction of the dispute. An attorney who represents a party and also acts as Agent may represent such party in such action. Upon notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate, except to the extent of accounting for any items previously delivered out of escrow. If a licensed real estate broker, Agent will comply with provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve escrow disputes through mediation, arbitration, interpleader or an escrow disbursement order.

Any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder, or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent. Agent shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is due to Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing or termination of this Contract.

**14. PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify Property condition, square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or public records. BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) OF BROKER.



Buyer's Initials ___ Page 5 of 11 Seller's Initials ___

FloridaRealtors/FloridaBar-ASIS-2 Rev.8/13 © 2013 Florida Realtors® and The Florida Bar. All rights reserved.

Case: 17-05084   Doc# 73   Filed: 07/01/19   Entered: 07/01/19 14:56:17   Page 68 of 140

DocuSign Envelope ID: 959-D8C2-625C-   9E5-8DDC-6C712D704

Buyer and Seller (individually, the "Indemnifying Party") each individually indemnifies, holds harmless, and releases Broker and Broker's officers, directors, agents and employees from all liability for loss or damage, including all costs and expenses, and reasonable attorney's fees at all levels, suffered or incurred by Broker and Broker's officers, directors, agents and employees in connection with or arising from claims, demands or causes of action instituted by Buyer or Seller based on: (i) inaccuracy of information provided by the Indemnifying Party or from public records; (ii) Indemnifying Party's misstatement(s) or failure to perform contractual obligations; (iii) Broker's performance, at Indemnifying Party's request, of any task beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral, recommendation or retention of any vendor for, or on behalf of Indemnifying Party; (iv) products or services provided by any such vendor for, or on behalf of, Indemnifying Party; and (v) expenses incurred by any such vendor. Buyer and Seller each assumes full responsibility for selecting and compensating their respective vendors and paying their other costs under this Contract whether or not this transaction closes. This Paragraph 14 will not relieve Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes of this Paragraph 14, Broker will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or termination of this Contract.

## DEFAULT AND DISPUTE RESOLUTION

**15. DEFAULT:**

(a) **BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract, including payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the Deposit for the account of Seller as agreed upon liquidated damages, consideration for execution of this Contract, and in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further obligations under this Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity to enforce Seller's rights under this Contract. The portion of the Deposit, if any, paid to Listing Broker upon default by Buyer, shall be split equally between Listing Broker and Cooperating Broker; provided however, Cooperating Broker's share shall not be greater than the commission amount Listing Broker had agreed to pay to Cooperating Broker.

(b) **SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract, Buyer may elect to receive return of Buyer's Deposit without thereby waiving any action for damages resulting from Seller's breach, and, pursuant to Paragraph 16, may seek to recover such damages or seek specific performance.

This Paragraph 15 shall survive Closing or termination of this Contract.

**16. DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question between Buyer and Seller arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be settled as follows:

(a) Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under Paragraph 16(b).

(b) Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules"). The mediator must be certified or must have experience in the real estate industry. Injunctive relief may be sought without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16 may be resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph 16 shall survive Closing or termination of this Contract.

**17. ATTORNEY'S FEES; COSTS:** The parties will split equally any mediation fee incurred in any mediation permitted by this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in conducting the mediation. In any litigation permitted by this Contract, the prevailing party shall be entitled to recover from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting the litigation. This Paragraph 17 shall survive Closing or termination of this Contract.

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")

**18. STANDARDS:**

**A. TITLE:**

(i) **TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in Paragraph 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall be issued and delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at or before Closing and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance in the amount of the Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the Real Property, subject only to the following matters: (a) comprehensive land use plans, zoning, and other land use restrictions, prohibitions and requirements imposed by governmental authority; (b) restrictions and matters appearing on the Plat or otherwise common to the subdivision; (c) outstanding oil, gas and mineral rights of record without right of entry; (d) unplatted public utility easements of record (located contiguous to real property lines and not more than 10 feet in width as to rear or front lines and 7 1/2 feet in width as to side lines); (e) taxes for year of Closing and subsequent years; and (f)

Buyer's initials ____    Page 6 of 11    Seller's initials RG
FloridaRealtors/FloridaBar-ASIS-2  Rev.8/13 © 2013 Florida Realtors® and The Florida Bar. All rights reserved.
Serial #: 019476-700136-2903466

Case: 17-05084    Doc# 73    Filed: 07/01/19    Entered: 07/01/19 14:56:17    Page 69 of 140
CG-CP00062

assumed mortgages and purchase money mortgages, if any (if additional items, attach addendum); provided, that, none prevent use of Property for RESIDENTIAL PURPOSES. If there exists at Closing any violation of items identified in (b) - (f) above, then the same shall be deemed a title defect. Marketable title shall be determined according to applicable Title Standards adopted by authority of The Florida Bar and in accordance with law.

(ii) TITLE EXAMINATION: Buyer shall have 5 days after receipt of Title Commitment to examine it and notify Seller in writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and it is delivered to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after date of receipt to examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period") after receipt of Buyer's notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify Seller, Buyer shall be deemed to have accepted title as it then is. If Seller cures defects within Cure Period, Seller will deliver written notice to Buyer (with proof of cure acceptable to Buyer and Buyer's attorney) and the parties will close this Contract on Closing Date (or if Closing Date has passed, within 10 days after Buyer's receipt of Seller's notice). If Seller is unable to cure defects within Cure Period, then Buyer may, within 5 days after expiration of Cure Period, deliver written notice to Seller: (a) extending Cure Period for a specified period not to exceed 120 days within which Seller shall continue to use reasonable diligent effort to remove the defects ("Extended Cure Period"); or (b) electing to accept title with existing defects and close this Contract on Closing Date (or if Closing Date has passed, within the earlier of 10 days after end of Extended Cure Period or Buyer's receipt of Seller's notice), or (c) electing to terminate this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. If after reasonable diligent effort, Seller is unable to timely cure defects, and Buyer does not waive the defects, this Contract shall terminate, and Buyer shall receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

B. SURVEY: If Survey discloses encroachments on the Real Property or that improvements located thereon encroach on setback lines, easements, or lands of others, or violate any restrictions, covenants, or applicable governmental regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of such matters, together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later than Closing. If Buyer timely delivers such notice and Survey to Seller, such matters identified in the notice and Survey shall constitute a title defect, subject to cure obligations of STANDARD A above. If Seller has delivered a prior survey, Seller shall, at Buyer's request, execute an affidavit of "no change" to the Real Property since the preparation of such prior survey, to the extent the affirmations therein are true and correct.

C. INGRESS AND EGRESS: Seller represents that there is ingress and egress to the Real Property and title to the Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of access.

D. LEASE INFORMATION: Seller shall, at least 10 days prior to Closing, furnish to Buyer estoppel letters from tenant(s)/occupant(s) specifying nature and duration of occupancy, rental rates, advanced rent and security deposits paid by tenant(s) or occupant(s)("Estoppel Letter(s)"). If Seller is unable to obtain such Estoppel Letter(s) the same information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit and Buyer may thereafter contact tenant(s) or occupant(s) to confirm such information. If Estoppel Letter(s) or Seller's affidavit, if any, differ materially from Seller's representations and lease(s) provided pursuant to Paragraph 6, or if tenant(s)/occupant(s) fail or refuse to confirm Seller's affidavit, Buyer may deliver written notice to Seller within 5 days after receipt of such information, but no later than 5 days prior to Closing Date, terminating this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. Seller shall, at Closing, deliver and assign all leases to Buyer who shall assume Seller's obligations thereunder.

E. LIENS: Seller shall furnish to Buyer at Closing an affidavit attesting (i) to the absence of any financing statement, claims of lien or potential lienors known to Seller and (ii) that there have been no improvements or repairs to the Real Property for 90 days immediately preceding Closing Date. If the Real Property has been improved or repaired within that time, Seller shall deliver releases or waivers of construction liens executed by all general contractors, subcontractors, suppliers and materialmen in addition to Seller's lien affidavit setting forth names of all such general contractors, subcontractors, suppliers and materialmen, further affirming that all charges for improvements or repairs which could serve as a basis for a construction lien or a claim for damages have been paid or will be paid at Closing.

F. TIME: Calendar days shall be used in computing time periods. Time is of the essence in this Contract. Other than time for acceptance and Effective Date as set forth in Paragraph 3, any time periods provided for or dates specified in this Contract, whether preprinted, handwritten, typewritten or inserted herein, which shall end or occur on a Saturday, Sunday, or a national legal holiday (see 5 U.S.C. 6103) shall extend to 5:00 p.m. (where the Property is located) of the next business day.

G. FORCE MAJEURE: Buyer or Seller shall not be required to perform any obligation under this Contract or be liable to each other for damages so long as performance or non-performance of the obligation is delayed, caused or prevented by Force Majeure. "Force Majeure" means: hurricanes, earthquakes, floods, fire, acts of God, unusual transportation delays, wars, insurrections, acts of terrorism, and any other cause not reasonably within control of Buyer or Seller, and which, by exercise of reasonable diligent effort, the non-performing party is unable in whole or in part to prevent or overcome. All time periods, including Closing Date, will be extended for the period that the Force Majeure prevents performance under this Contract, provided, however, if such Force Majeure continues to prevent performance

Buyer's Initials _____ (W) _____        Page 7 of 11        Seller's Initials _____ RG _____

FloridaRealtors/FloridaBar-ASIS-2  Rev 9/13 © 2013 Florida Realtors® and The Florida Bar. All rights reserved.

69

under this Contract more than 14 days beyond Closing Date, then either party may terminate this Contract by delivering written notice to the other and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.

**H. CONVEYANCE:** Seller shall convey marketable title to the Real Property by statutory warranty, trustee's, personal representative's, or guardian's deed, as appropriate to the status of Seller, subject only to matters described in STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer, be transferred by absolute bill of sale with warranty of title, subject only to such matters as may be provided for in this Contract.

**I. CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:**

(i) LOCATION: Closing will take place in the county where the Real Property is located at the office of the attorney or other closing agent ("Closing Agent") designated by the party paying for the owner's policy of title insurance, or, if no title insurance, designated by Seller. Closing may be conducted by mail or electronic means.

(ii) CLOSING DOCUMENTS: Seller shall at or prior to Closing, execute and deliver, as applicable, deed, bill of sale, certificate(s) of title or other documents necessary to transfer title to the Property, construction lien affidavit(s), owner's possession and no lien affidavit(s), and assignment(s) of leases. Seller shall provide Buyer with paid receipts for all work done on the Property pursuant to this Contract. Buyer shall furnish and pay for, as applicable the survey, flood elevation certification, and documents required by Buyer's lender.

(iii) PROCEDURE: The deed shall be recorded upon COLLECTION of all closing funds. If the Title Commitment provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the escrow closing procedure required by STANDARD J shall be waived, and Closing Agent shall, subject to COLLECTION of all closing funds, disburse at Closing the brokerage fees to Broker and the net sale proceeds to Seller.

**J. ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following escrow and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent for a period of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault of Buyer, Buyer shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days from date of receipt of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit and all Closing funds paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and, simultaneously with such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-convey the Property to Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely demand for refund of the Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening defect except as may be available to Buyer by virtue of warranties contained in the deed or bill of sale.

**K. PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as of the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes (including special benefit tax assessments imposed by CDD), interest, bonds, association fees, insurance, rents and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if assumable, in which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required by prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will be credited to Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated based on current year's tax with due allowance made for maximum allowable discount, homestead and other exemptions. If Closing occurs on a date when current year's millage is not fixed but current year's assessment is available, taxes will be prorated based upon such assessment and prior year's millage. If current year's assessment is not available, then taxes will be prorated on prior year's tax. If there are completed improvements on the Real Property by January 1st of year of Closing, which improvements were not in existence on January 1st of prior year, then taxes shall be prorated based upon prior year's millage and at an equitable assessment to be agreed upon between the parties, failing which, request shall be made to the County Property Appraiser for an informal assessment taking into account available exemptions. A tax proration based on an estimate shall, at either party's request, be readjusted upon receipt of current year's tax bill. This STANDARD K shall survive Closing.

**L. ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller shall, upon reasonable notice, provide utilities service and access to Property for appraisals and inspections, including a walk-through (or follow-up walk-through if necessary) prior to Closing.

**M. RISK OF LOSS:** If, after Effective Date, but before Closing, Property is damaged by fire or other casualty ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does not exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed pursuant to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated cost to complete restoration (not to exceed 1.5% of Purchase Price), will be escrowed at Closing. If actual cost of restoration exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5%, or receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal'.

Case: 17-05084    Doc# 73    Filed: 07/01/19    Entered: 07/01/19 14:56:17    Page 71 of 140

DocuSign Envelope ID: 0E0-0LC-2-02DC-    0E0-000-0C-0C/20004

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS", CONTINUED

N. 1031 EXCHANGE: If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneously with Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate in all reasonable respects to effectuate the Exchange, including execution of documents; provided, however, cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be contingent upon, nor extended or delayed by, such Exchange.

O. CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; DELIVERY; COPIES; CONTRACT EXECUTION: Neither this Contract nor any notice of it shall be recorded in any public records. This Contract shall be binding on, and inure to the benefit of, the parties and their respective heirs or successors in interest. Whenever the context permits, singular shall include plural and one gender shall include all. Notice and delivery given by or to the attorney or broker (including such broker's real estate licensee) representing any party shall be as effective as if given by or to that party. All notices must be in writing and may be made by mail, personal delivery or electronic (including "pdf") media. A facsimile or electronic (including "pdf") copy of this Contract and any signatures hereon shall be considered for all purposes as an original. This Contract may be executed by use of electronic signatures, as determined by Florida's Electronic Signature Act and other applicable laws.

P. INTEGRATION; MODIFICATION: This Contract contains the full and complete understanding and agreement of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or representations shall be binding upon Buyer or Seller unless included in this Contract. No modification to or change in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended to be bound by it.

Q. WAIVER: Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or rights.

R. RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS: Riders, addenda, and typewritten or handwritten provisions shall control all printed provisions of this Contract in conflict with them.

S. COLLECTION or COLLECTED: "COLLECTION" or "COLLECTED" means any checks tendered or received, including Deposits, have become actually and finally collected and deposited in the account of Escrow Agent or Closing Agent. Closing and disbursement of funds and delivery of closing documents may be delayed by Closing Agent until such amounts have been COLLECTED in Closing Agent's accounts.

T. LOAN COMMITMENT: "Loan Commitment" means a statement by the lender setting forth the terms and conditions upon which the lender is willing to make a particular mortgage loan to a particular borrower. Neither a pre-approval letter nor a prequalification letter shall be deemed a Loan Commitment for purposes of this Contract.

U. APPLICABLE LAW AND VENUE: This Contract shall be construed in accordance with the laws of the State of Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the county where the Real Property is located.

V. FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA"): If a seller of U.S. real property is a "foreign person" as defined by FIRPTA, Section 1445 of the Internal Revenue Code requires the buyer of the real property to withhold 10% of the amount realized by the seller on the transfer and remit the withheld amount to the Internal Revenue Service (IRS) unless an exemption to the required withholding applies or the seller has obtained a Withholding Certificate from the IRS authorizing a reduced amount of withholding. Due to the complexity and potential risks of FIRPTA, Buyer and Seller should seek legal and tax advice regarding compliance, particularly if an "exemption" is claimed on the sale of residential property for $300,000 or less.

(i) No withholding is required under Section 1445 if the Seller is not a "foreign person", provided Buyer accepts proof of same from Seller, which may include Buyer's receipt of certification of non-foreign status from Seller, signed under penalties of perjury, stating that Seller is not a foreign person and containing Seller's name, U.S. taxpayer identification number and home address (or office address, in the case of an entity), as provided for in 26 CFR 1.1445-2(b). Otherwise, Buyer shall withhold 10% of the amount realized by Seller on the transfer and timely remit said funds to the IRS.

(ii) If Seller has received a Withholding Certificate from the IRS which provides for reduced or eliminated withholding in this transaction and provides same to Buyer by Closing, then Buyer shall withhold the reduced sum, if any required, and timely remit said funds to the IRS.

(iii) If prior to Closing Seller has submitted a completed application to the IRS for a Withholding Certificate and has provided to Buyer the notice required by 26 CFR 1.1445-1(c) (2)(i)(B) but no Withholding Certificate has been received as of Closing, Buyer shall, at Closing, withhold 10% of the amount realized by Seller on the transfer and, at Buyer's option, either (a) timely remit the withheld funds to the IRS or (b) place the funds in escrow, at Seller's expense, with an escrow agent selected by Buyer and pursuant to terms negotiated by the parties, to be subsequently disbursed in accordance with the Withholding Certificate issued by the IRS or remitted directly to the IRS if the Seller's application is rejected or upon terms set forth in the escrow agreement.

(iv) In the event the net proceeds due Seller are not sufficient to meet the withholding requirement(s) in this transaction, Seller shall deliver to Buyer, at Closing, the additional COLLECTED funds necessary to satisfy the applicable requirement and thereafter Buyer shall timely remit said funds to the IRS or escrow the funds for disbursement in accordance with the final determination of the IRS, as applicable.

Buyer's Initials (JW)         Page 9 of 11          Seller's Initials RG

FloridaRealtors/FloridaBar-ASIS-2   Rev.8/13 © 2013 Florida Realtors® and The Florida Bar.   All rights reserved.
Serial# 019078-700133-2901403

Case: 17-05084    Doc# 73    Filed: 07/01/19    Entered: 07/01/19 14:56:17    Page 72 of
140

25 (v) Upon remitting funds to the IRS pursuant to this STANDARD, Buyer shall provide Seller copies of IRS Forms 8288
26 and 8288-A, as filed.
27 W. RESERVED
28 X. BUYER WAIVER OF CLAIMS: *To the extent permitted by law, Buyer waives any claims against Seller and*
29 *against any real estate licensee involved in the negotiation of this Contract for any damage or defects*
30 *pertaining to the physical condition of the Property that may exist at Closing of this Contract and be*
31 *subsequently discovered by the Buyer or anyone claiming by, through, under or against the Buyer. This*
32 *provision does not relieve Seller's obligation to comply with Paragraph 10(j). This Standard X shall survive*
33 *Closing.*

34 **ADDENDA AND ADDITIONAL TERMS**

35 **19. ADDENDA:** The following additional terms are included in the attached addenda or riders and incorporated into this
36 Contract (Check if applicable):

☒A. Condominium Rider    ☐ M. Defective Drywall    ☐ X. Kick-out Clause
☐ B. Homeowners' Assn.    ☐ N. Coastal Construction Control Line    ☐ Y. Seller's Attorney Approval
☐ C. Seller Financing    ☐ O. Insulation Disclosure    ☐ Z. Buyer's Attorney Approval
☐ D. Mortgage Assumption    ☒ P. Lead Based Paint Disclosure    ☐ AA. Licensee-Personal Interest in
☐ E. FHA/VA Financing         (Pre-1978 Housing)       Property
☐ F. Appraisal Contingency    ☐ Q. Housing for Older Persons    ☐ BB. Binding Arbitration
☐ G. Short Sale    ☐ R. Rezoning    ☒ Other _Seller Property_
☐ H. Homeowners'/Flood Ins.    ☐ S. Lease Purchase/ Lease Option    _Disclosure._
☐ I. RESERVED    ☐ T. Pre-Closing Occupancy by Buyer
☐ J. Interest-Bearing Acct.    ☐ U. Post-Closing Occupancy by Seller
☐ K. RESERVED    ☐ V. Sale of Buyer's Property
☐ L. RESERVED    ☐ W. Back-up Contract

137 **20. ADDITIONAL TERMS:** _IN ADDITION TO THE BROKERAGE FEE DISCLOSED_
138 _IN PARAGRAPH 19(G) that Contract Seller will pay one_
139 _Coldwell International Realty at the time of closing_
140 _A Brokerage Fee in the amount of $295.00 y_
141 _____
142 _____
143 _Special assessments will be responsibility of the seller. CM_
144 _____
145 _____
146 _____
147 _____
148 _____
149 _____
150 _____
151 _____
152 _____
153 _____

154 **COUNTER-OFFER/REJECTION**

155 ☐ Seller counters Buyer's offer (to accept the counter-offer, Buyer must sign or initial the counter-offered terms and deliver
156 a copy of the acceptance to Seller).
157 ☐ Seller rejects Buyer's offer.

158 **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE ADVICE OF
159 AN ATTORNEY PRIOR TO SIGNING.**

160 **THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.**

161 *Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the terms and
562 conditions in this Contract should be accepted by the parties in a particular transaction. Terms and conditions should be
563 negotiated based upon the respective interests, objectives and bargaining positions of all interested persons.*

Buyer's Initials _CM_      **Page 10 of 11**      Seller's Initials _TG_
FloridaRealtors/FloridaBar-ASIS-2   Rev.6/13 © 2013 Florida Realtors® and The Florida Bar. All rights reserved.
Serial#: 013573-700138-2982868

72

Case: 17-05084   Doc# 73   Filed: 07/01/19   Entered: 07/01/19 14:56:17   Page 73 of 140
CGC-CD00066

564    AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK TO BE
565    COMPLETED.
566
567
568*    Buyer: _Giovenco Alofi~i_                              Date: _01/23/14_
569
570
571
572
573*    Buyer: _____               Date: _____
574
575
576
577
578*    Seller: _Roger Goldblatt_                              Date: _1/23/2014_
579
580
581
582
583*    Seller: _____               Date: _____
584
585    Buyer's address for purposes of notice            Seller's address for purposes of notice
586*    _____                    _____
587*    _____                    _____
588*    _____                    _____
589
590    BROKER: Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers entitled to
591    compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct Closing Agent to
592    disburse at Closing the full amount of the brokerage fees as specified in separate brokerage agreements with the parties
593    and cooperative agreements between the Brokers, except to the extent Broker has retained such fees from the escrowed
594    funds. This Contract shall not modify any MLS or other offer of compensation made by Seller or Listing Broker to
595    Cooperating Brokers.
596
597*   _Carlo Dipasquale LLC_                             _Leslie S. Cooper_
598    Cooperating Sales Associate, if any    ▮9893       Listing Sales Associate          ▮6242
599
600*   _Cervera Real Estate_                              _One Sotheby's Int. Realty_
601    Cooperating Broker, if any          3 %            Listing Broker          3 %

FloridaRealtors/FloridaBar-ASIS-2   Rev.8/13 © 2013 Florida Realtors and The Florida Bar  All rights reserved.
Serial: 018?5-759138-2982466

73

CGC-000067

DocuSign Envelope ID: 9S9L8JC242B0C-    0E0-0ULC3C1C2IX04

# Comprehensive Rider to the
# Residential Contract For Sale And Purchase
THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR

Florida Realtors®

If initialed by all parties, the clauses below will be incorporated into the Florida Realtors®/Florida Bar Residential Contract For Sale And Purchase between ___Roger AND Elisa GoLAZIT JTRS___ **(SELLER)** and ___Giovanni NAPPI AND /or ASSIGNS___ **(BUYER)** concerning the Property described as ___The MORINA Condo___

Buyer's Initials ___GN___ ___    Seller's Initials ___RG___ ___

## A. CONDOMINIUM RIDER

1. **CONDOMINIUM ASSOCIATION APPROVAL:**
   The Association's approval of Buyer **(CHECK ONE):** ☒ is ☐ is not required. If approval is required, this Contract is contingent upon Buyer being approved by the Association no later than _____ (if left blank, then 5) days prior to Closing. Within _____ (if left blank, then 5) days after Effective Date Seller shall initiate the approval process with the Association and Buyer shall apply for such approval. Buyer and Seller shall sign and deliver any documents required by the Association in order to complete the transfer of the Property and each shall use diligent effort to obtain such approval, including making personal appearances if required. If Buyer is not approved within the stated time period, this Contract shall terminate and Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

2. **RIGHT OF FIRST REFUSAL:**
   (a) The Association **(CHECK ONE):** ☐ has ☒ does not have a right of first refusal ("Right"). If the Association has a Right, this Contract is contingent upon the Association, within the time permitted for the exercise of such Right, either providing written confirmation to Buyer that the Association is not exercising that Right, or failing to timely exercise such Right pursuant to the terms of the Declaration of Condominium ("Declaration", which reference includes all amendments thereto).
   (b) The members of the Association **(CHECK ONE):** ☐ have ☒ do not have a Right. If the members do have a Right, this Contract is contingent upon the members, within the time permitted for the exercise of such Right, either providing written confirmation to Buyer that the members are not exercising that Right, or failing to timely exercise such Right pursuant to the terms of the Declaration.
   (c) Buyer and Seller shall, within _____ (if left blank, then 5) days after Effective Date, sign and deliver any documents required as a condition precedent to the exercise of the Right, and shall use diligent effort to submit and process the matter with the Association and members, including personal appearances, if required.
   (d) If, within the stated time period, the Association, the members of the Association, or both, fail to provide the written confirmation or the Right has not otherwise expired, then this Contract shall terminate and the Deposit shall be refunded to the Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.
   (e) If the Association or a member timely exercises its or their Right, this Contract shall terminate and the Deposit shall be refunded to Buyer (unless this Contract provides otherwise), thereby releasing Buyer and Seller from all further obligations under this Contract, and Seller shall pay to Broker the full commission at Closing in recognition that Broker procured the sale.

*GN*
*RG*

3. **FEES; ASSESSMENTS; PRORATIONS; LITIGATION:**
   (a) Condominium Association assessment(s) and Rents: Seller represents that the current Association assessment(s) installments is/are

   570.77   $ ___440/000 xxxx___ payable **(CHECK ONE):** ☒ monthly ☐ quarterly ☐ semi-annually ☐ annually

   and if more than one Association assessment
   $ _____ payable **(CHECK ONE):** ☐ monthly ☐ quarterly ☐ semi-annually ☐ annually

   and the current rent on recreation areas, if any, is
   $ _____ payable **(CHECK ONE):** ☐ monthly ☐ quarterly ☐ semi-annually ☐ annually

Page 1 of 3   A. CONDOMINIUM RIDER                                          (SEE CONTINUATION)
CR-2 Rev. 8/13 © 2013 Florida Realtors® and The Florida Bar. All rights reserved.

Case: 17-05084    Doc# 73    Filed: 07/01/19    Entered: 07/01/19 14:56:17    Page 75 of 140
CGC CD00068

## A. CONDOMINIUM RIDER (CONTINUED)

All annual assessments levied by the Association and rent on recreational areas, if any, shall be made current by Seller at Closing, and Buyer shall reimburse Seller for prepayments.

(b) Fees: Seller shall, at Closing, pay all fines imposed against the Unit by the Condominium Association as of Closing Date and any fees the Association charges to provide information about the Property, assessment(s) and fees.

*If Property is part of a Homeowners' Association, see Rider B. HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE for further information including additional assessments and fees.*

(c) Special Assessments and Prorations:

(i) Seller represents that Seller is not aware of any special or other assessment that has been levied by the Association or that has been an item on the agenda, or reported in the minutes, of the Association within twelve (12) months prior to Effective Date, ("pending") except as follows: _____
assessment for waterproofing building
x x

(ii) If special assessments levied or pending exist as of the Effective Date are disclosed above by Seller and may be paid in installments (CHECK ONE): ☐ Buyer ☒ Seller (if left blank, then Buyer) shall pay installments due after Closing Date. If Seller is checked, **Seller shall pay the assessment in full prior to or at the time of Closing.**

(iii) If special assessments levied or pending exist as of the Effective Date and have not been disclosed above by Seller, then Seller shall pay such assessments in full at the time of Closing.

(iv) If, after Effective Date, the Association imposes a special assessment for improvements, work or services, which was not pending as of the Effective Date, then Seller shall pay all amounts due before Closing Date and Buyer shall pay all amounts due after Closing Date.

(v) A special assessment shall be deemed levied for purposes of this paragraph on the date when the assessment has been approved as required for enforcement pursuant to Florida law and the condominium documents listed in Paragraph 6.

(vi) Association assets and liabilities, including Association reserve accounts, shall not be prorated.

(d) Litigation: Seller represents that Seller is not aware of pending or anticipated litigation affecting the Property or the common elements, if any, except as follows: _____

4. **SPRINKLER SYSTEM RETROFIT:**
If, pursuant to Sections 718.112(2)(l), F.S., the Association has voted to forego retrofitting its fire sprinkler system or handrails and guardrails for the condominium units, then prior to Closing Seller shall furnish to Buyer the written notice of Association's vote to forego such retrofitting.

5. **NON-DEVELOPER DISCLOSURE:**
(CHECK ONE):

☐ **(a) THE BUYER HEREBY ACKNOWLEDGES THAT BUYER HAS BEEN PROVIDED A CURRENT COPY OF THE DECLARATION OF CONDOMINIUM, ARTICLES OF INCORPORATION OF THE ASSOCIATION, BYLAWS AND RULES OF THE ASSOCIATION, AND A COPY OF THE MOST RECENT YEAR-END FINANCIAL INFORMATION AND FREQUENTLY ASKED QUESTIONS AND ANSWERS DOCUMENT MORE THAN 3 DAYS, EXCLUDING SATURDAYS, SUNDAYS, AND LEGAL HOLIDAYS, PRIOR TO EXECUTION OF THIS CONTRACT.**

☒ **(b) THIS AGREEMENT IS VOIDABLE BY BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 3 DAYS, EXCLUDING SATURDAYS, SUNDAYS, AND LEGAL HOLIDAYS, AFTER THE DATE OF EXECUTION OF THIS AGREEMENT BY THE BUYER AND RECEIPT BY BUYER OF A CURRENT COPY OF THE DECLARATION OF CONDOMINIUM, ARTICLES OF INCORPORATION, BYLAWS AND RULES OF THE ASSOCIATION, AND A COPY OF THE MOST RECENT YEAR-END FINANCIAL INFORMATION AND FREQUENTLY ASKED QUESTIONS AND ANSWERS DOCUMENT IF SO REQUESTED IN WRITING. ANY PURPORTED WAIVER OF THESE VOIDABILITY RIGHTS SHALL BE OF NO EFFECT. BUYER MAY EXTEND THE TIME FOR CLOSING FOR A PERIOD OF NOT MORE THAN 3 DAYS, EXCLUDING SATURDAYS, SUNDAYS, AND**

Page 2 of 3   A. CONDOMINIUM RIDER                                    (SEE CONTINUATION)
CR-2   Rev. 6/13  © 2013 Florida Realtors® and The Florida Bar. All rights reserved.

75

DocuSign Envelope ID: 93AC6DC2-02DC-    DEC-6DDC8C-D2D084

A. CONDOMINIUM RIDER (CONTINUED)

LEGAL HOLIDAYS, AFTER THE BUYER RECEIVES THE DECLARATION, ARTICLES OF INCORPORATION, BYLAWS AND RULES OF THE ASSOCIATION, AND A COPY OF THE MOST RECENT YEAR-END FINANCIAL INFORMATION AND FREQUENTLY ASKED QUESTIONS AND ANSWERS DOCUMENT IF REQUESTED IN WRITING. BUYER'S RIGHT TO VOID THIS AGREEMENT SHALL TERMINATE AT CLOSING.

6. **BUYER'S REQUEST FOR DOCUMENTS:**
Buyer is entitled, at Seller's expense, to current copies of the condominium documents specified in Paragraph 5, above. Buyer (CHECK ONE): ☒ requests ☐ does not request a current copy of the documents specified in Paragraph 5, above. If this Contract does not close, Buyer shall immediately return the documents to Seller or reimburse Seller for the cost of the documents.

7. **BUYER'S RECEIPT OF DOCUMENTS:**
(COMPLETE AND CHECK ONLY IF CORRECT) ☐ Buyer received the documents described in Paragraph 5, above, on _____

8. **COMMON ELEMENTS; PARKING:**
The Property includes the unit being purchased and an undivided interest in the common elements and appurtenant limited common elements of the condominium, as specified in the Declaration. Seller's right and interest in or to the use of the following parking space(s), garage, and other areas are included in the sale of the Property and shall be assigned to Buyer at Closing, subject to the Declaration:
Parking Space(s) # _____ Garage # _____ Other: _____

9. **INSPECTIONS AND REPAIRS:**
The rights and obligations arising under Paragraphs 11 and 12 of this Contract to maintain, repair, replace or treat are limited to Seller's individual condominium unit and unless Seller is otherwise responsible do not extend to common elements, limited common elements, or any other part of the condominium property.

10. **GOVERNANCE FORM:**
PURSUANT TO CHAPTER 718, FLORIDA STATUTES, BUYER IS ENTITLED TO RECEIVE FROM SELLER A COPY OF THE GOVERNANCE FORM IN THE FORMAT PROVIDED BY THE DIVISION OF FLORIDA CONDOMINIUMS, TIMESHARES AND MOBILE HOMES OF THE DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION, SUMMARIZING THE GOVERNANCE OF THE CONDOMINIUM ASSOCIATION.

Page 3 of 3    A. CONDOMINIUM RIDER
CR-2 Rev. 8/13 © 2013 Florida Realtors® and The Florida Bar. All rights reserved.

Serial# 541446-600136-2892757

76



Addendum to Contract for Residential Sale and Purchase

1  If initialed by all parties, the terms below will be incorporated into the Contract for Residential Sale and Purchase
2  between  Roger and Elisa Goldblatt JTRS _____ ("Seller")
3  and  Giovanni Nappi and/or assigns _____ ("Buyer")
4  concerning the Property described as  1605 Euclid Ave. #A-2 Miami Beach, FL. 33139 _____
5  _____

6  ( RG ) (___) - ( GN ) (___) Pre-1978 Housing Lead-Based Paint Warning Statement: "Every purchaser
7  of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such
8  property may present exposure to lead from lead-based paint that may place young children at risk of developing lead
9  poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning
10 disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a
11 particular risk to pregnant women. The seller of any interest in residential real property is required to provide the
12 buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's
13 possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible
14 lead-based paint hazards is recommended prior to purchase." For purposes of this addendum, lead-based paint will
15 be referred to as "LBP" and lead-based paint hazards will be referred to as "LBPH."

16 **1. LBP/LBPH in Housing:** Seller has no knowledge of LBP/LBPH in the housing and no available LBP/LBPH
17 records or reports, except as indicated: (Describe all known LBP/LBPH information, list all available documents
18 pertaining to LBP/LBPH, and provide documents to **Buyer** before accepting **Buyer's** offer.) _____
19 _____
20 _____
21 _____

22 **2. Lead-Based Paint Hazards Inspection:** Buyer **waives the opportunity** to conduct a risk assessment or
23 inspection for the presence of LBP/LBPH unless this box is checked (☐ **Buyer** may, within the Inspection Period,
24 conduct a risk assessment or inspection for the presence of LBP/LBPH in accordance with the provisions of
25 Paragraph 8(a) of this Contract or As is with Right to Inspect Addendum. LBP/LBPH conditions that are unsatisfactory
26 to Buyer will be treated as "warranted items" for purposes of Paragraphs 8(a)(2) and (3) of this Contract only).

27 **3. Certification of Accuracy:** Buyer has received the pamphlet entitled "Protect Your Family from Lead in Your
28 Home" and all of the information specified in Paragraph 1 above. Licensee has notified Seller of Seller's obligations
29 to provide and disclose information regarding lead-based paint and lead-based paint hazards in the Property as
30 required by federal law (42 U.S.C. 4852d) and is aware of his or her obligation to ensure compliance with federal
31 lead-based paint law. Seller, Buyer, and each licensee have reviewed the information above and certifies, to the best
32 of his or her knowledge, that the information he or she has provided is true and accurate.

33 _Roger Goldblatt_____  1/25/2014   _Giovan Nappi_____   _01/26/16___
34 Seller                          Date       Buyer                    Date

35 _____  _____   _____   _____
36 Seller                          Date       Buyer                    Date

37 _Carl Docey_____  01/26/16
38 Listing Licensee signature     Date       Selling Licensee signature   Date

CRSP-12 (Pre-1978 Housing Lead-Based Paint Warning Statement Addendum)   ©2012 Florida Association of Realtors®   All Rights Reserved

77

DocuSign Envelope ID: [illegible]

## Addendum to Contract for Residential Sale and Purchase

**Florida Realtors**

1    If initialed by all parties, the terms below will be incorporated into the Contract for Residential Sale and Purchase
2    between ___ROGER AND ELISA GOLDBLATT JTRS___ ("Seller")
3    and ___GIOVANNI NAPPI & OR ASSIGNS___ ("Buyer")
4    concerning the Property described as ___the NORMA CONP___
5

6    ( GN ) (____) ( RG ) (____) **V. Property Disclosure:** This Contract is contingent on Seller completing, signing,
7    and delivering to Buyer a written real property disclosure statement within 3 days after Effective Date. If
8    the statement discloses any material information about the Property that is unacceptable to Buyer, Buyer may
9    cancel this Contract by giving written notice to Seller within 3 days after receipt of Seller's written statement; and
10    Buyer's deposit(s) will be refunded.

CRSP-13 (V. Property Disclosure Addendum)    Rev 3/13        ©2013 Florida Association of REALTORS®
Serial: 073650-400128-3991555

78

**Addendum to Contract**

Addendum No. ___4___ to the Contract dated _____ January 26, 2014 _____ between

_____ Roger and Elisa Goldblatt JTRS _____ (Seller)

and _____ Giovanni Nappi and/or Assigns _____ (Buyer)

concerning the property described as:

_____ 1605 Euclid Ave. #A-2 _____

(the "Contract"). Buyer and Seller make the following terms and conditions part of the Contract:

Buyer and Seller agree to extend the closing date, originally set for 2/22/14, to on/before March 8, 2014.

Date: _02/28/14_          Buyer: _[signature]_

Date: _____          Buyer: _____

Date: _2/27/2014_         Seller: _Roger Goldblatt_

Date: _____          Seller: _____

This form is available for use by the entire real estate industry and is not intended to identify the user as a REALTOR. REALTOR is a registered collective membership mark that may be used only by real estate licensees who are members of the National Association of REALTORS and who subscribe to its Code of Ethics.

The copyright laws of the United States (17 U.S. Code) forbid the unauthorized reproduction of blank forms by any means including facsimile or computerized forms.

ACSP-2a Rev. 6/94 ©1994 Florida Association of REALTORS ® All Rights Reserved

Serial# CC3458-700129-3531690

79

# Owner's Property Disclosure Statement

OWNER(S) NAME(S): Roger Quintana
PROPERTY ADDRESS: 1604 Euclid A-1
DATE HOME BUILT: 1934
DATE OWNER PURCHASED PROPERTY: 2010
PROPERTY IS PRESENTLY: ☒Occupied by Owner ☐Rented ☐ Vacant
IF LEASED, is the lease ☐Written ☐Oral. Termination date of lease is: _____

**The Information Disclosed Is Given To The Best Of Owner's Knowledge**

NOTICE TO THE BUYER/TENANT AND OWNER: In Florida, an Owner is obligated to disclose to a Buyer/Tenant all known facts that materially affect the value of the property being sold and that are not readily observable. This disclosure statement is designed to assist Owner in complying with the disclosure requirements under Florida Law and to assist the Buyer/Tenant in evaluating the property being considered. This disclosure statement concerns the condition of the real property located at the above-referenced address. It is not a warranty of any kind by the Owner or any Licensee in this transaction. It is not a substitute for any inspections or warranties the parties may wish to obtain. It is based only upon Owner's knowledge of property condition. This disclosure is not intended to be a part of any contract for sale and purchase or lease agreement. Real estate agents and other parties involved in the transaction rely upon and may refer to this information when they evaluate, market, or present Owner's property to prospective Buyer/Tenants.

INSTRUCTIONS TO THE OWNER: (1) Complete this form yourself; (2) review prior disclosure statement(s) and/or inspection report(s) when completing this form; (3) describe conditions affecting property to the best of your knowledge; (4) attach additional pages with your signature if additional space is required; (5) answer all questions; (6) if you have no knowledge regarding the specific matter, then "UNKNOWN" should be indicated, and (7) if any items do not apply, write "N/A" (Not Applicable).

The following representations are made by the Owner(s) and are not representations of any real estate licensees:

1. **CLAIMS & ASSESSMENTS:**
   a. Are you aware of existing, pending, or proposed legal actions, claims, special assessments, tax liens, charges, or unpaid assessments (including homeowner's association, condo maintenance fees, proposed increases in assessments and/or maintenance fees) affecting the property? ☐NO ☒YES If "Yes", please explain: *Special assessment is upcoming for outside repairs. Seller is liable for paying the same to HOA*
   b. Have any local, state or federal authorities notified you that repairs, alterations or corrections of the property are required? ☒NO ☐YES If "Yes", please explain: _____

2. **PROPERTY USE/DEED RESTRICTIONS AND HOMEOWNER/CONDO ASSOCIATION:**
   a. Are you aware of any Homeowner Association, Condo Association, deed restrictions, covenants, or reservations that may affect the use, future resale or value of the property? ☒NO ☐YES If "Yes", please explain: _____

   b. Are you aware of any proposed changes that effect or may affect the use, future resale or value of the property? ☒NO ☐YES If "Yes", please explain: _____

3. **STRUCTURE-RELATED ITEMS:**
   a. Are you aware of any structural damage which may have resulted from events including, but not limited to: fire, wind, hurricane, flood, hail, lightening, landslide, blasting, shifting in the foundation, and/or spalling? ☒NO ☐YES
   b. Are you aware of any past or present cracks or flaws in the walls, floors or foundations? ☐NO ☒YES
   c. Are you aware of any past or present problems with driveways, walkways, patios, porches, seawalls, pools, or retaining walls on the property? ☒NO ☐YES
   d. Are you aware of any past or present water leaks, water accumulation or dampness within the house, basement, crawl space or attic? ☐NO ☒YES
   If any of your answers in this section are "Yes", please explain: *These are being addressed by condo association.*

Rev. 03/2010

80

**4.  PROPERTY-RELATED ITEMS:**

a.   Have you ever had the property surveyed? ☒NO ☐YES

b.   Is there an existing elevation certificate? ☐NO ☐YES

c.   The Flood Zone is: _____. The Base Flood Elevation (BFE) is: _____

d.   Are you aware of any walls, driveways, fences, structures or other features shared in common with adjoining landowners, or any encroachments, boundary line disputes, setback violations or easements (other than utility or drainage easements) affecting the property? ☐NO ☐YES  If "Yes", Please explain: _____
_____

e.   Do you have an existing flood insurance policy? ☐NO ☐YES

**5.  TERMITES, DRY ROT, PESTS, WOOD DESTROYING ORGANISMS:**

a.   Do you have any knowledge of termites, dry rot, pests or wood destroying organisms on or affecting property?
☒NO ☐YES

b.   Do you have any knowledge of any damage to the property caused by termites, dry rot, pests or wood destroying organisms? ☒NO ☐YES

c.   Have you ever had the property inspected for termites, dry rot, pests or wood destroying organisms?
☒NO ☐YES  If "Yes", Date of Inspection: _____

d.   Has the property been treated for termites, dry rot, pests or wood destroying organisms? ☒NO ☐YES
If "Yes", please indicate Date of Treatment _____ Type of Treatment _____
Company Name: _____

e.   Is your property currently under warranty or other coverage by a licensed pest control company? ☐ NO ☒YES
If "Yes", Company Name: _____ORKIN_____

If any of your answers in this section are "Yes", please explain: _____

**6.  PERMITS:**

a.   Are you aware of any improvements, modifications or additions to the property, whether by you or by others, that have been constructed in violation of applicable building codes or without necessary permits? ☒NO ☐YES

b.   Are you aware of any open permits (i.e., active or expired permits) on the property which have not been closed by a final inspection? ☒NO ☐YES

If any of your answers in this section are "Yes", please explain: _____

**7.  ROOF-RELATED ITEMS:**  7

a.   Approximate age of roof: _____

b.   Have you replaced the roof? ☐NO ☐YES  If "Yes", when?: _____

c.   Is there a warranty on the roof? ☐NO ☐YES  If "Yes" is the warranty transferable? ☐NO ☐YES
Name of Company: _____

d.   Has the roof ever leaked since you've owned the property? ☒NO ☐YES  If "Yes", what has been done to correct the leaks? _____ Date of repair(s): _____

e.   Has the roof been inspected within the last 12 months? ☐NO ☐YES  If "Yes", please explain: _____

**8.  PLUMBING-RELATED ITEMS:**

a.   What is your drinking water source? ☒Public ☐Private Well ☐Other _____

b.   If your drinking water is from a well or other source, when was your water test checked for safety and what were the results of the test? _____

c.   What is the water source for your sprinkler system? _____

d.   Do you have a water conditioning system? ☒NO ☐YES  If "Yes" is it ☐LEASED?  or  ☐OWNED?

e.   What is the type of sewage system? ☒ Public Sewer ☐ Private Sewer ☐ Septic Tank ☐ Cesspool
When was the septic tank/cesspool last serviced? _____

f.   Are any storage tanks stored or buried on the property? ☐NO ☐YES  If "Yes", where? _____

Rev. 03/2010

81

g.  Do you know of any leaks, backups, breaks, or other problems relating to any of the plumbing, water, sewage/septic system or sprinkler system? ☑NO ☐YES If "Yes", please explain: _____

**9.  ELECTRICAL SYSTEMS:**

a.  Does Property have:  Circuit breakers? ☐NO ☑YES    Fuses? ☐NO ☐YES

b.  Are you aware of any damaged, dangerous, malfunctioning or un-permitted switches, receptacles, circuits, fans, lights, fuses or wiring? ☑NO ☐YES

c.  Are you aware of any conditions that materially affect the value or operating capacity of the electrical system? ☑NO ☐YES If any of your answers to this section are "Yes", please explain: _____

**10. POOL/HOT TUBS/SPAS:**

a.  Does the property have a swimming pool? ☑NO ☐YES    Hot Tub? ☑NO ☐YES    Spa? ☑NO ☐YES If "Yes", was the certificate of completion received after October1, 2000 for the pool/hot tub/spa? ☐NO ☐YES

b.  Are there any problems in need of repair to the pool, pool lines, pool-related equipment, hot tub, and/or spa? ☑NO ☐YES

c.  Are there any electrical problems with the pool, pool related equipment, hot tub and/or spa? ☐NO ☐YES

d.  Do the following Pool Safety features (as defined by Chapter 515, Florida Statutes:) comply with the law:  Enclosure meeting barrier requirements? ☐NO ☐YES    Approved Safety Pool Cover? ☐NO ☐YES Required door and window exit alarms? ☐NO ☐YES    Required doors/gate locks? ☐NO ☐YES    If any of your answers in this section are "No", please explain: _____

**11. MAJOR APPLIANCES AND EQUIPMENT:**

a.  Are there existing problems with the appliances and/or equipment in the home, including the sprinkler system and security system? ☑NO ☐YES If "Yes", please explain: _____

b.  Are there service contracts or warranties on appliances and/or equipment? ☑NO ☐YES    If "Yes", please explain: _____

Are any of these gas appliances? ☐NO ☐YES    Lawn Sprinkler System? ☐NO ☑YES    Is there a timer? ☐NO ☐YES Garage door openers? ☑NO ☐YES    Hurricane Shutters? ☐NO ☐YES Other items included in this sale: _____

**12. HEATING AND AIR CONDITIONING:**

a.  Is the air conditioning ☑Central? or ☐Window?  Number of units? _____

b.  How old is the air conditioner? _____

c.  Are you aware of any malfunctioning, circulation, electrical, cooling, leakage, overheating, or condensation problems pertaining to the air conditioning/heating since you have owned the property? ☑NO ☐YES If "Yes", please explain: _____

**13. DOCKS/DAVITS/PIERS AND SEAWALLS:**

a.  Are you aware of any conditions that may affect the desirability, use or function of the dock, davits or pier or seawall? ☑NO ☐YES, please explain: _____

b.  Was a federal, state or local government permit required for the construction or maintenance of the dock, davits, pier, or seawall? ☐NO ☐YES ☐UNKNOWN If "Yes", were all appropriate permits and approvals issued for the construction and maintenance of such structures? ☐NO ☐YES ☐UNKNOWN If "No", please explain: _____

**14. MOLD AND TOXIC SUBSTANCES:**

a.  Are you aware of any past or present instances of mold or water/moisture intrusion in the structure(s) on the property? ☑NO ☐YES If "Yes", please explain: _____

b.  Are you aware of any past or present damage to the structure(s) on the property that resulted from water/moisture intrusion, including, but not limited to, the presence of mold? ☐NO ☑YES If "yes", please explain: *The Renter* *is derbing a pier not th.s*

Rev. 09/2010

Case: 17-05084    Doc# 73    Filed: 07/01/19    Entered: 07/01/19 14:56:17    Page 83 of 140

CG-CD00076

c. Are you aware of any underground tanks or toxic substances present on the property (structure or soil) such as asbestos, PCB's, accumulated radon, lead paint, chinese/defective drywall, above ground or buried oil or gas tanks, or others?
☑ NO ☐ YES
If "Yes", please explain: _____

d. Are you aware of any repairs or other corrective or remedial procedures that were undertaken as a result of the matters identified in this section? ☐ NO ☐ YES If "Yes", please explain: _____

## 15. NEIGHBORHOOD/ENVIRONMENT:

a. Are you aware of any existing condition or proposed change in your neighborhood that could adversely affect the value or desirability of the property, such as noise or other nuisances, electric or magnetic field levels, threat of condemnation or street changes, proposed developments or roadways, or blasting? ☑ NO ☐ YES If "Yes", please explain: _____
_____

b. Are you aware of wetlands, mangroves, archeological sites, historical preservation property, or other environmentally sensitive matters on, or affecting the property? ☑ NO ☐ YES If "Yes", please explain: _____
_____

## 16. OTHER MATTERS:

a. Are there any other matters affecting or which may affect the value of the property? ☐ NO ☐ YES If "Yes", please explain: _____

## ACKNOWLEDGEMENT OF OWNER

The undersigned Owner represents that the information set forth in the above disclosure statement is accurate and complete to the best of the Owner's knowledge on the date signed below. Owner does not intend for this disclosure statement to be a warranty or a guarantee of any kind. Owner hereby authorizes disclosure of the information contained in this disclosure statement to prospective Buyer/Tenant of the property. Owner understands and agrees that Owner will notify the Buyer/Tenant in writing within five (5) business days after Owner becomes aware that any information set forth in this disclosure statement has become inaccurate or incorrect in any way during the term of the pending purchase by the Buyer/Tenant.

Owner: _____ / Roger Goldblatt                    Date: 7-3-14
           (signature)                          (print name)

Owner: _____ / _____          Date: _____
           (signature)                          (print name)

INSTRUCTIONS TO THE BUYER/TENANT: Buyer/Tenant is encouraged to thoroughly inspect the property personally and/or have it inspected by a third party, and to inquire about any specific areas of concern. NOTE: If Owner answers "NO" to any of the previous questions listed above, Owner does not necessarily mean that the matter in question does not exist on the property. "NO" may mean that the Owner is unaware that the matter in question exists on the property.

## RECEIPT AND ACKNOWLEDGEMENT OF BUYER/TENANT

Owner is using this form to disclose Owner's knowledge of the condition of the property and improvements located on the property as of the date signed by Owner. This disclosure form is not a warranty of any kind. The information contained in the disclosure is limited to information which the Owner has knowledge. It is not intended to be a substitute for any inspection or professional advice the Buyer/Tenant may wish to obtain. An independent professional inspection is encouraged and may be helpful to verify the condition of the property and to determine the cost of repairs, if any. Buyer/Tenant understands these representations are not made by any real estate licensee. Buyer/Tenant hereby acknowledges having received a copy of this disclosure statement.

Buyer/Tenant: _____ / Giolann, Naap        Date: 8-7-14
                  (signature)                          (print name)

Buyer/Tenant: _____ / _____          Date: _____
                  (signature)                          (print name)

Rev. 02/2010

83

**Required Condominium Documents**

BUYER ACKNOWLEDGES RECEIVING A CURRENT COPY OF THE DECLARATION OF CONDOMINIUM, ARTICLES OF INCORPORATION, BYLAWS, AND RULES OF THE ASSOCIATION, AND A COPY OF THE MOST RECENT YEAR-END FINANCIAL INFORMATION, AND FREQUENTLY ASKED QUESTIONS AND ANSWERS DOCUMENT IF SO REQUESTED IN WRITING; ALL OF WHICH RELATE TO

1605 E uclid # A-2

the norma Condo , A CONDOMINIUM,
(Name of condominium in which unit being sold is located)

ON THE DATE INDICATED BELOW.

_____        02/05/13
BUYER                                   Date

_____        _____
BUYER                                   Date

PCD-4   Rev. 10/05   © 2005   Florida Association of Realtors®   All Rights Reserved



**ALLIANCE BOOKKEEPING SOLUTIONS**

### CERTIFICATE OF APPROVAL (PURCHASE)

In reference to:

Unit Address 1605 Euclid Avenue, # A-2, Miami Beach, FL 33139, inside The Norma Condominium Association of Miami Beach, Inc., a condominium according to the Declaration of Condominium thereof, recorded in the Public Records of Miami-Dade County, Florida.

At the request of Roger Goldblatt, the present owner, the undersigned agent of The Norma Condominium Association operating the above condominium, hereby certify as follows:

That Giovanni Nappi, as PURCHASER has been duly approved by the undersigned condominium corporation pursuant to the provisions of the above described Declaration of Condominium.

This approval is conditioned upon obtaining an estoppel letter from the Association identifying all maintenance arrears, interest, late fees, legal costs, and other fees owed to the Association.

Dated this 28 day of February, 2014.

By: _Fermin De Vals_

Corporate Seal

Name and Title: Fermin DeVales, Registered Agent

STATE OF FLORIDA
SS:
COUNTY OF MIAMI-DADE:



KATHALEEN M. SMARSH
MY COMMISSION #EE189233
EXPIRES: MAY 04, 2016
Bonded through 1st State Assurance

The foregoing instrument was acknowledged before me this 28 day of February of 2014 by Fermin De Vales as registered agent, The Norma Condominium Association of Miami Beach, Inc., a Florida Corporation Not-for-Profit, on behalf of the corporation.

My commission expires: May 4, 2016

_Kathaleen M Smarsh_
Notary Public, State of Florida at large

**UPON CLOSING, PURCHASER IS REQUIRED TO PROVIDE THE NORMA CONDOMINIUM WITH A COPY OF THE CLOSING STATEMENT SO THAT WE MAY CHANGE OUR RECORDS TO PROVIDE YOU WITH MAILING AND OTHER IMPORTANT INFORMATION.**

**429 Lenox Ave Suite 4W14, Miami Beach, FL 33139**     Phone: 305-401-4556 Fax: 305-673-**8090**

www.alliancesolutionsusa.com

85

Case: 17-05084    Doc# 73    Filed: 07/01/19    Entered: 07/01/19 14:56:17    Page 86 of
140

CG-CD00079



# Sale Commission Disbursement Form

*(All blanks on this sheet MUST be completed)*

MLS#: A1803335

Property Address (& Unit Number): 1605 EUCLID AVE # A-2 MIAMI BEACH, FL 33139

Building Name: THE NORMA CONDO

Effective Date: 1.19.14     Closing Date: 3.10.14     Closing Time: _____

Seller(s): KLAGI LLC

Buyer(s): ROGER & ELISA GOLDBLATT

Final Sale Price: $ 335,000.00     Total Commission: (Both Sides) $ 20,100.00

Is CRE holding the escrow deposit? ☐ Yes ☒ No
(Total amount held in escrow: $ _____)

The balance of the deposit (overage) to be sent to:
☐ Wire *(Wire instructions attached)*   ☐ Check *(Name as it will appear on the check)*

☐ Attorney Trust: _____ $ _____
                  *(Please Print)*
☐ Title Company: _____ $ _____
                  *(Please Print)*
☐ Other: _____ $ _____

Referral Agent Disbursement:
☐ Check   ☐ Wire *(Wire instructions attached; Fee applies)*   ☐ Other _____
Name: _____
Address: _____
City: _____ State: _____ Country: _____ Zip: _____

Associate(s): CARLLO DIPASQUALE    Signature: _____
Associate(s): _____    Signature: _____
Associate(s): _____    Signature: _____

File is complete: _____
             *Manager's Signature*

---

**COMMISSION DISBURSEMENT:** *Note: if commission is less than 6% Manager Approval is required*

| | |
|---|---|
| Listing Office Commission: $ 10,050.00 | Selling Office Commission: $ 10,050.00 |
| Listing Company: MDLC LLC | Selling Company: CRE |
| Agent Name: LESLIE COOPER | Agent Name: CARLO DIPASQUALE |
| License No.: 526242 | License No.: 3118893 |
| Branch: MIAMI | Branch: SOBE |
| (3 ___ %) of deal   $ _____ | (3 ___ %) of deal   $ _____ |
| Agent Name: _____ | Agent Name: ABC FEE |
| License No.: _____ | License No.: _____ |
| Branch: _____ | Branch: _____ |
| ( ___ %) of deal   $ _____ | ( ___ %) of deal   $ _____ |
| *Referral Agent Name: _____ | *Referral Agent Name: _____ |
| License No.: _____ | License No.: _____ |
| Branch or Company: _____ | Branch or Company: _____ |
| ( ___ %) of deal   $ _____ | ( ___ %) of deal   $ _____ |

* If Referral Agent is an International or U.S. Non-Florida Agent, the International and U.S. Non-Florida Broker Certification must be completed and signed and attached to this Sales Commission Disbursement Form.

Case: 17-05084    Doc# 73    Filed: 07/01/19    Entered: 07/01/19 14:56:17    Page 87 of 140

CGC-CD00080

## Payment Details Report

Company: Cervera Real Estate Inc
Requester: Garcia, Monica
Run Date: 02/28/2014 5:28:54 PM EST

**Bank of America** <br>
**Merrill Lynch**

### Domestic High Value (Wire)

Payment Category: Urgent/Wire

**Status:** Confirmed by Bank
**Transaction Number:** 14228E4130GT0267

**Debit Account Information**

**Debit Bank:** ___0277
**Debit Account:** ___766
**Debit Account Name:** SALES ESCROW ACCOUNT - 9766
**Debit Currency:** USD

**Beneficiary Details**

**Beneficiary Name:** SUNTRUST TITLE
**Beneficiary Address:** 100 N BISCAYNE BLVD
**Beneficiary City:** MIAMI
**Beneficiary Postal Code:** 33132
**Beneficiary Country:** US-United States of America

**Beneficiary Account:** ___5265
**Beneficiary Bank ID:** ___5690
REGIONS BANK
1900 5TH AVE NORTH
BIRMINGHAM
US-United States of America

**Beneficiary Email:**
**Beneficiary Mobile Number:**

**Payment Details**

**Currency:** USD
**Credit Amount:** 50,000.00

**Value Date:** 02/28/2014

**Optional Information**

Sender's Reference Number: LW8183

**Beneficiary Information:**

**Additional Routing**

Intermediary Bank ID:

**Receiver Information:**

**Control Information**

**Input:** mgarcia
**Approved:** lgluffra
**Initial Confirmation:** 2014022800380215
**Confirmation #:** 20140228B6B7HU2R018385

**Input Time:** 02/28/2014 2:41:51 PM EST
**Time:** 02/28/2014 4:59:06 PM EST

**salesadmin**

| | |
|---|---|
| **From:** | Monica Garcia |
| **Sent:** | Tuesday, February 18, 2014 9:12 AM |
| **To:** | salesadmin |
| **Cc:** | Ana Lopez De Quintana |
| **Subject:** | FW: CashPro Freedom Incoming Wire Confirmation |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |
| | |
| **Categories:** | Green Category, Red Category |

*Warm Regards,*

**Mónica García**
*Chief Financial Officer*
*Cervera Real Estate*

██ .3434 Office

monicagarcia@cervera.com
1492 S. Miami Avenue ; Miami, FL 33130 · cervera.com



**From:** CashPro Freedom [mailto:cashpro_freedom@notifications.bami.com]
**Sent:** Tuesday, February 18, 2014 8:35 AM
**To:** Accounting
**Subject:** CashPro Freedom Incoming Wire Confirmation

## CashPro Freedom
### Notification

### Incoming Wire Confirmation - 2/18/14 7:34 AM CT

**Summary:**
The following transaction was credited to your account at 7:34 AM CT on 2/18/14.

| Account # | Originator | | | Amount |
|---|---|---|---|---|
| XXXXXXXX9918 | ASTRA INVESTHOLDING CORPORATION | | | $50,000.00 USD |

1

Case: 17-05084    Doc# 73    Filed: 07/01/19    Entered: 07/01/19 14:56:17    Page 89 of 140

**Details:**

| Sequence # | Reference # | Originating Bank |
|---|---|---|
| 2014021800293053 | FD004611 | BARCGB22 |

**Beneficiary**
CERVERA REAL ESTATE INC
ESCROW ACCOUNT
1492 S MIAMI AVE
MIAMI FL 33130-4322

**Beneficiary Bank**
Bank of America
Charlotte,NC

**Originator to Beneficiary Information**
/RFB/SWF OF 14/02/18//FINANCING FOR
THE RENOVATION OF THEREAL ESTATE PR
OPERTY IN 1605 EUCLID AV. - SOUTH B
EACH - MIAMI (FLORIDA)

**Bank to Bank Information**
/BNF/BOFAUS3N
/INS/FW028002574
/IMAD/20140218K3QF393C004611/18-FEB
//-2014 08:34:50.10
/CRRTV/075

Please visit CashPro Online or call 1-800-729-9473 option 2 for further information. Thank
you for using CashPro Freedom.

DISCLAIMER: This message w/ attachments (message) is intended solely for the use of the intended recipient(s) and
may contain information that is privileged, confidential or proprietary. If you are not an intended recipient, please notify the
sender, and then please delete and destroy all copies and attachments, and be advised that any review or dissemination
of, or the taking of any action in reliance on, the information contained in or attached to this message is prohibited. Unless
specifically indicated, this message is not an offer to sell or a solicitation of any investment products or other financial
product or service, an official confirmation of any transaction, or an official statement of Sender. Sender shall not be liable
for the improper or incomplete transmission of the information contained in this communication nor for any delay in its
receipt or damage to your system. This message cannot be guaranteed to be secure or free of errors or viruses.
Please do not reply to this notification as it is not monitored. As a reminder, whenever you do correspond with us, please
do not include sensitive information, such as account number, PIN, password, or Online ID in an email or facsimile. The
security and confidentiality of your information is important to us. If you have any questions, please call the phone number
on your account statement.
References to "Sender" are references to any subsidiary of Bank of America Corporation. Securities and insurance
Products: * Are Not FDIC Insured * Are Not Bank Guaranteed * May Lose Value * Are Not a Bank Deposit * Are Not a
Condition to Any Banking Service or Activity * Are Not Insured by Any Federal Government Agency. Attachments that are
part of this electronic communication may have additional important disclosures and disclaimers, which you should read.
This message is subject to terms available at the following link: http://www.bankofamerica.com/emaildisclaimer. By
continuing to receive these alerts from Sender, you consent to the foregoing.
CashPro Online and CashPro Freedom are registered trademarks of Bank of America Corporation.

# Payment Details Report

**Company:** Cervera Real Estate Inc
**Requester:** Garcia, Monica
**Run Date:** 02/12/2014 10:09:27 AM EST

Bank of America
Merrill Lynch

## Domestic High Value (Wire)

Payment Category: Urgent/Wire

**Status:** Confirmed by Bank
**Transaction Number:** 1421H5726LM0C80

### Debit Account Information

**Debit Bank:** 0277
**Debit Account:** 766
**Debit Account Name:** SALES ESCROW ACCOUNT - 9766
**Debit Currency:** USD

### Beneficiary Details

**Beneficiary Name:** SUNTRUST TITLE
**Beneficiary Address:** 100 N BISCAYNE BLVD
**Beneficiary City:** MIAMI
**Beneficiary Postal Code:** 33132
**Beneficiary Country:** US-United States of America

**Beneficiary Account:** 5265
**Beneficiary Bank ID:** 5690
REGIONS BANK
1900 5TH AVE NORTH
BIRMINGHAM
US-United States of America

**Beneficiary Email:**
**Beneficiary Mobile Number:**

### Payment Details

**Currency:** USD
**Credit Amount:** 350,000.00

**Value Date:** 02/12/2014

### Optional Information

**Sender's Reference Number:** LW8183

**Beneficiary Information:**

### Additional Routing

**Intermediary Bank ID:**

**Receiver Information:**

### Control Information

**Input:** mgarcia
**Approved:** jglutira
**Initial Confirmation:** 20140212001 16805
**Confirmation #:** 20143212B6B7HJ2R002328

**Input Time:** 02/11/2014 5:57:52 PM EST
**Time:** 02/12/2014 8:05:22 AM EST

90

CGC-000084



**SunTrust**
**TITLE**

| | |
|---|---|
| **Broward Office** | **Miami-Dade Office** |
| *7771 West Oakland Park Blvd.* | *100 N. Biscayne Blvd.* |
| *Ste. 152* | *Suite 2106* |
| *Sunrise, FL 33351* | *Miami, FL 33132* |
| *Phone: (954) 354-9100* | *Phone: 305.672.1222* |
| *Fax: (954) 343-5835* | *Fax:   954.343.5835* |

February 12, 2014

RE: Giovanni Nappi and Roger and Elisa Goldblatt
Property Address: 1605 Euclid Ave, #A-2, Miami Beach, FL 33139

To Whom It May Concern;

We are currently in receipt of escrow in the amount of $33,900.00 regarding the above stated property.  We look forward to doing business with you.  Please feel free to contact us if we may be of further assistance.

Cordially,

*Jose M. Pol*
**Sun Trust Title, LLC**
7771 West Oakland Park Blvd.
Suite 152
Sunrise, FL. 33361
Office:  954.354.9100
Fax:     954.343.5835
jpol@gosuntrust.com

The information contained in this transmission is confidential. It is intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please immediately notify and return the original to the sender.

91



**SunTrust**
**TITLE**

| **Broward Office** | **Miami-Dade Office** |
|---|---|
| *7771 West Oakland Park Blvd.* | *100 N. Biscayne Blvd.* |
| *Ste. 152* | *Suite 2106* |
| *Sunrise, FL. 33351* | *Miami, FL 33132* |
| *Phone: (954) 354-9100* | *Phone: 305.672.1222* |
| *Fax: (954) 343-5835* | *Fax:    954.343.5835* |

January 28, 2014

RE: Giovanni Nappi and Roger and Elisa Goldblatt
Property Address: 1605 Euclid Ave, #A-2, Miami Beach, FL 33139

To Whom It May Concern;

We are currently in receipt of escrow in the amount of $10,000.00 regarding the above stated property. We look forward to doing business with you. Please feel free to contact us if we may be of further assistance.

Cordially,

*Jose M. Pal*
**Sun Trust Title, LLC**
7771 West Oakland Park Blvd.
Suite 152
Sunrise, FL. 33351
Office: 954.354.9100
Fax     954.343.5835
jpol@gosuntrust.com

The information contained in this transmission is confidential. It is intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please immediately notify and return the original to the sender.

92

CG-CD00086



PAY to the order of  SUN TRUST Title

— ten Thousand —  Dollars

Date 1/24/13

$ 10,000.00

For  DEWIT  UNIT A-2    Cale Dyson

⑆063107513⑈      1048

93

**Payment Details Report**

Company: Cervera Real Estate Inc
Requester: Garcia, Monica
Run Date: 02/12/2014 10:09:27 AM EST

Domestic High Value (Wire)

Payment Category: Urgent/Wire

Status: Confirmed by Bank
Transaction Number: 14211H5726LM0080

**Bank of America Merrill Lynch**

*Transfer of escrow (not overage)*

**Debit Account Information**

Debit Bank: 0277
Debit Account: 9768
Debit Account Name: SALES ESCROW ACCOUNT - 9768
Debit Currency: USD

**Beneficiary Details**

Beneficiary Name: SUNTRUST TITLE
Beneficiary Address: 100 N BISCAYNE BLVD
Beneficiary City: MIAMI
Beneficiary Postal Code: 33132
Beneficiary Country: US-United States of America

Beneficiary Account: 6265
Beneficiary Bank ID: 1890
REGIONS BANK
1900 5TH AVE NORTH
BIRMINGHAM
US-United States of America
Beneficiary Email:
Beneficiary Mobile Number:

**Payment Details**

Currency: USD
Credit Amount: 350,000.00  *MG.*

Value Date: 02/12/2014

**Optional Information**

Sender's Reference Number: LW8183

Beneficiary Information:

**Additional Routing**

Intermediary Bank ID:

Receiver Information:

**Control Information**

Input: mgarcia
Approved: lgiuffra
Initial Confirmation: 2014021200119806
Confirmation #: 20140212B6B7HU2R002328

Input Time: 02/11/2014 5:57:52 PM EST
Time: 02/12/2014 8:05:22 AM EST

94

CG-CD00088

| | |
|---|---|
| **From:** | Monica Garcia |
| **Sent:** | Tuesday, January 28, 2014 2:40 PM |
| **To:** | salesadmin |
| **Cc:** | Ana Lopez De Quintana |
| **Subject:** | FW: CashPro Freedom Incoming Wire Confirmation |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

*Warm Regards,*

**Mónica García**
*Chief Financial Officer*
*Cervera Real Estate*

████.3434 Office

monicagarcia@cervera.com
1492 S. Miami Avenue | Miami, FL 33130 | cervera.com



**From: CashPro Freedom [mailto:cashpro_freedom@notifications.baml.com]**
**Sent: Tuesday, January 28, 2014 11:39 AM**
**To: Accounting**
**Subject: CashPro Freedom Incoming Wire Confirmation**

## CashPro Freedom
### Notification

---

### Incoming Wire Confirmation - 1/28/14 10:38 AM CT

**Summary:**

The following transaction was credited to your account at 10:38 AM CT on 1/28/14.

| Account # | ████████ | Amount |
|---|---|---|
| XXXXXXXX9918 | ASTRA INVESTHOLDING CORPORATION | $350,000.00 USD |

1

95

**Details:**

| Sequence # | Reference # | Originating Bank |
|---|---|---|
| 2014012800202561 | FD003205 | BARCGB22 |

| Beneficiary | Beneficiary Bank |
|---|---|
| CERVERA REAL ESTATE INC<br>ESCROW ACCOUNT<br>1492 S MIAMI AVE<br>MIAMI FL 33130-4322 | Bank of America<br>Charlotte,NC |

| Originator to Beneficiary Information | Bank to Bank Information |
|---|---|
| /RFB/SWF OF 14/01/28//FINANCING FOR<br>THE PURCHASE OF A REAL ESTATE PROPE<br>RTY IN MIAMI (FLORIDA) 1605 EUCLID<br>AV. BOFAUS3N | /INS/█████ )2574<br>/IMAD/20140128K3Q█████ )5/28-JAN<br>//-2014 11:38:43.92<br>/CRRTV/075 |

Please visit CashPro Online or call 1-800-729-9473 option 2 for further information. Thank you for using CashPro Freedom.

DISCLAIMER: This message w/ attachments (message) is intended solely for the use of the intended recipient(s) and may contain information that is privileged, confidential or proprietary. If you are not an intended recipient, please notify the sender, and then please delete and destroy all copies and attachments, and be advised that any review or dissemination of, or the taking of any action in reliance on, the information contained in or attached to this message is prohibited. Unless specifically indicated, this message is not an offer to sell or a solicitation of any investment products or other financial product or service, an official confirmation of any transaction, or an official statement of Sender. Sender shall not be liable for the improper or incomplete transmission of the information contained in this communication nor for any delay in its receipt or damage to your system. This message cannot be guaranteed to be secure or free of errors or viruses.
Please do not reply to this notification as it is not monitored. As a reminder, whenever you do correspond with us, please do not include sensitive information, such as account number, PIN, password, or Online ID in an email or facsimile. The security and confidentiality of your information is important to us. If you have any questions, please call the phone number on your account statement.
References to "Sender" are references to any subsidiary of Bank of America Corporation. Securities and Insurance Products: * Are Not FDIC Insured * Are Not Bank Guaranteed * May Lose Value * Are Not a Bank Deposit * Are Not a Condition to Any Banking Service or Activity * Are Not Insured by Any Federal Government Agency. Attachments that are part of this electronic communication may have additional important disclosures and disclaimers, which you should read. This message is subject to terms available at the following link: http://www.bankofamerica.com/emaildisclaimer. By continuing to receive these alerts from Sender, you consent to the foregoing.
CashPro Online and CashPro Freedom are registered trademarks of Bank of America Corporation.

Case: 17-05084   Doc# 73   Filed: 07/01/19   Entered: 07/01/19 14:56:17   Page 97 of
140



**SunTrust TITLE**

| Broward Office | Miami-Dade Office |
|---|---|
| 7771 West Oakland Park Blvd. | 100 N. Biscayne Blvd. |
| Ste. 152 | Suite 2106 |
| Sunrise, FL. 33351 | Miami, FL 33132 |
| Phone: (954) 354-9100 | Phone: 305.672.1222 |
| Fax: (954) 343-5835 | Fax: 954.343.5835 |

January 28, 2014

RE: Giovanni Nappi and Roger and Elisa Goldblatt
Property Address: 1605 Euclid Ave, #A-2, Miami Beach, FL 33139

To Whom It May Concern;

We are currently in receipt of escrow in the amount of $10,000.00 regarding the above stated property. We look forward to doing business with you. Please feel free to contact us if we may be of further assistance.

Cordially,

*Jace M. Pal*

Sun Trust Title, LLC
7771 West Oakland Park Blvd.
Suite 152
Sunrise, FL. 33351
Office: 954.354.9100
Fax: 954.343.5835
jpol@ssssuntrust.com

The information contained in this transmission is confidential. It is intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please immediately notify and return the original to the sender.



| A. | U. S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT | B. | TYPE OF LOAN |
|---|---|---|---|

SETTLEMENT STATEMENT

Sun Trust Title, LLC
7771 West Oakland Park Blvd. Suite 152
Sunrise, Florida 33351
(954) 384-5800 and (954) 385-5800

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Buyer: | Kiga, LLC |
| | 1605 Euclid Ave #A-2 |
| | Miami Beach, Florida 33139 |

| E. Seller: | Roger Goldblatt and Elisa Goldblatt |
| | 3127 Turtles Rd NW |
| | Washington, DC 20016 |

| F. Lender: | 1605 Euclid Ave #A-3 |

| G. Property: | Miami Beach, Miami-dade County, Florida 33139 |
| | Miami-dade County, Florida |

| H. Settlement Agent: | Sun Trust Title, LLC |

Place of Settlement: 7771 West Oakland Park Blvd. Suite 152, Sunrise, Florida, 33351

| I. Settlement Date: | March 3, 2014 |

| J. | Summary of Buyer's Transaction | | K. | Summary of Seller's Transaction | |
|---|---|---|---|---|---|
| 100. | Gross Amount Due From Buyer: | | 400. | Gross Amount Due To Seller: | |
| 101. | Contract Sales Price | 335,000.00 | 401. | Contract Sales Price | 335,000.00 |
| 102. | Personal Property | | 402. | Personal Property | |
| 103. | Settlement Charges to Buyer (line 1400) | 2,639.00 | 403. | | |
| | Adjustments for items paid by Seller in advance | | | Adjustments for items paid by Seller in advance | |
| 106. | City / Town Taxes | | 406. | City / Town Taxes | |
| 107. | County / Parish Taxes | | 407. | County / Parish Taxes | |
| 108. | Assessments Mar 3, 2014 thru Mar 31, 2014 | 552.66 | 408. | Assessments Mar 3, 2014 thru Mar 31, 2014 | 552.66 |
| 120. | Gross Amount Due From Buyer | 341,191.66 | 420. | Gross Amount Due to Seller | 335,552.66 |
| 200. | Amount Paid by or in Behalf of Buyer: | | 500. | Reductions In Amount Due to Seller: | |
| 201. | Deposit / Earnest Money | 33,000.00 | 501. | Excess Deposit (see instructions) | |
| 202. | Principal Amount of New Loan | | 502. | Settlement Charges to Seller (line 1400) | 31,246.01 |
| 203. | Existing Loan(s) | | 503. | Existing Loan(s) | |
| 204. | | | 504. | Payoff of First Mortgage to Florida Bank | 166,747.41 |
| 205. | | | 505. | Payoff of Second Mortgage | |
| 206. | | | 506. | Purchase Money Mortgage | |
| | Adjustments for items Unpaid by Seller: | | | Adjustments for items Unpaid by Seller: | |
| 210. | City / Town Taxes | | 510. | City / Town Taxes | |
| 211. | County / Parish Taxes Jan 1, 2014 thru Mar 3, 2014 | 539.21 | 511. | County / Parish Taxes Jan 1, 2014 thru Mar 3, 2014 | 539.21 |
| 212. | Assessments | | 512. | Assessments | |
| 220. | Total Paid by / for Buyer | 34,739.21 | 520. | Total Reductions In Amount Due Seller | 197,993.62 |
| 300. | Cash at Settlement from / to Buyer | | 600. | Cash at Settlement to / from Seller | |
| 301. | Gross Amount due from Buyer (line 120) | 341,191.66 | 601. | Gross Amount due to Seller (line 420) | 335,552.66 |
| 302. | Less Amount Paid by/for Buyer (line 220) | 34,739.21 | 602. | Less Reductions Amount due Seller (line 520) | 197,993.62 |
| 303. | Cash From Buyer: | $306,452.45 | 603. | Cash To Seller: | $138,449.04 |



HUD-1 May 2007

OMB No. 2502-0265

Case: 17-05084   Doc# 73   Filed: 07/01/19   Entered: 07/01/19 14:56:17   Page 100 of 140

CC-CD00093

| L. | Settlement Charges | | Paid from Buyer's Funds at Settlement | Paid from Seller's Funds at Settlement |
|---|---|---|---|---|
| 700. | Total Sales/Broker's Commission | | | |
| | Based on Price $332,300.00 @ 6.00% = $30,198.00 | | | |
| | Division of Commission as follows: | | | |
| 701. | $10,050.00 to One Sotheby's Int. Realty | | | |
| 702. | $10,050.00 to Century Real Estate | | | 20,100.00 |
| 703. | Commission Paid at Settlement | | | |
| 704. | Broker Fee to One Sotheby's Int. Realty | | | 595.00 |
| 800. | Items Payable in Connection with Loan | | | |
| 801. | Loan Origination Fee | | | |
| 802. | Loan Discount | | | |
| 803. | Appraisal Fee | | | |
| 804. | Credit Report | | | |
| 805. | Lender's Inspection Fee | | | |
| 806. | Mortgage Insurance Application Fee | | | |
| 807. | Assumption Fee | | | |
| 900. | Items Required by Lender to be Paid in Advance | | | |
| 901. | Daily interest charge from Mar 3, 2014 | | | |
| 902. | Mortgage Insurance Premium | | | |
| 903. | Hazard Insurance Premium | | | |
| 904. | Flood Insurance Premium | | | |
| 1000. | Reserves Deposited with Lender | | | |
| 1001. | Hazard Insurance | | | |
| 1002. | Mortgage Insurance | | | |
| 1003. | City Property Taxes | | | |
| 1004. | County Property Taxes | | | |
| 1005. | Annual Assessments | | | |
| 1100. | Title Charges | | | |
| 1101. | Settlement or Closing Fee to Sun Trust Title, LLC | | 1,050.00 | |
| 1102. | Abstract or Title Search to WFG National Title Insurance | | 150.00 | |
| 1103. | Lien Search to Infinite Lien Search, Inc | | 185.00 | |
| 1104. | Title Insurance Binder | | | |
| 1105. | Document Preparation | | | |
| 1106. | Notary Fees | | | |
| 1107. | Attorney Fees | | | |
| | (includes above item numbers) | | | |
| 1108. | Title Insurance to Sun Trust Title, LLC | | 1,730.00 | |
| | (includes above item numbers) | | | |
| 1109. | Lender's Coverage 0.00 | | | |
| 1110. | Owner's Coverage 335,000.00 | | | |
| 1111. | Wire Fee to Sun Trust Title, LLC | | 25.00 | |
| 1112. | Endorsement 4.1 | | 25.00 | |
| 1113. | Endorsement FL Form 9 | | 175.00 | |
| 1114. | | | | |
| 1200. | Government Recording and Transfer Charges | | | |
| 1201. | Recording Fees Deed 27.00 Mortgage 0.00 Release 27.00 | | 54.00 | |
| 1202. | City/County Tax/Stamps Deed 0.00 Mortgage 0.00 | | | |
| 1203. | State Tax/Stamps Deed 2,010.00 Mortgage 0.00 | | | 2,010.00 |
| 1204. | Intangible Tax to Clerk of the Circuit Court | | | |
| 1205. | | | | |
| 1300. | Additional Settlement Charges | | | |
| 1301. | Survey | | | |
| 1302. | Pest Inspection | | | |
| 1303. | Reimbursement - Condo application to Cielo Classic site | | 200.00 | |
| 1304. | Reimbursement - Estoppel Letter to Sun Trust Title, LLC | | | 150.00 |
| 1305. | Special Assessment to The Sirena Condominium Association of Miami Beach, Inc | | | 1,000.00 |
| 1306. | Document Preparation to Alizaiott Corp et al | | 1,000.00 | |
| 1307. | Attorney Fee to Paul Robert Kelterman, Esq | | | 1,000.00 |
| 1400. | Total Settlement Charges (Enter on line 103, Section J and line 502, Section K) | | $5,439.00 | $31,460.00 |



HUD-1 May 2007
March 3, 2014 9:20 AM

OMB No. 2502-0265
RESPA handbook 4305.2

Case: 17-05084   Doc# 73   Filed: 07/01/19   Entered: 07/01/19 14:56:17   Page 101 of 140

CG-CD00094

A.     U. S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
**SETTLEMENT STATEMENT**

**Sun Trust Title, LLC**
7771 West Oakland Park Blvd. Suite 152
Sunrise, Florida 33351
(954) 390-0100 fax (954) 349-4038

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account by me in this transaction. I further certify that I have received a copy of HUD-1 Settlement Statement.

Buyer: _____        Seller: _____
          [signature]                                   Roger Gubbins

                                                        Seller: _____
                                                        Rhea Gubbins

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

Settlement Agent: _____                             Date: March 3, 2014

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine or imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

HUD-1 May 2007
March 3, 2014 9:26 AM

OMB No. 2502-0265
RESPA Handbook 4305.2

Case: 17-05084     Doc# 73     Filed: 07/01/19     Entered: 07/01/19 14:56:17     Page 102 of 140

CC-CD00095

ADDENDUM TO HUD-1 SETTLEMENT STATEMENT

Closing Date: February _____, 2014

Borrower: Kings LLC

Lender: N/A

Loan No.: 13-422

Premises: 1605 Euclid Ave, #A-2, Miami Beach, FL 33139

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

| Seller Borrower | _____ 2-22-14 | Seller | _____ Date |
| Date | | | |
| Seller Borrower | _____ 2/22/14 | Seller | _____ Date |
| Date | | | |
| Borrower | _____ 3/3/14 | Seller | _____ Date |
| Date | | | |

To the best of my knowledge, the HUD-1 Settlement Statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

_____ 3/3/14
Settlement Agent        Date

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

_____ 2/22/14

ELIZABETH COTO
Notary Public - State of Florida
My Comm. Expires Jan 13, 2017
Commission # EE 864854
Bonded Through National Notary Assn.

102

CC-CD00096

# **EXHIBIT D**

Case: 17-05084    Doc# 73    Filed: 07/01/19    Entered: 07/01/19 14:56:17    Page 104 of
140
CC-CD00097

# "AS IS" Residential Contract For Sale And Purchase

THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR

**FloridaRealtors®**

1*  PARTIES: _KLACi LLC_ _____ ("Seller"),
2*  and _Cassie LI_ _____ ("Buyer"),
3   agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal Property
4   (collectively "Property") pursuant to the terms and conditions of this AS IS Residential Contract For Sale And Purchase and
5   any riders and addenda ("Contract"):
6   1.  **PROPERTY DESCRIPTION:**
7*      (a) Street address, city, zip: _1605 Euclid M A-2_ _____ _-2050_
8*      (b) Property is located in: _Miami Dade_ County, Florida. Real Property Tax ID No.: _____
9*      (c) Real Property: The legal description is _the North Condo Unit A-2 Unit 1605 1607_
10*         _Int in common elements off AC_ _____
11         together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and attached
12         wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded in Paragraph 1(e) or by other terms
13         of this Contract.
14         (d) Personal Property: Unless excluded in Paragraph 1(e) or by other terms of this Contract, the following items which
15         are owned by Seller and existing on the Property as of the date of the initial offer are included in the purchase:
16         range(s)/oven(s), refrigerator(s), dishwasher(s), disposal, ceiling fan(s), intercom, light fixture(s), drapery rods and
17         draperies, blinds, window treatments, smoke detector(s), garage door opener(s), security gate and other access
18         devices, and storm shutters/panels ("Personal Property").
19*        Other Personal Property items included in this purchase are: _____
20*        _____
21         _____
22         Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer.
23*        (e) The following items are excluded from the purchase: _____
24         _____

25         **PURCHASE PRICE AND CLOSING**

26  2.  **PURCHASE PRICE** (U.S. currency): _____ $ _400,000.00_
27*     (a) Initial deposit to be held in escrow in the amount of (checks subject to COLLECTION) $ _160,000.00_
28         The initial deposit made payable to and delivered to "Escrow Agent" named below
29*        (CHECK ONE): (i) ☐ accompanies offer or (ii) ☐ is to be made within _____ (if left blank,
30         then 3) days after Effective Date. IF NEITHER BOX IS CHECKED, THEN OPTION (i)
31         SHALL BE DEEMED SELECTED.
32*        Escrow Agent Information: Name: _____
33*        Address: _____
34*        Phone: _____ E-mail: _____ Fax: _____
35*     (b) Additional deposit to be delivered to Escrow Agent within _____ (if left blank, then 10)
36*        days after Effective Date. _____ $ _____
37         (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit")
38*     (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8 $ _____
39*     (d) Other: _____ $ _____
40*     (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire
41         transfer or other COLLECTED funds _____ $ _240,000.00_
42         NOTE: For the definition of "COLLECTION" or "COLLECTED" see STANDARD S.
43  3.  **TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE DATE:**
44*     (a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before
45*        _____ this offer shall be deemed withdrawn and the Deposit, if any, shall be returned to
46         Buyer. Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the day the
47         counter-offer is delivered.
48*     (b) The effective date of this Contract shall be the date when the last one of the Buyer and Seller has signed or initialed
49         and delivered this offer or final counter-offer ("Effective Date").
50  4.  **CLOSING DATE:** Unless modified by other provisions of this Contract, the closing of this transaction shall occur and
51         the closing documents required to be furnished by each party pursuant to this Contract shall be delivered ("Closing") on
52*        or before _30 days after execution_ ("Closing Date"), at the time established by the Closing Agent.
53  5.  **EXTENSION OF CLOSING DATE:**
54*     (a) If Closing funds from Buyer's lender(s) are not available at time of Closing due to Truth In Lending Act (TILA) notice
55         requirements, Closing shall be extended for such period necessary to satisfy TILA notice requirements, not to
56         exceed 7 days.

Buyer's Initials _____  _____        Page 1 of 11        Seller's Initials _____  _____

FloridaRealtors/FloridaBar-ASIS-5  Rev.6/13 © 2013 Florida Realtors and The Florida Bar. All rights reserved.

104

(b) If extreme weather or other condition or event constituting "Force Majeure" (see STANDARD G) causes: (i) disruption of utilities or other services essential for Closing; or (ii) Hazard, Wind, Flood or Homeowners' insurance, to become unavailable prior to Closing, Closing shall be extended a reasonable time up to 3 days after restoration of utilities and other services essential to Closing and availability of applicable Hazard, Wind, Flood or Homeowners' insurance. If restoration of such utilities or services and availability of insurance has not occurred within _____ (if left blank, then 14) days after Closing Date, then either party may terminate this Contract by delivering written notice to the other party, and Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under the Contract.

**6. OCCUPANCY AND POSSESSION:**

(a) Unless the box in Paragraph 6(b) is checked, Seller shall, at Closing, deliver occupancy and possession of the Property to Buyer free of tenants, occupants and future tenancies. Also, at Closing, Seller shall have removed all personal items and trash from the Property and shall deliver all keys, garage door openers, access devices and codes, as applicable, to Buyer. If occupancy is to be delivered before Closing, Buyer assumes all risks of loss to the Property from date of occupancy, shall be responsible and liable for maintenance from that date, and shall be deemed to have accepted the Property in its existing condition as of time of taking occupancy.

(b) ☐ CHECK IF PROPERTY IS SUBJECT TO LEASE(S) OR OCCUPANCY AFTER CLOSING. If Property is subject to a lease(s) after Closing or is intended to be rented or occupied by third parties beyond Closing, the facts and terms thereof shall be disclosed in writing by Seller to Buyer and copies of the written lease(s) shall be delivered to Buyer, all within 5 days after Effective Date. If Buyer determines, in Buyer's sole discretion, that the lease(s) or terms of occupancy are not acceptable to Buyer, Buyer may terminate this Contract by delivery of written notice of such election to Seller within 3 days after receipt of the above items from Seller, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Estoppel Letter(s) and Seller's affidavit shall be provided pursuant to STANDARD D. If Property is intended to be occupied by Seller after Closing, see Rider U. POST-CLOSING OCCUPANCY BY SELLER.

**7. ASSIGNABILITY:** (CHECK ONE): Buyer ☐ may assign and thereby be released from any further liability under this Contract; ☒ may assign but not be released from liability under this Contract; or ☐ may not assign this Contract.

**FINANCING**

**8. FINANCING:**

☒ (a) Buyer will pay cash or may obtain a loan for the purchase of the Property. There is no financing contingency to Buyer's obligation to close .

☐ (b) This Contract is contingent upon Buyer obtaining a written loan commitment for a ☐ conventional ☐ FHA ☐ VA or ☐ other _____ (describe) loan on the following terms within _____ (if left blank, then 30) days after Effective Date ("Loan Commitment Date") for (CHECK ONE): ☐ fixed, ☐ adjustable, ☐ fixed or adjustable rate loan in the Loan Amount (See Paragraph 2(c)), at an initial interest rate not to exceed _____% (if left blank, then prevailing rate based upon Buyer's creditworthiness), and for a term of _____ (if left blank, then 30) years ("Financing").

Buyer shall make mortgage loan application for the Financing within _____ (if left blank, then 5) days after Effective Date and use good faith and diligent effort to obtain a written loan commitment for the Financing ("Loan Commitment") and thereafter to close this Contract. Buyer shall keep Seller and Broker fully informed about the status of mortgage loan application and Loan Commitment and authorizes Buyer's mortgage broker and Buyer's lender to disclose such status and progress to Seller and Broker.

Upon Buyer's receipt of Loan Commitment, Buyer shall provide written notice of same to Seller. If Buyer does not receive Loan Commitment by Loan Commitment Date, then thereafter either party may cancel this Contract up to the earlier of:

    (i.) Buyer's delivery of written notice to Seller that Buyer has either received Loan Commitment or elected to waive the financing contingency of this Contract; or

    (ii.) 7 days prior to Closing Date.

If either party timely cancels this Contract pursuant to this Paragraph 8 and Buyer is not in default under the terms of this Contract, Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. If neither party has timely canceled this Contract pursuant to this Paragraph 8, then the financing contingency shall be deemed waived by Buyer.

If Buyer delivers written notice of receipt of Loan Commitment to Seller and this Contract does not thereafter close, the Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's default; (2) Property related conditions of the Loan Commitment have not been met (except when such conditions are waived by other provisions of this Contract; (3) appraisal of the Property obtained by Buyer's lender is insufficient to meet terms of the Loan Commitment; or (4) the loan is not funded due to financial failure of Buyer's lender, in which event(s) the Deposit shall be returned to Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.

Case: 17-05084    Doc# 73    Filed: 07/01/19    Entered: 07/01/19 14:56:17    Page 106 of 140

☐ (c) Assumption of existing mortgage (see rider for terms).
☐ (d) Purchase money note and mortgage to Seller (see riders; addenda; or special clauses for terms).

## CLOSING COSTS, FEES AND CHARGES

**9. CLOSING COSTS; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:**

(a) COSTS TO BE PAID BY SELLER:
- Documentary stamp taxes and surtax on deed, if any
- Owner's Policy and Charges (if Paragraph 9(c)(i) is checked)
- Title search charges (if Paragraph 9(c)(iii) is checked)
- Other:

- HOA/Condominium Association estoppel fees
- Recording and other fees needed to cure title
- Seller's attorneys' fees

If, prior to Closing, Seller is unable to meet the AS IS Maintenance Requirement as required by Paragraph 11 a sum equal to 125% of estimated costs to meet the AS IS Maintenance Requirement shall be escrowed at Closing. If actual costs to meet the AS IS Maintenance Requirement exceed escrowed amount, Seller shall pay such actual costs. Any unused portion of escrowed amount(s) shall be returned to Seller.

(b) COSTS TO BE PAID BY BUYER:
- Taxes and recording fees on notes and mortgages
- Recording fees for deed and financing statements
- Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked)
- Survey (and elevation certification, if required)
- Lender's title policy and endorsements
- HOA/Condominium Association application/transfer fees

- Loan expenses
- Appraisal fees
- Buyer's inspections
- Buyer's attorneys' fees
- All property related insurance
- Owner's Policy Premium (if Paragraph 9 (c) (ii) is checked.)

- Other:

(c) TITLE EVIDENCE AND INSURANCE: At least _____ (if left blank, then 5) days prior to Closing Date, a title insurance commitment issued by a Florida licensed title insurer, with legible copies of instruments listed as exceptions attached thereto ("Title Commitment") and, after Closing, an owner's policy of title insurance (see STANDARD A for terms) shall be obtained and delivered to Buyer. If Seller has an owner's policy of title insurance covering the Real Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date. The owner's title policy premium, title search, municipal lien search and closing services (collectively, "Owner's Policy and Charges") shall be paid, as set forth below
(CHECK ONE):

☐ (i) Seller shall designate Closing Agent and pay for Owner's Policy and Charges (but not including charges for closing services related to Buyer's lender's policy and endorsements and loan closing, which amounts shall be paid by Buyer to Closing Agent or such other provider(s) as Buyer may select); or

☐ (ii) Buyer shall designate Closing Agent and pay for Owner's Policy and Charges and charges for closing services related to Buyer's lender's policy, endorsements, and loan closing; or

☐ (iii) (MIAMI-DADE/BROWARD REGIONAL PROVISION): Seller shall furnish a copy of a prior owner's policy of title insurance or other evidence of title and pay fees for: (A) a continuation or update of such title evidence, which is acceptable to Buyer's title insurance underwriter for reissue of coverage; (B) tax search; and (C) municipal lien search. Buyer shall obtain and pay for post-Closing continuation and premium for Buyer's owner's policy, and if applicable, Buyer's lender's policy. Seller shall not be obligated to pay more than $ _____ (if left blank, then $200.00) for abstract continuation or title search ordered or performed by Closing Agent.

(d) SURVEY: At least 5 days prior to Closing, Buyer may, at Buyer's expense, have the Real Property surveyed and certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date.

(e) HOME WARRANTY: At Closing, ☐ Buyer ☐ Seller ☐ N/A shall pay for a home warranty plan issued by _____ at a cost not to exceed $ _____. A home warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.

(f) SPECIAL ASSESSMENTS: At Closing, Seller shall pay: (i) the full amount of liens imposed by a public body ("public body" does not include a Condominium or Homeowner's Association) that are certified, confirmed and ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being imposed on the Property before Closing. Buyer shall pay all other assessments. If special assessments may be paid in installments (CHECK ONE):

☐ (a) Seller shall pay installments due prior to Closing and Buyer shall pay installments due after Closing. Installments prepaid or due for the year of Closing shall be prorated.

☒ (b) Seller shall pay the assessment(s) in full prior to or at the time of Closing.

IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.

Buyer's Initials _____                    Seller's Initials _____

FloridaRealtors/FloridaBar-ASIS-5   Page 3/13 © 2013 Florida Realtors® and The Florida Bar. All rights reserved.

Case: 17-05084   Doc# 73   Filed: 07/01/19   Entered: 07/01/19 14:56:17   Page 107 of 140

172    This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district (CDD)
173    pursuant to Chapter 190, F.S., which lien shall be prorated pursuant to STANDARD K.
174                                                      DISCLOSURES
175    10. DISCLOSURES:
176        (a) RADON GAS: Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in sufficient
177            quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal
178            and state guidelines have been found in Florida. Additional information regarding radon and radon
179            testing may be obtained from your county health department.
180        (b) PERMITS DISCLOSURE: Except as may have been disclosed by Seller to Buyer in a written disclosure, Seller
181            does not know of any improvements made to the Property which were made without required permits or made
182            pursuant to permits which have not been properly closed.
183        (c) MOLD: Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or
184            desires additional information regarding mold, Buyer should contact an appropriate professional.
185        (d) FLOOD ZONE; ELEVATION CERTIFICATION: Buyer is advised to verify by elevation certificate which flood zone
186            the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to improving
187            the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area" or "Coastal
188            Barrier Resources Act" designated area or otherwise protected area identified by the U.S. Fish and Wildlife Service
189            under the Coastal Barrier Resources Act and the lowest floor elevation for the building(s) and for flood insurance
190            rating purposes is below minimum flood elevation or is ineligible for flood insurance through the National Flood
191            Insurance Program, Buyer may terminate this Contract by delivering written notice to Seller within _____ (if left
192            blank, then 20) days after Effective Date, and Buyer shall be refunded the Deposit thereby releasing Buyer and
193            Seller from all further obligations under this Contract, failing which Buyer accepts existing elevation of buildings and
194            flood zone designation of Property. The National Flood Insurance Reform Act of 2012 (referred to as Biggert-
195            Waters 2012) may phase in actuarial rating of pre-Flood Insurance Rate Map (pre-FIRM) non-primary structures
196            (residential structures in which the insured or spouse does not reside for at least 50% of the year) and an elevation
197            certificate may be required for actuarial rating.
198        (e) ENERGY BROCHURE: Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information Brochure
199            required by Section 553.996, F.S.
200        (f) LEAD-BASED PAINT: If Property includes pre-1978 residential housing, a lead-based paint disclosure is
201            mandatory.
202        (g) HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS
203            CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE HOMEOWNERS' ASSOCIATION/COMMUNITY
204            DISCLOSURE, IF APPLICABLE.
205        (h) PROPERTY TAX DISCLOSURE SUMMARY: BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT
206            PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO
207            PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY
208            IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER
209            PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY
210            PROPERTY APPRAISER'S OFFICE FOR INFORMATION.
211        (i) FIRPTA TAX WITHHOLDING: Seller shall inform Buyer in writing if Seller is a "foreign person" as defined by the
212            Foreign Investment in Real Property Tax Act ("FIRPTA"). Buyer and Seller shall comply with FIRPTA, which may
213            require Seller to provide additional cash at Closing. If Seller is not a "foreign person", Seller can provide Buyer, at or
214            prior to Closing, a certification of non-foreign status, under penalties of perjury, to inform Buyer and Closing Agent
215            that no withholding is required. See STANDARD V for further information pertaining to FIRPTA. Buyer and Seller
216            are advised to seek legal counsel and tax advice regarding their respective rights, obligations, reporting and
217            withholding requirements pursuant to FIRPTA.
218        (j) SELLER DISCLOSURE: Seller knows of no facts materially affecting the value of the Real Property which are not
219            readily observable and which have not been disclosed to Buyer. Except as provided for in the preceding sentence,
220            Seller extends and intends no warranty and makes no representation of any type, either express or implied, as to
221            the physical condition or history of the Property. Except as otherwise disclosed in writing Seller has received no
222            written or verbal notice from any governmental entity or agency as to a currently uncorrected building,
223            environmental or safety code violation.
224                                   PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS
225    11. PROPERTY MAINTENANCE: Except for ordinary wear and tear and Casualty Loss, Seller shall maintain the Property,
226        including, but not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("AS IS
227        Maintenance Requirement").

Buyer's Initials _____                          Page 4 of 11                          Seller's Initials _____
FloridaRealtors/FloridaBar-ASIS-2   Rev.6/13 © 2013 Florida Realtors® and The Florida Bar.  All rights reserved.

Case: 17-05084    Doc# 73    Filed: 07/01/19    Entered: 07/01/19 14:56:17    Page 108 of
140

**12. PROPERTY INSPECTION; RIGHT TO CANCEL:**

(a) *PROPERTY INSPECTIONS AND RIGHT TO CANCEL: Buyer shall have* ☐ *(if left blank, then 15) days after Effective Date ("Inspection Period") within which to have such inspections of the Property performed as Buyer shall desire during the Inspection Period. If Buyer determines, in Buyer's sole discretion, that the Property is not acceptable to Buyer, Buyer may terminate this Contract by delivering written notice of such election to Seller prior to expiration of Inspection Period. If Buyer timely terminates this Contract, the Deposit paid shall be returned to Buyer, thereupon, Buyer and Seller shall be released of all further obligations under this Contract; however, Buyer shall be responsible for prompt payment for such inspections, for repair of damage to, and restoration of, the Property resulting from such inspections, and shall provide Seller with paid receipts for all work done on the Property (the preceding provision shall survive termination of this Contract). Unless Buyer exercises the right to terminate granted herein, Buyer accepts the physical condition of the Property and any violation of governmental, building, environmental, and safety codes, restrictions, or requirements, but subject to Seller's continuing AS IS Maintenance Requirement, and Buyer shall be responsible for any and all repairs and improvements required by Buyer's lender.*

(b) *WALK-THROUGH INSPECTION/RE-INSPECTION: On the day prior to Closing Date, or on Closing Date prior to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and follow-up walk-through, if necessary) inspection of the Property solely to confirm that all items of Personal Property are on the Property and to verify that Seller has maintained the Property as required by the AS IS Maintenance Requirement and has met all other contractual obligations.*

(c) *SELLER ASSISTANCE AND COOPERATION IN CLOSE-OUT OF BUILDING PERMITS: If Buyer's inspection of the Property identifies open or needed building permits, then Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control relating to improvements to the Property which are the subject of such open or needed Permits, and shall promptly cooperate in good faith with Buyer's efforts to obtain estimates of repairs or other work necessary to resolve such Permit issues. Seller's obligation to cooperate shall include Seller's execution of necessary authorizations, consents, or other documents necessary for Buyer to conduct inspections and have estimates of such repairs or work prepared, but in fulfilling such obligation, Seller shall not be required to expend, or become obligated to expend, any money.*

(d) *ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES: At Buyer's option and cost, Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties to Buyer.*

**ESCROW AGENT AND BROKER**

13. ESCROW AGENT: Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds and other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow within the State of Florida and, subject to COLLECTION, disburse them in accordance with terms and conditions of this Contract. Failure of funds to become COLLECTED shall not excuse Buyer's performance. When conflicting demands for the Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent may take such actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties or liabilities under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow until the parties agree to its disbursement or until a final judgment of a court of competent jurisdiction shall determine the rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction of the dispute. An attorney who represents a party and also acts as Agent may represent such party in such action. Upon notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate, except to the extent of accounting for any items previously delivered out of escrow. If a licensed real estate broker, Agent will comply with provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve escrow disputes through mediation, arbitration, interpleader or an escrow disbursement order.

Any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder, or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent. Agent shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is due to Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing or termination of this Contract.

14. PROFESSIONAL ADVICE; BROKER LIABILITY: Broker advises Buyer and Seller to verify Property condition, square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or public records. BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) OF BROKER.

Buyer's Initials _____     Page 8 of 11     Seller's Initials _____

FloridaRealtors/FloridaBar-ASIS-3 Rev.6/13 © 2013 Florida Realtors® and The Florida Bar. All rights reserved.

108

Buyer and Seller (individually, the "Indemnifying Party") each individually indemnifies, holds harmless, and releases Broker and Broker's officers, directors, agents and employees from all liability for loss or damage, including all costs and expenses, and reasonable attorney's fees at all levels, suffered or incurred by Broker and Broker's officers, directors, agents and employees in connection with or arising from claims, demands or causes of action instituted by Buyer or Seller based on: (i) inaccuracy of information provided by the Indemnifying Party or from public records; (ii) Indemnifying Party's misstatement(s) or failure to perform contractual obligations; (iii) Broker's performance, at Indemnifying Party's request, of any task beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral, recommendation or retention of any vendor for, or on behalf of, Indemnifying Party; (iv) products or services provided by any such vendor for, or on behalf of, Indemnifying Party; and (v) expenses incurred by any such vendor. Buyer and Seller each assumes full responsibility for selecting and compensating their respective vendors and paying their other costs under this Contract whether or not this transaction closes. This Paragraph 14 will not relieve Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes of this Paragraph 14, Broker will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or termination of this Contract.

**DEFAULT AND DISPUTE RESOLUTION**

**15. DEFAULT:**

**(a) BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract, including payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the Deposit for the account of Seller as agreed upon liquidated damages, consideration for execution of this Contract, and in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further obligations under this Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity to enforce Seller's rights under this Contract. The portion of the Deposit, if any, paid to Listing Broker upon default by Buyer, shall be split equally between Listing Broker and Cooperating Broker, provided however, that the amount paid to Cooperating Broker shall not be greater than the commission amount Listing Broker had agreed to pay to Cooperating Broker.

**(b) SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract, Buyer may elect to receive return of Buyer's Deposit without thereby waiving any action for damages resulting from Seller's breach, and, pursuant to Paragraph 16, may seek to recover such damages or seek specific performance.

This Paragraph 15 shall survive Closing or termination of this Contract.

**16. DISPUTE RESOLUTION:** Unresolved controversy, claim and other matters in question between Buyer and Seller arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be settled as follows:

**(a)** Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under Paragraph 16(b).

**(b)** Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules"). The mediator must be certified or must have experience in the real estate industry. Injunctive relief may be sought without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16 may be resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph 16 shall survive Closing or termination of this Contract.

**17. ATTORNEY'S FEES; COSTS:** The parties will split equally any mediation fee incurred in any mediation permitted by this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in conducting the mediation. In any litigation permitted by this Contract, the prevailing party shall be entitled to recover from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting the litigation. This Paragraph 17 shall survive Closing or termination of this Contract.

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")**

**18. STANDARDS:**

**A. TITLE:**

**(i) TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in Paragraph 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall be issued and delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at or before Closing and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance in the amount of the Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the Real Property, subject only to the following matters: (a) comprehensive land use plans, zoning, and other land use restrictions, prohibitions and requirements imposed by governmental authority; (b) restrictions and matters appearing on the Plat or otherwise common to the subdivision; (c) outstanding oil, gas and mineral rights of record without right of entry; (d) unplatted public utility easements of record (located contiguous to real property lines and not more than 10 feet in width as to the rear or front lines and 7 1/2 feet in width as to the side lines); (e) taxes for year of Closing and subsequent years; and (f)

Buyer's Initials _____ _____    Rev/6/13 © 2013 Florida Realtors® and The Florida Bar. All rights reserved.    Seller's Initials _____ _____

Case: 17-05084    Doc# 73    Filed: 07/01/19    Entered: 07/01/19 14:56:17    Page 110 of 140

109

assumed mortgages and purchase money mortgages, if any (if additional items, attach addendum); provided, that, none prevent use of Property for RESIDENTIAL PURPOSE. If there exists at Closing any violation of items identified in (b) – (f) above, then the same shall be deemed a title defect. Marketable title shall be determined according to applicable Title Standards adopted by authority of The Florida Bar and in accordance with law.

(b) TITLE EXAMINATION: Buyer shall have 5 days after receipt of Title Commitment to examine it and notify Seller in writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and it is delivered to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after date of receipt to examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period") after receipt of Buyer's notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify Seller, Buyer shall be deemed to have accepted title as it then is. If Seller cures defects within Cure Period, Seller will deliver written notice to Buyer (with proof of cure acceptable to Buyer and Buyer's attorney) and the parties will close this Contract on Closing Date (or if Closing Date has passed, within 10 days after Buyer's receipt of Seller's notice). If Seller is unable to cure defects within Cure Period, then Buyer may, within 5 days after expiration of Cure Period, deliver written notice to Seller: (a) extending Cure Period for a specified period not to exceed 120 days within which Seller shall continue to use reasonable diligent effort to remove or cure the defects ("Extended Cure Period"); or (b) electing to accept title with existing defects and close this Contract on Closing Date (or if Closing Date has passed, within the earlier of 10 days after end of Extended Cure Period or Buyer's receipt of Seller's notice), or (c) electing to terminate this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. If after reasonable diligent effort, Seller is unable to timely cure defects, and Buyer does not waive the defects, this Contract shall terminate, and Buyer shall receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

B. SURVEY: If Survey discloses encroachments on the Real Property or that improvements located thereon encroach on setback lines, easements, or lands of others, or violate any restrictions, covenants, or applicable governmental regulations described in STANDARD A (f)(a), (b) or (c) above, Buyer shall deliver written notice of such matters, together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later than Closing. If Buyer timely delivers such notice and Survey to Seller, such matters identified in the notice and Survey shall constitute a title defect, subject to cure obligations of STANDARD A above. If Seller has delivered a prior survey, Seller shall, at Buyer's request, execute an affidavit of "no change" to the Real Property since the preparation of such prior survey, to the extent the affirmations therein are true and correct.

C. INGRESS AND EGRESS: Seller represents that there is ingress and egress to the Real Property and title to the Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of access.

D. LEASE INFORMATION: Seller shall, at least 10 days prior to Closing, furnish to Buyer estoppel letters from tenant(s)/occupant(s) specifying nature and duration of occupancy, rental rates, advanced rent and security deposits paid by tenant(s) or occupant(s)("Estoppel Letter(s)"). If Seller is unable to obtain such Estoppel Letter(s) the same information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit and Buyer may thereafter contact tenant(s) or occupant(s) to confirm such information. If Estoppel Letter(s) or Seller's affidavit, if any, differ materially from Seller's representations and lease(s) provided pursuant to Paragraph 6, or if tenant(s)/occupant(s) fail or refuse to confirm Seller's affidavit, Buyer may deliver written notice to Seller within 5 days after receipt of such information, but no later than 5 days prior to Closing Date, terminating this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. Seller shall, at Closing, deliver and assign all leases to Buyer who shall assume Seller's obligations thereunder.

E. LIENS: Seller shall furnish to Buyer at Closing an affidavit attesting (i) to the absence of any financing statement, claims of lien or potential lienors known to Seller and (ii) that there have been no improvements or repairs to the Real Property for 90 days immediately preceding Closing Date. If the Real Property has been improved or repaired within that time, Seller shall deliver release or waivers of construction liens executed by all general contractors, subcontractors, suppliers and materialmen in addition to Seller's lien affidavit setting forth names of all such general contractors, subcontractors, suppliers and materialmen, further affirming that all charges for improvements or repairs which could serve as a basis for a construction lien or a claim for damages have been paid or will be paid at Closing.

F. TIME: Calendar days shall be used in computing time periods. Time is of the essence in this Contract. Other than time for acceptance and Effective Date as set forth in Paragraph 3, any time periods provided for or dates specified in this Contract, whether preprinted, handwritten, typewritten or inserted herein, which shall end or occur on a Saturday, Sunday, or a national legal holiday (see 5 U.S.C. 6103) shall extend to 5:00 p.m. (where the Property is located) of the next business day.

G. FORCE MAJEURE: Buyer or Seller shall not be required to perform any obligation under this Contract or be liable to each other for damages so long as performance or non-performance of the obligation is delayed, caused or prevented by Force Majeure. "Force Majeure" means: hurricanes, earthquakes, floods, fire, acts of God, unusual transportation delays, wars, insurrections, acts of terrorism, and any other cause not reasonably within control of Buyer or Seller, and which, by exercise of reasonable diligent effort, the non-performing party is unable in whole or in part to prevent or overcome. All time periods, including Closing Date, will be extended for the period that the Force Majeure prevents performance under this Contract, provided, however, if such Force Majeure continues to prevent performance

Buyer's Initials _____ Page 7 of 11 Seller's Initials _____
FloridaRealtors/FloridaBar-ASIS-2 Rev.8/13 © 2013 Florida Realtors and The Florida Bar. All rights reserved.

110

under this Contract more than 14 days beyond Closing Date, then either party may terminate this Contract by delivering written notice to the other and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.

**H. CONVEYANCE:** Seller shall convey marketable title to the Real Property by statutory warranty, trustee's, personal representative's, or guardian's deed, as appropriate to the status of Seller, subject only to matters described in (STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer, be transferred by absolute bill of sale with warranty of title, subject only to such matters as may be provided for in this Contract.

**I. CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:**

(i) LOCATION: Closing will take place in the county where the Real Property is located at the office of the attorney or other closing agent ("Closing Agent") designated by the party paying for the owner's policy of title insurance, or, if no title insurance, designated by Seller. Closing may be conducted by mail or electronic means.

(ii) CLOSING DOCUMENTS: Seller shall at or prior to Closing, execute and deliver, as applicable, deed, bill of sale, certificate(s) of title or other documents necessary to transfer title to the Property, construction lien affidavit(s), owner's possession and no lien affidavit(s), and assignment(s) of leases. Seller shall provide Buyer with paid receipts for all work done on the Property pursuant to this Contract. Buyer shall furnish and pay for, as applicable the survey, flood elevation certification, and documents required by Buyer's lender.

(iii) PROCEDURE: The deed shall be recorded upon COLLECTION of all closing funds. If the Title Commitment provides insurance against adverse matters pursuant to Section 627.7841, F.S. as amended, the escrow closing procedure required by STANDARD J shall be waived, and Closing Agent shall, subject to COLLECTION of all closing funds, disburse at Closing the brokerage fees to Broker and the net sale proceeds to Seller.

**J. ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following escrow and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent for a period of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault of Buyer, Buyer shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days from date of receipt of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit and all Closing funds paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and, simultaneously with such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-convey the Property to Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely demand for refund of the Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening defect except as may be available to Buyer by virtue of warranties contained in the deed or bill of sale.

**K. PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as of the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes (including special benefit tax assessments imposed by a CDD), interest, bonds, association fees, insurance, rents and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if assumable, in which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required by prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will be credited to Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated based on current year's tax with due allowance made for maximum allowable discount, homestead and other exemptions. If Closing occurs on a date when current year's millage is not fixed but current year's assessment is available, taxes will be prorated based upon such assessment and prior year's millage. If current year's assessment is not available, then taxes will be prorated on prior year's tax. If there are completed improvements on the Real Property by January 1st of year of Closing, which improvements were not in existence on January 1st of prior year, then taxes shall be prorated based upon prior year's millage and at an equitable assessment to be agreed upon between the parties, failing which, request shall be made to the County Property Appraiser for an informal assessment taking into account available exemptions. A tax proration based on an estimate shall, at either party's request, be readjusted upon receipt of current year's tax bill. This STANDARD K shall survive Closing.

**L. ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller shall, upon reasonable notice, provide utilities service and access to Property for appraisals and inspections, including a walk-through (or follow-up walk-through if necessary) prior to Closing.

**M. RISK OF LOSS:** If, after Effective Date, but before Closing, Property is damaged by fire or other casualty ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does not exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed pursuant to terms of the Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated cost to complete restoration (not to exceed 1.5% of Purchase Price), will be escrowed at Closing. If actual cost of restoration exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5%, or receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.

Buyer's Initials _____     Seller's Initials _____

FloridaRealtors/FloridaBar-ASIS-1 Rev 3/15 © 2015 Florida Realtors and The Florida Bar. All rights reserved.    Page 8 of 11

111

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

N. 1031 EXCHANGE: If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneously with Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate in all reasonable respects to effectuate the Exchange, including execution of documents; provided, however, cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be contingent upon, nor extended or delayed by, such Exchange.

O. CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; DELIVERY; COPIES; CONTRACT EXECUTION: Neither this Contract nor any notice of it shall be recorded in any public records. This Contract shall be binding on, and inure to the benefit of, the parties and their respective heirs or successors in interest. Whenever the context permits, singular shall include plural and one gender shall include all. Notice and delivery given by or to the attorney or broker (including such broker's real estate licensee) representing any party shall be as effective as if given by or to that party. All notices must be in writing and may be made by mail, personal delivery or electronic (including "pdf") media. A facsimile or electronic (including "pdf") copy of this Contract and any signatures hereon shall be considered for all purposes as an original. This Contract may be executed by use of electronic signatures, as determined by Florida's Electronic Signature Act and other applicable laws.

P. INTEGRATION; MODIFICATION: This Contract contains the full and complete understanding and agreement of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or representations shall be binding upon Buyer or Seller unless included in this Contract. No modification to or change in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended to be bound by it.

Q. WAIVER: Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or rights.

R. RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS: Riders, addenda, and typewritten or handwritten provisions shall control all printed provisions of this Contract in conflict with them.

S. COLLECTION or COLLECTED: "COLLECTION" or "COLLECTED" means any checks tendered or received, including Deposits, have become actually and finally collected and deposited in the account of Escrow Agent or Closing Agent. Closing and disbursement of funds and delivery of closing documents may be delayed by Closing Agent until such amounts have been COLLECTED in Closing Agent's accounts.

T. LOAN COMMITMENT: "Loan Commitment" means a statement by the lender setting forth the terms and conditions upon which the lender is willing to make a particular mortgage loan to a particular borrower. Neither a pre-approval letter nor a prequalification letter shall be deemed a Loan Commitment for purpose of this Contract.

U. APPLICABLE LAW AND VENUE: This Contract shall be construed in accordance with the laws of the State of Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the county where the Real Property is located.

V. FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA"): If a seller of U.S. real property is a "foreign person" as defined by FIRPTA, Section 1445 of the Internal Revenue Code requires the buyer of the real property to withhold 10% of the amount realized by the seller on the transfer and remit the withheld amount to the Internal Revenue Service (IRS) unless an exemption to the required withholding applies or the seller has obtained a Withholding Certificate from the IRS authorizing a reduced amount of withholding. Due to the complexity and potential risks of FIRPTA, Buyer and Seller should seek legal and tax advice regarding compliance, particularly if an "exemption" is claimed on the sale of residential property for $300,000 or less.

(i) No withholding is required under Section 1445 if the Seller is not a "foreign person", provided Buyer accepts proof of same from Seller, which may include Buyer's receipt of certification of non-foreign status from Seller, signed under penalties of perjury, stating that Seller is not a foreign person and containing Seller's name, U.S. taxpayer identification number and home address (or office address, in the case of an entity), as provided for in 26 CFR 1.1445-2(b). Otherwise, Buyer shall withhold 10% of the amount realized by Seller on the transfer and timely remit said funds to the IRS.

(ii) If Seller has received a Withholding Certificate from the IRS which provides for reduced or eliminated withholding in this transaction and provides same to Buyer by Closing, then Buyer shall withhold the reduced sum, if any required, and timely remit said funds to the IRS.

(iii) If prior to Closing Seller has submitted a completed application to the IRS for a Withholding Certificate and has provided to Buyer the notice required by 26 CFR 1.1445-1(c) (2)(i)(B) but no Withholding Certificate has been received as of Closing, Buyer shall, at Closing, withhold 10% of the amount realized by Seller on the transfer and, at Buyer's option, either (a) timely remit the withheld funds to the IRS or (b) place the funds in escrow, at Seller's expense, with an escrow agent selected by Buyer and pursuant to terms negotiated by the parties, to be subsequently disbursed in accordance with the Withholding Certificate issued by the IRS or remitted directly to the IRS if the Seller's application is rejected or upon terms set forth in the escrow agreement.

(iv) In the event the net proceeds due Seller are not sufficient to meet the withholding requirement(s) in this transaction, Seller shall deliver to Buyer, at Closing, the additional COLLECTED funds necessary to satisfy the applicable requirement and thereafter Buyer shall timely remit said funds to the IRS or escrow the funds for disbursement in accordance with the final determination of the IRS, as applicable.

Buyer's Initials _____  
FloridaRealtors/FloridaBar-ASIS-2  Rev 6/13 © 2013 Florida Realtors® and The Florida Bar. All rights reserved.  
Page 9 of 11  
Seller's Initials _____

112

# STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

(V) Upon remitting funds to the IRS pursuant to this STANDARD, Buyer shall provide Seller copies of IRS Forms 8288 and 8288-A, as filed.

**W. RESERVED**

**X. BUYER WAIVER OF CLAIMS:** *To the extent permitted by law, Buyer waives any claims against Seller and against any real estate licensee involved in the negotiation of this Contract for any damage or defects pertaining to the physical condition of the Property that may exist at Closing of this Contract and be subsequently discovered by the Buyer or anyone claiming by, through, under or against the Buyer. This provision does not relieve Seller's obligation to comply with Paragraph 10(j). This Standard X shall survive Closing.*

## ADDENDA AND ADDITIONAL TERMS

**19. ADDENDA:** The following additional terms are included in the attached addenda or riders and incorporated into this Contract (Check if applicable):

| | | |
|---|---|---|
| ☒ A. Condominium Rider | ☐ M. Defective Drywall | ☐ X. Kick-out Clause |
| ☐ B. Homeowners' Assn. | ☐ N. Coastal Construction Control Line | ☐ Y. Seller's Attorney Approval |
| ☐ C. Seller Financing | ☐ O. Insulation Disclosure | ☐ Z. Buyer's Attorney Approval |
| ☐ D. Mortgage Assumption | ☐ P. Lead Based Paint Disclosure | ☐ AA. License-Personal Interest in |
| ☐ E. FHA/VA Financing | (Pre-1978 Housing) | Property |
| ☐ F. Appraisal Contingency | ☐ Q. Housing for Older Persons | ☐ BB. Binding Arbitration |
| ☐ G. Short Sale | ☐ R. Rezoning | ☐ Other_____ |
| ☐ H. Homeowners'/Flood Ins. | ☐ S. Lease Purchase/ Lease Option | _____ |
| ☐ I. RESERVED | ☐ T. Pre-Closing Occupancy by Buyer | _____ |
| ☐ J. Interest-Bearing Acct. | ☐ U. Post-Closing Occupancy by Seller | _____ |
| ☐ K. RESERVED | ☐ V. Sale of Buyer's Property | _____ |
| ☐ L. RESERVED | ☐ W. Back-up Contract | _____ |

**20. ADDITIONAL TERMS:** _____

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

## COUNTER-OFFER/REJECTION

☐ Seller counters Buyer's offer (to accept the counter-offer, Buyer must sign or initial the counter-offered terms and deliver a copy of the acceptance to Seller).

☐ Seller rejects Buyer's offer.

**THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE ADVICE OF AN ATTORNEY PRIOR TO SIGNING.**

**THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.**

Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the terms and conditions in this Contract should be accepted by the parties in a particular transaction. Terms and conditions should be negotiated based upon the respective interests, objectives and bargaining positions of all interested persons.

Buyer's Initials _____ Page 13 of 11 Seller's Initials _____

FloridaRealtors/FloridaBar-ASIS-2, Rev 2013 ©2013 Florida Realtors and The Florida Bar. All rights reserved.

Serial: 016578-700128-7662668

Case: 17-05084    Doc# 73    Filed: 07/01/19    Entered: 07/01/19 14:56:17    Page 114 of 140
CG-CD09107

AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK TO BE COMPLETED.

Buyer: _____ Date: 10/12/2014

Buyer: _____ Date: _____

Seller: _____ Date: 10/12/2014

Seller: _____ Date: _____

Buyer's address for purposes of notice _____

Seller's address for purposes of notice _____

BROKER: Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers entitled to compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct Closing Agent to disburse at Closing the full amount of the brokerage fees as specified in separate brokerage agreements with the parties and cooperative agreements between the Brokers, except to the extent Broker has retained such fees from the escrowed funds. This Contract shall not modify any MLS or other offer of compensation made by Seller or Listing Broker to Cooperating Brokers.

N/A
Cooperating Sales Associate, if any

CARLO DI PASQUAL LLC
Listing Sales Associate        2%

N/A
Cooperating Broker, if any

CHUGRA REAL ESTATE
Listing Broker

114

Case: 17-05084    Doc# 73    Filed: 07/01/19    Entered: 07/01/19 14:56:17    Page 115 of 140

**Comprehensive Rider to the**
**Residential Contract For Sale And Purchase**

**FloridaRealtors**

THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR

If initialed by all parties, the clauses below will be incorporated into the Florida Realtors®/Florida Bar Residential Contract
For Sale And Purchase between _____ KIAGI LLC _____ (SELLER)
and _____ CIOTKE, LLC _____ (BUYER)
concerning the Property described as _____ the NoRTH CONDO-1605 EUCLID# A-2 _____

Buyer's Initials _____     Seller's Initials _____

## A. CONDOMINIUM RIDER

1. **CONDOMINIUM ASSOCIATION APPROVAL:**
   The Association's approval of Buyer (CHECK ONE): ☒ is ☐ is not required. If approval is required, this Contract is
   contingent upon Buyer being approved by the Association no later than _____ (if left blank, then 5) days
   prior to Closing. Within _____ (if left blank, then 5) days after Effective Date Seller shall initiate the
   approval process with the Association and Buyer shall apply for such approval. Buyer and Seller shall sign and deliver
   any documents required by the Association in order to complete the transfer of the Property and each shall use
   diligent effort to obtain such approval, including making personal appearances if required. If Buyer is not approved
   within the stated time period, this Contract shall terminate and Buyer shall be refunded the Deposit, thereby releasing
   Buyer and Seller from all further obligations under this Contract.

2. **RIGHT OF FIRST REFUSAL:**
   (a) The Association (CHECK ONE): ☐ has ☒ does not have a right of first refusal ("Right"). If the Association has
       a Right, this Contract is contingent upon the Association, within the time permitted for the exercise of such Right,
       either providing written confirmation to Buyer that the Association is not exercising that Right, or failing to timely
       exercise such Right pursuant to the terms of the Declaration of Condominium ("Declaration", which reference
       includes all amendments thereto).
   (b) The members of the Association (CHECK ONE): ☐ have ☒ do not have a Right. If the members do have a
       Right, this Contract is contingent upon the members, within the time permitted for the exercise of such Right,
       either providing written confirmation to Buyer that the members are not exercising that Right, or failing to timely
       exercise such Right pursuant to the terms of the Declaration.
   (c) Buyer and Seller shall, within _____ (if left blank, then 5) days after Effective Date, sign and deliver
       any documents required as a condition precedent to the exercise of the Right, and shall use diligent effort to
       submit and process the matter with the Association and members, including personal appearances, if required.
   (d) If, within the stated time period, the Association, the members of the Association, or both, fail to provide the
       written confirmation or the Right has not otherwise expired, then this Contract shall terminate and the Deposit
       shall be refunded to the Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.
   (e) If the Association or a member timely exercise its or their Right, this Contract shall terminate and the Deposit
       shall be refunded to Buyer (unless this Contract provides otherwise), thereby releasing Buyer and Seller from all
       further obligations under this Contract, and Seller shall pay to Broker the full commission at Closing in recognition
       that Broker procured the sale.

3. **FEES; ASSESSMENTS; PRORATIONS; LITIGATION:**
   (a) Condominium Association assessment(s) and Rents: Seller represents that the current Association
       assessment(s) installments is/are

       $ 610.00 payable (CHECK ONE): ☒ monthly ☐ quarterly ☐ semi-annually ☐ annually

       and if more than one Association assessment
       $ _____ payable (CHECK ONE): ☐ monthly ☐ quarterly ☐ semi-annually ☐ annually

       and the current rent on recreation areas, if any, is
       $ _____ payable (CHECK ONE): ☐ monthly ☐ quarterly ☐ semi-annually ☐ annually

Page 1 of 3   A. CONDOMINIUM RIDER                                    (SEE CONTINUATION)
CR-2 Rev. 9/13 ©2013 Florida Realtors® and The Florida Bar. All rights reserved.

115

**A. CONDOMINIUM RIDER (CONTINUED)**

All annual assessments levied by the Association and rent on recreational areas, if any, shall be made current by Seller at Closing, and Buyer shall reimburse Seller for prepayments.

(b) Fees: Seller shall, at Closing, pay all fines imposed against the Unit by the Condominium Association as of Closing Date and any fees this Association charges to provide information about the Property, assessment(s) and fees.

*If Property is part of a Homeowners' Association, see Rider B, HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE for further information including additional assessments and fees.*

(c) Special Assessments and Prorations:

(i) Seller represents that Seller is not aware of any special or other assessment that has been levied by the Association or that has been an item on the agenda, or reported in the minutes, of the Association within twelve (12) months prior to Effective Date, ("pending") except as follows: _____

(ii) If special assessments levied or pending exist as of the Effective Date are disclosed above by Seller and may be paid in installments (CHECK ONE): ☐ Buyer ☒ Seller (if left blank, then Buyer) shall pay installments due after Closing Date. If Seller is checked, Seller shall pay the assessment in full prior to or at the time of Closing.

(iii) If special assessments levied or pending exist as of the Effective Date and have not been disclosed above by Seller, then Seller shall pay such assessments in full at the time of Closing.

(iv) If, after Effective Date, the Association imposes a special assessment for improvements, work or services, which was not pending as of the Effective Date, then Seller shall pay all amounts due before Closing Date and Buyer shall pay all amounts due after Closing Date.

(v) A special assessment shall be deemed levied for purposes of this paragraph on the date when the assessment has been approved as required for enforcement pursuant to Florida law and the condominium documents listed in Paragraph 5.

(vi) Association assets and liabilities, including Association reserve accounts, shall not be prorated.

(d) Litigation: Seller represents that Seller is not aware of pending or anticipated litigation affecting the Property or the common elements, if any, except as follows: _____

4. **SPRINKLER SYSTEM RETROFIT:**
If, pursuant to Sections 718.112(2)(l), F.S., the Association has voted to forego retrofitting its fire sprinkler system or handrails and guardrails for the condominium units, then prior to Closing Seller shall furnish to Buyer the written notice of Association's vote to forego such retrofitting.

5. **NON-DEVELOPER DISCLOSURE:**
(CHECK ONE):

☐ (a) THE BUYER HEREBY ACKNOWLEDGES THAT BUYER HAS BEEN PROVIDED A CURRENT COPY OF THE DECLARATION OF CONDOMINIUM, ARTICLES OF INCORPORATION OF THE ASSOCIATION, BYLAWS AND RULES OF THE ASSOCIATION, AND A COPY OF THE MOST RECENT YEAR-END FINANCIAL INFORMATION AND FREQUENTLY ASKED QUESTIONS AND ANSWERS DOCUMENT MORE THAN 3 DAYS, EXCLUDING SATURDAYS, SUNDAYS, AND LEGAL HOLIDAYS, PRIOR TO EXECUTION OF THIS CONTRACT.

☒ (b) THIS AGREEMENT IS VOIDABLE BY BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 3 DAYS, EXCLUDING SATURDAYS, SUNDAYS, AND LEGAL HOLIDAYS, AFTER THE DATE OF EXECUTION OF THIS AGREEMENT BY THE BUYER AND RECEIPT BY BUYER OF A CURRENT COPY OF THE DECLARATION OF CONDOMINIUM, ARTICLES OF INCORPORATION, BYLAWS AND RULES OF THE ASSOCIATION, AND A COPY OF THE MOST RECENT YEAR-END FINANCIAL INFORMATION AND FREQUENTLY ASKED QUESTIONS AND ANSWERS DOCUMENT IF SO REQUESTED IN WRITING. ANY PURPORTED WAIVER OF THESE VOIDABILITY RIGHTS SHALL BE OF NO EFFECT. BUYER MAY EXTEND THE TIME FOR CLOSING FOR A PERIOD OF NOT MORE THAN 3 DAYS, EXCLUDING SATURDAYS, SUNDAYS, AND

**Page 2 of 3   A. CONDOMINIUM RIDER**
CR-3  Rev. 8/13 © 2013 Florida Realtors® and The Florida Bar. All rights reserved.

(SEE CONTINUATION)

116

Case: 17-05084   Doc# 73   Filed: 07/01/19   Entered: 07/01/19 14:56:17   Page 117 of 140

CC-CD00110r

LEGAL HOLIDAYS, AFTER THE BUYER RECEIVES THE DECLARATION, ARTICLES OF INCORPORATION, BYLAWS AND RULES OF THE ASSOCIATION, AND A COPY OF THE MOST RECENT YEAR-END FINANCIAL INFORMATION AND FREQUENTLY ASKED QUESTIONS AND ANSWERS DOCUMENT IF REQUESTED IN WRITING. BUYER'S RIGHT TO VOID THIS AGREEMENT SHALL TERMINATE AT CLOSING.

**6. BUYER'S REQUEST FOR DOCUMENTS:**
Buyer is entitled, at Seller's expense, to current copies of the condominium documents specified in Paragraph 5, above. Buyer (CHECK ONE): ☒ requests ☐ does not request a current copy of the documents specified in Paragraph 5, above. If this Contract does not close, Buyer shall immediately return the documents to Seller or reimburse Seller for the cost of the documents.

**7. BUYER'S RECEIPT OF DOCUMENTS:**
(COMPLETE AND CHECK ONLY IF CORRECT) ☐ Buyer received the documents described in Paragraph 5, above, on _____.

**8. COMMON ELEMENTS; PARKING:**
The Property includes the unit being purchased and an undivided interest in the common elements and appurtenant limited common elements of the condominium, as specified in the Declaration. Seller's right and interest in or to the use of the following parking space(s), garage, and other areas are included in the sale of the Property and shall be assigned to Buyer at Closing, subject to the Declaration:
Parking Space(s) # _____ Garage # _____ Other: _____

**9. INSPECTIONS AND REPAIRS:**
The rights and obligations arising under Paragraphs 11 and 12 of this Contract to maintain, repair, replace or treat are limited to Seller's individual condominium unit and unless Seller is otherwise responsible do not extend to common elements, limited common elements, or any other part of the condominium property.

**10. GOVERNANCE FORM:**
PURSUANT TO CHAPTER 718, FLORIDA STATUTES, BUYER IS ENTITLED TO RECEIVE FROM SELLER A COPY OF THE GOVERNANCE FORM IN THE FORMAT PROVIDED BY THE DIVISION OF FLORIDA CONDOMINIUMS, TIMESHARES AND MOBILE HOMES OF THE DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION, SUMMARIZING THE GOVERNANCE OF THE CONDOMINIUM ASSOCIATION.

Case: 17-05084   Doc# 73   Filed: 07/01/19   Entered: 07/01/19 14:56:17   Page 118 of 140

**Addendum to Contract for Residential Sale and Purchase**　　　　🏠 FloridaRealtors™

1　If initialed by all parties, the terms below will be incorporated into the Contract for Residential Sale and Purchase
2　between _____ MAC. LLC _____ ("Seller")
3　and _____ GioTec LLC _____ ("Buyer")
4　concerning the Property described as _____ the AORMA CondOr _____
5
6　( ) ( ) U. Pre-1978 Housing Lead-Based Paint Warning Statement: "Every purchaser
7　of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such
8　property may present exposure to lead from lead-based paint that may place young children at risk of developing lead
9　poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning
10　disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a
11　particular risk to pregnant women. The seller of any interest in residential real property is required to provide the
12　buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's
13　possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible
14　lead-based paint hazards is recommended prior to purchase." For purposes of this addendum, lead-based paint will
15　be referred to as "LBP" and lead-based paint hazards will be referred to as "LBPH."

16　1.　**LBP/LBPH in Housing:** Seller has no knowledge of LBP/LBPH in the housing and no available LBP/LBPH
17　　records or reports, except as indicated: (Describe all known LBP/LBPH information, list all available documents
18　　pertaining to LBP/LBPH, and provide documents to Buyer before accepting Buyer's offer.)
19　_____
20　_____
21　_____

22　2.　**Lead-Based Paint Hazards Inspection:** Buyer waives the opportunity to conduct a risk assessment or
23　　inspection for the presence of LBP/LBPH unless this box is checked ☐ Buyer may, within the Inspection Period,
24　　conduct a risk assessment or inspection for the presence of LBP/LBPH in accordance with the
25　　provisions of Paragraph 8(a) of this Contract or As Is with Right to Inspect Addendum. LBP/LBPH conditions that
26　　are unsatisfactory to Buyer will be treated as "warranted items" for purposes of Paragraphs 8(a)(2) and (3) of this
27　　Contract only).

28　3.　**Certification of Accuracy:** Buyer has received the pamphlet entitled "Protect Your Family from Lead in
29　　Your Home" and all of the information specified in Paragraph 1 above. Licensee has notified Seller of Seller's
30　　obligations to provide and disclose information regarding lead-based paint and lead-based paint hazards in the
31　　Property as required by federal law (42 U.S.C. 4852d) and is aware of his or her obligation to ensure
32　　compliance with federal lead-based paint law. Seller, Buyer, and each licensee have reviewed the information
33　　above and certify, to the best of his or her knowledge, that the information he or she has provided is true and
34　　accurate.

35　_____ 10/12/2014 _____ _____
36　Buyer　　　　　　Date　　　　　Seller　　　　　　Date

37　_____ _____ _____ _____
3A　Buyer　　　　　　Date　　　　　Seller　　　　　　Date

39　_____ 10/06/14 _____ _____
40　Selling Licensee signature　Date　　　Listing Licensee signature　Date

CRSP-13  (U. Pre-1978 Housing Lead-Based Paint Warning Statement Addendum)　Rev 2/18　　©2018 Florida Association of REALTORS®

Buyer _____　　　　　　　　　　　　　　　　　　　formsimplicity

118

## Condominium Disclosure Statement
FLORIDA ASSOCIATION OF REALTORS®

NAME: KLA 61 LLC

SELLER HAS ☐ HAS NOT ☐ OCCUPIED THE PROPERTY.

DATE SELLER PURCHASED PROPERTY? _____

IS THE PROPERTY CURRENTLY LEASED? NO ☐ YES ☐ TERMINATION DATE OF LEASE: _____

DOES THE PROPERTY CURRENTLY HAVE HOMESTEAD EXEMPTION? NO ☐ YES ☐ YEAR _____

GENERAL INFORMATION ABOUT PROPERTY:

PROPERTY ADDRESS: 1635 EucLA Dre #A-2 Miami Beach, FL 33135

LEGAL DESCRIPTION: _____ the North

**NOTICE TO BUYER AND SELLER:**

In Florida, a Seller is obligated to disclose to a Buyer all known facts that materially affect the value of the property being sold and that are not readily observable. This disclosure statement is designed to assist Seller in complying with the disclosure requirements under Florida law and to assist the Buyer in evaluating the property being considered. This disclosure statement concerns the condition of the real property located at above address. It is not a warranty of any kind by the Seller or any Licensee in this transaction. It is not a substitute for any inspections or warranties the parties may wish to obtain. It is based only upon Seller's knowledge of the property condition. This disclosure is not intended to be a part of any contract for sale and purchase. All parties may refer to this information when they evaluate, market, or present Seller's property to prospective Buyers.

**The following representations are made by the Seller(s) and are not the representations of any real estate licensees.**

*Chapter 718 of the Florida Statutes allows a Buyer to void a purchase and sale agreement by delivering written notice of the Buyer's intention to cancel within 3 days, excluding Saturdays, Sundays and legal holidays, after the date of execution of the agreement by the Buyer and receipt by Buyer of a current copy of the Declaration of Condominium, Articles of Incorporation, Bylaws and Rules of the Association, and a copy of the most recent year-end financial information and frequently asked questions and answers document if so requested in writing.*

**A. THE UNIT**

**1. CONDOMINIUM ASSOCIATION DOCUMENTS**

Are You Aware:

a. of any proposed changes to any of the condominium documents? NO ☑ YES ☐

b. of any resale restrictions? NO ☑ YES ☐

c. of any restrictions on leasing the property? NO ☐ YES ☑ 6 month minimum

d. if the condominium unit is subject to a master homeowner's association? NO ☑ YES ☐

e. if any answer to questions 2a-2d is yes, please explain: _____
_____

**2. CLAIMS & ASSESSMENTS**

a. Are you aware of existing, pending, or proposed legal actions, claims, special assessments, municipal service taxing or benefit unit charges or unpaid assessments (including condominium assessment/association maintenance fees or proposed increases in assessments and/or maintenance fees) affecting the property? NO ☑ YES ☐ If yes, explain: _____

b. Have any local, state, or federal authorities notified you that repairs, alterations or corrections of the property are required? NO ☑ YES ☐ If yes, explain: _____

**3. OCCUPANCY AND OWNERSHIP INFORMATION**

a. unit is ☐ owner occupied ☑ Non-rental second home ☐ long term lease which expires on _____
☐ short-term vacation rental program ☐ other _____

b. does the unit currently qualify for homestead exemption? NO ☑ YES ☐

c. unit ownership is evidenced by ☐ fee simple deed ☐ leasehold assignment

Buyer (____) (____) and Seller (____) (____) acknowledge receipt of a copy of this page, which is Page 1 of 5 Pages.

CD-2   06/09   © 2009   Florida Association of REALTORS®   All Rights Reserved

119

Case: 17-05084   Doc# 73   Filed: 07/01/19   Entered: 07/01/19 14:56:17   Page 120 of 140
CC-CD00113
Page 120 of

**4. MATERIAL ALTERATIONS TO UNIT:**
   a. Are you aware of any material alterations to the inside of the unit? NO ☑ YES ☐
   b. Were the alterations made in violation of applicable building codes or without necessary permits? NO ☑ YES ☐
   If any answer to questions 4a or 4b is yes, please explain: _____
   _____

**5. ENVIRONMENT:**
   I. Was the property built before 1978? NO ☐ YES ☑
   II. Are You Aware:
      **a.** of any substances, materials, or products which may be an environmental hazard, such as, but not limited to, asbestos, urea formaldehyde, radon gas, mold, lead-based paint, Chinese/defective drywall, fuel, propane or chemical storage tanks (active or abandoned), or contaminated soil or water in the unit? NO ☑ YES ☐
         **i.** of any damage to the structures located in the unit due to any of the substances, materials or products listed in subsection (a) above? NO ☑ YES ☐
         **ii.** of any corrosion to air conditioner or refrigerator coils, copper tubing, electrical wiring, computer wiring or other household items that have been damaged by sulfur or methane gas emitted from Chinese/defective drywall? NO ☑ YES ☐
         **iii.** of any clean up, repairs, or remediation of the unit due to any of the substances, materials or products listed in subsection (a) above? NO ☑ YES ☐
      **b.** of any condition or proposed change in the vicinity of the unit that does or will materially affect the value of the unit, such as, but not limited to, proposed development or proposed roadways? NO ☑ YES ☐
   If any answer to questions 5(II)a-b is yes, please explain: _____
   _____
   _____

**6. FLOOD:**
   Are You Aware:
   a. if any portion of the unit has been flooded by storm surge? NO ☑ YES ☐
   b. if the unit requires flood insurance? NO ☐ YES ☑
   If any answer to questions 6a-6b is yes, please explain: _____
   _____
   _____

**7. TERMITES, DRY ROT, PESTS, WOOD DESTROYING ORGANISMS:**
   a. Do you have any knowledge of termites, dry rot, pests or wood destroying organisms on or affecting any part of the unit or any structural damage to the unit by them? NO ☑ YES ☐ If yes, explain: _____
   _____
   b. Have you ever had the property inspected for termites, dry rot, pest or wood destroying organism? NO ☐ YES ☐
   Date of inspection_____If so, what was the outcome of the inspection? _____
   _____
   c. Has the unit been treated for termites, dry rot, pest or wood destroying organisms? NO ☑ YES ☐ Date and type of treatment _____, Company name: _____
   d. Do you have any termite contracts or termite bonds on the unit? NO ☐ YES ☐ If yes, are the bonds transferable?
   NO ☐ YES ☐

**8. PLUMBING-RELATED ITEMS:**
   a. What is your drinking water source? Public ☑ Private ☐ Well ☐ Other Source ☐
   b. Do you have a water conditioning/treatment system? NO ☑ YES ☐ If yes, type: _____
   Owned ☐ Leased ☐  What is the balance owed on the system? $ _____
   c. Do you have sewer ☑ septic ☐ system? If septic system describe the location of each system: _____
   d. Are you aware of any plumbing leaks since you have owned the unit? NO ☑ YES ☐ If yes, explain: _____

**9. MAJOR APPLIANCES:**
   Indicate existing equipment:
   Range ☑ Oven ☑ Microwave ☑ Dishwasher ☑ Garbage Disposal ☐
   Trash Compactor ☐ Refrigerator ☑ Freezer ☑ Washer ☑ Dryer ☑
   Are any of these appliances leased? NO ☑ YES ☐ Are any of these gas appliances? NO ☐ YES ☐
   Is the water heater: owned ☑ leased ☐; Is the water heater: electric ☐ gas ☐
   Are you aware of any problems with these appliances, including whether any of the appliances have leaked or overflowed, since you have owned the unit? NO ☑ YES ☐ If yes, explain:

Buyer (____) (____) and Seller (____) (____) acknowledge receipt of a copy of this page, which is Page 2 of 5 Pages.
CD-2   08/09   © 2009   Florida Association of REALTORS®   All Rights Reserved

120

**10. ELECTRICAL SYSTEM:**
Are You Aware:
   **a.** of any damaged or malfunctioning switches, receptacles, or wiring? NO ☑ YES ☐
   **b.** of any conditions that materially affect the value or operating capacity of the electrical system? NO ☑ YES ☐
   If answers to questions 10a or 10b is yes, please explain: _____
   _____

**11. HEATING AND AIR CONDITIONING:**
Indicate existing equipment:
   **Air conditioning/Heating:**
   Central ☑ Window/Wall ☐ Number of units_____
   Electric ☑ Fuel Oil ☐ Gas ☐ Other ☐
   What year was the outside condensing unit placed in service: _____
   What year was the inside air handler unit placed in service: _____
   **Solar Heating:**
   Owned ☐ Leased ☐
   **Wood-burning Stove:** NO ☑ YES ☐
   **Fireplace:** NO ☑ YES ☐ Describe fireplace equipment: _____
   Are you aware of any defects, malfunctioning or condensation problems regarding these items, since you have
   owned the unit? NO ☐ YES ☐ If yes, explain: _____

**12. FIRE SPRINKLER:**
Are You Aware:
   **a.** if the unit or common elements have been retrofitted with a fire sprinkler or other engineered life safety system?
   NO ☑ YES ☐
   If yes, is there a pending special assessment for retrofitting? NO ☑ YES ☐ How much? _____
   If no, has there been a two-thirds vote of the unit owners to forego retrofitting? NO ☐ YES ☐

**13. OTHER EQUIPMENT:**
Indicate existing equipment:
   Security System: NO ☑ YES ☐ Leased ☐ Owned ☐ Connected to Central Monitor ☐ Monthly Fee $ _____
   Smoke Detectors: NO ☐ YES ☑ Number of smoke detectors? _____
   Garage door openers? NO ☐ YES ☐ Number of transmitters? _____
   Humidistat? NO ☐ YES ☐ Humidifier? NO ☐ YES ☐
   Electric air filters? NO ☑ YES ☐
   Vent fans? NO ☑ YES ☐
   Paddle fans? NO ☑ YES ☐ Number of paddle fans? _____

**14. MAINTENANCE CONTRACTS:**
Are You Aware:
   **a.** of any appliance or equipment maintenance/repair contracts? NO ☑ YES ☐ If yes, Date expire _____
   Are they transferable? NO ☐ YES ☐

**B. LIMITED COMMON ELEMENTS**

Are there any facilities outside the unit such as designated parking space(s), storage closets, boat slips, pool cabanas, ga-
rages, car ports etc. that are for your exclusive use? NO ☐ YES ☑ If yes, identify the facility and whether a separate deed or
other legal document grants the exclusive right to use _____ 1 Parking _____
_____

**C. COMMON ELEMENTS**

**1. INSURANCE:**
Are You Aware:
   **a.** if the association maintains full replacement value flood insurance on portions of the condominium property
   required to be insured by the Declaration of Condominium? NO ☐ YES ☑
   **b.** if the association maintains full replacement value against named perils (fire, windstorm, wind-driven rain etc.) on
   portions of the condominium property required to be insured by the Declaration of Condominium? NO ☐ YES ☐
   If any answer to questions 1a or 1b is yes, please explain: _____
   _____

Buyer (_____) (_____) and Seller (_____) (_____) acknowledge receipt of a copy of this page, which is Page 3 of 5 Pages.
CD-2   06/09   © 2009   Florida Association of REALTORS®   All Rights Reserved

121

CC-CD00115f

**2. STRUCTURE-RELATED ITEMS:**
Are You Aware:

a. of any structural damage to the condominium building or roof which may have resulted from events including, but not limited to, hurricane, fire, wind, flood, hail, landslide, or blasting, and which materially affect the value of the unit? NO ☑ YES ☐

b. of any damage to the amenities and/or any other common element that materially affects the value of the unit? NO ☑ YES ☐

c. of any improvements or additions to the common elements that have been constructed in violation of building codes or without necessary permits? NO ☑ YES ☐

d. of any active permits on the common elements which have not been closed by a final inspection? NO ☑ YES ☐

e. of any special assessments to correct any damage to the condominium building, roof or common elements? NO ☑ YES ☐

If any answer to questions 2a-2e is yes, please explain: _____
_____
_____
_____

**3. ALTERATION/CONVEYANCE OF COMMON ELEMENTS:**
Are you aware of any proposed plan to materially alter the common elements, expand the common elements, or convey any part of the common elements? NO ☑ YES ☐ If yes, please explain: _____
_____

**D. COASTAL CONSTRUCTION CONTROL LINE**

Are you aware if the condominium property ☐ is ☐ is not located partially or totally seaward of the coastal construction control line as defined in Chapter 161.053 of the Florida Statutes?

**E. FEES**

**1. Condominium assessment fee:** $_____ due ☐ monthly ☐ quarterly
Check all items included in the condominium assessment/association fee: ☐ water and sewer ☐ electricity ☐ telephone ☐ high speed internet ☐ pest control ☐ basic TV cable ☐ appliance maintenance ☐ club membership ☐ leasehold or ground lease fee ☐ recreational lease fee ☐ reserves on limited common elements ☐ other

**2. Master association fee:** $_____ due ☐ monthly ☐ quarterly ☐ N/A

**3. Common element use fee:** $_____ due ☐ monthly ☐ quarterly ☐ N/A

**4. Limited common element use fee:** $_____ due ☐ monthly ☐ quarterly ☐ N/A
(In addition to fee in E1 above)

**F. OTHER MATTERS**

Is there anything else that materially affects the value of the unit? NO ☐ YES ☐ If yes, explain: _____
_____

---

**ACKNOWLEDGEMENT OF SELLER**

The undersigned Seller represents that the information set forth in the above disclosure statement is accurate and complete to the best of the Seller's knowledge on the date signed below. Seller does not intend for this disclosure statement to be a warranty or guaranty of any kind. Seller hereby authorizes disclosure of the information contained in this disclosure statement to prospective Buyers of the property. Seller understands and agrees that Seller will notify the Buyer in writing within five business days after Seller becomes aware that any information set forth in this disclosure statement has become inaccurate or incorrect in any way during the term of the pending purchase by the Buyer.

Seller: _____ / _____ Date: 07/11/10
      (signature)            (print)

Seller: _____ / _____ Date: _____
      (signature)            (print)

Buyer (____) (____) and Seller (____) (____) acknowledge receipt of a copy of this page, which is Page 4 of 5 Pages.
CD-2   06/09   © 2009   Florida Association of REALTORS®   All Rights Reserved

122

**RECEIPT AND ACKNOWLEDGMENT OF BUYER**

Seller is using this form to disclose Seller's knowledge of the condition of the real property and improvements located on the property as of the date signed by Seller. This disclosure form is not a warranty of any kind. The information contained in the disclosure is limited to information to which the seller has knowledge. It is not intended to be a substitute for any inspections or professional advice the Buyer may wish to obtain. An independent professional inspection is encouraged and may be helpful to verify the condition of the property and to determine the cost of repairs, if any. Buyer understands these representations are not made by any real estate licensee.

Buyer hereby acknowledges having received a copy of this disclosure statement.

Buyer:_____ / _____     Date:_____
               (signature)                                    (print)

Buyer:_____ / _____     Date:_____
               (signature)                                    (print)

Buyer (_____) (_____) and Seller (_____) (_____) acknowledge receipt of a copy of this page, which is Page 5 of 5 Pages.
CD-2    06/09    © 2009    Florida Association of REALTORS®    All Rights Reserved

123

A.    U. S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT    B.   TYPE OF LOAN
SETTLEMENT STATEMENT

Sun Trust Title, LLC
7721 West Oakland Park Blvd. Suite 152
Sunrise, Florida 33351
(954) 544-9301 fax (954) 545-9335

C. NOTE: *This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.*

| | |
|---|---|
| D. Buyer: | Gilvest, LLC<br>2930 N.E. 188th Street<br>Aventura, FL 33180 |
| E. Seller: | Kitai, LLC<br>1405 Euclid Avenue, Apt. A2<br>Miami Beach, FL 33139 |
| F. Lender: | Kitai, LLC<br>1405 Euclid Avenue, Apt. A2 |
| G. Property: | Miami Beach, Miami-dade County, Florida 33139<br>Miami-dade County, Florida |
| H. Settlement Agent: | Sun Trust Title, LLC |
| Place of Settlement: | 7721 West Oakland Park Blvd. Suite 152, Sunrise, Florida 33351    Broward County |
| I. Settlement Date: | November 6, 2014 |

| J. | Summary of Buyer's Transaction | | K. | Summary of Seller's Transaction | |
|---|---|---|---|---|---|
| 100. | Gross Amount Due From Buyer | | 400. | Gross Amount Due To Seller | |
| 101. | Contract Sales Price | 480,000.00 | 401. | Contract Sales Price | 480,000.00 |
| 102. | Personal Property | | 402. | Personal Property | |
| 103. | Settlement Charges to Buyer (line 1400) | 3,395.00 | 403. | | |
| | Adjustments for items Paid by Seller in Advance | | | Adjustments for items Paid by Seller in Advance | |
| 104. | City / Town Taxes | | 404. | City / Town Taxes | |
| 106. | County Parish Taxes | | 407. | County Parish Taxes | |
| 108. | Assessments | | 408. | Assessments | |
| 120. | Gross Amount Due from Buyer | 483,395.00 | 420. | Gross Amount Due to Seller | 480,000.00 |
| 200. | Amounts Paid by or in Behalf of Buyer | | 500. | Reductions In Amount Due to Seller | |
| 201. | Deposit / Earnest Money | 50,000.00 | 501. | Excess Deposit (see instructions) | 50,000.00 |
| 202. | Principal Amount of New Loan | | 502. | Settlement Charges to Seller (Line 1400) | 15,729.01 |
| 203. | Existing Loan(s) | | 503. | Existing Loan(s) | |
| 204. | Balance to show the time price (excluding fees) | 434,000.00 | 504. | Payoff of First Mortgage | |
| 205. | | | 505. | Payoff of Second Mortgage | |
| 206. | | | 506. | Purchase Money Mortgage | |
| 207. | | | 507. | Cash to seller for loan price | 340,000.00 |
| | Adjustments for Items Unpaid by Seller | | | Adjustments for Items Unpaid by Seller | |
| 210. | City / Town Taxes | | 510. | City / Town Taxes | |
| 211. | County Parish Taxes Jan 1, 2014 thru Nov 5, 2014 | 4,245.99 | 511. | County Parish Taxes Jan 1, 2014 thru Nov 5, 2014 | 4,245.99 |
| 212. | Assessments | | 512. | Assessments | |
| 220. | Total Paid by / for Buyer | 484,245.99 | 520. | Total Reductions in Amount Due Seller | 420,030.99 |
| 300. | Cash at Settlement from/to Buyer | | 600. | Cash at Settlement to / from Seller | |
| 301. | Gross Amount due from Buyer (line 120) | 483,395.50 | 601. | Gross Amount due to Seller (line 420) | 480,000.00 |
| 302. | Less Amount Paid by for Buyer (line 220) | 484,245.99 | 602. | Less Reductions Amount due Seller (line 520) | 420,030.99 |
| 303. | Cash From Buyer: | $4,850.51 | 603. | Cash From Seller: | $20,030.99 |

HUD-1 May 2007

Case: 17-05084    Doc# 73    Filed: 07/01/19    Entered: 07/01/19 14:56:17    Page 125 of 140

Settlement Date November 3, 2014

L. Settlement Charges

| | | Paid From Buyer's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|
| 700. Total Sales / Broker's Commission | | | |
| Based on Price $160,000.00 to $9,600.00 | | | |
| Division of Commission (line 700) as follows: | | | |
| 701. $ to | | | |
| 702. $ to | | | |
| 703. Commission Paid at Settlement | | | |
| 704. Broker's Fee to Century Real Estate | | | |
| 800. Items Payable in Connection with Loan | | | |
| 801. Loan Origination Fee | | | |
| 802. Loan Discount | | | |
| 803. Appraisal Fee | | | |
| 804. Credit Report | | | |
| 805. Lender's Inspection Fee | | | |
| 806. Mortgage Insurance Application Fee | | | |
| 807. Assumption Fee | | | |
| 900. Items Required by Lender to be Paid in Advance | | | |
| 901. Daily interest charge from Nov. 6, 2014 | | | |
| 902. Mortgage Insurance Premium | | | |
| 903. Hazard Insurance Premium | | | |
| 904. Flood Insurance Premium | | | |
| 1000. Reserves Deposited with Lenders | | | |
| 1001. Hazard Insurance | | | |
| 1002. Mortgage Insurance | | | |
| 1003. City Property Taxes | | | |
| 1004. County Property Taxes | | | |
| 1005. Annual Assessments | | | |
| 1100. Title Charges | | | |
| 1101. Settlement or Closing Fee | | | |
| 1102. Abstract or Title Search to Sun Trust Title, LLC | | | |
| 1103. Title Examination | | | |
| 1104. Title Insurance Binder | | | |
| 1105. Document Preparation | | | |
| 1106. Notary Fees | | | |
| 1107. Attorney Fees | | | |
| (includes above item numbers: ) | | | |
| 1108. Title Insurance to Sun Trust Title, LLC | | | |
| (includes above item numbers: ) | | | |
| 1109. Lender's Coverage $ | | | |
| 1110. Owner's Coverage $ | | | |
| 1111. Endorsement 8.1 to Sun Trust Title, LLC | | | |
| 1112. Endorsement 8.1 to Sun Trust Title, LLC | | | |
| 1113. Endorsement Fl. Form 9 to Sun Trust Title, LLC | | | |
| 1114. Lien Search to Reliable Lien Search, Inc. | | | |
| 1115. Wire Fees | | | |
| 1200. Government Recording and Transfer Charges | | | |
| 1201. Recording Fees: Deed $ Mortgage $ Releases $ | | | |
| 1202. City/County Tax Stamps: Deed $ Mortgage $ | | | |
| 1203. State Tax Stamps: Deed $ Mortgage $ | | | |
| 1204. Reasonable Fee to Clerk of the Circuit Court | | | |
| 1205. | | | |
| 1300. Additional Settlement Charges | | | |
| 1301. Survey | | | |
| 1302. Pest Inspection | | | |
| 1303. Estimated Repairs (Estimate) to TBD | | | |
| 1304. Reserve to Sun Trust Title, LLC | | | |
| 1305. Accounting Services to Oscar Roy CPA | | | |
| 1400. Total Settlement Charges (Enter on line 103, Section J and line 502, Section K) | | $9,994.00 | $16,778.00 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of HUD-1 Settlement Statement.

Buyer: _____    Seller: _____
FRANCISCO SUAREZ                        Luciano Sosa Penisma

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

Settlement Agent _____    Date: November 3, 2014

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine or imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

HUD-1 May 2007
November 3, 2014 12:02 PM

125

**EXHIBIT 2**

126

# Wire Transfer Services

Outgoing Wire Transfer Request



| Today's Date | Creation After Deadline | | Wells Fargo Reference Number |
|---|---|---|---|
| 01/02/2014 | No | | FW 3819 |
| Banker Name: | | | Officer/Portfolio Number: |
| LOIDA MORALES | | | CA062 |
| Banker Phone: | Store Number | Banker AU: | Banker VAC: |
| -5779 | 11019 | 6125 | 1-010 |

Outgoing wires can only be sent for Wells Fargo customers. Provide the Customer Copy to the customer ensuring you give them the Wire Transfer Agreement on pages 3 and 4. Note Wells Fargo Wire Transfer Services will route wires based on correspondent banking relationships. See the Wire Transfer Information for explanations of the Mexican CLABE number, the SWIFT BIC, the International Routing Code ("IRC") and the International Bank Account Number ("IBAN").

## Originator's Information

| Customer Name | | | Street Address: | |
|---|---|---|---|---|
| CARLO DIPASQUALE | | | 520 WEST AVE APT 2403 | |
| Primary ID Type: | Primary ID Description: | | Address Line 2 | |
| DLIC | -247-1 | | | |
| Primary ID St/Cty/Prov | Primary ID Issue Date: | Primary ID Expiration Date | Address Line 3 | |
| FL | 04/30/2012 | 07/07/2020 | | |
| Secondary ID Type: | Secondary ID Description: | | City | State: |
| PINV | PIN Validation | | MIAMI BEACH | FL |
| Secondary ID State/Country | Secondary ID Issue Date | Secondary ID Expiration Date | ZIP/Postal Code | Country: |
| | | | 33139-5143 | US |
| Business, Trust or Estate Name | | | Home Phone: | Business Phone: |
| ISNA LLC | | | | -5096 |

## Wire Amount and Source of Funds

| Create AU | Debit Wells Fargo Account: | Bank/COID | Amount (US Dollars) |
|---|---|---|---|
| 0066125 | 1048 | 00287 | $1,200,000.00 |

## Beneficiary/Recipient Information (This is the ultimate recipient of the wire transfer funds)

| Beneficiary/Recipient Name: | Name/Address Line 1: |
|---|---|
| ISNA TRADING CORPORATION | PANAMA |
| Beneficiary Account Number (IBAN/Foreign/CLABE (Mexico) | Name/Address Line 2: |
| 1899 | |
| Information/Comments | Name/Address Line 3: |
| RETURN OF CAPITAL DECEMBER 2012 | |
| | Beneficiary Phone Number |

## Beneficiary Bank (This is the financial institution where the beneficiary maintains their account.)

| ABA/RTN | SWIFT BIC | Beneficiary Bank Name: | |
|---|---|---|---|
| | BARCGB22 | BARCLAYS BANK PLC | |
| Beneficiary Bank Address | | City | Country: |
| | | LONDON | GB |

Case: 17-05084   Doc# 73   Filed: 07/01/19   Entered: 07/01/19 14:56:17   Page 128 of 140

## Wire Fees

Wire transfer fees will be charged to the Originator's Debit Account. Additional fees from intermediary and beneficiary banks may be charged to international transactions. My signature here indicates agreement to all of the information on this Outgoing Wire Transfer Request and to the terms and conditions of this request. Wells Fargo is authorized to rely on the information on this Request in making the requested funds transfer.

ALU of Originators Account          Wells Fargo Wire Use Amount
■ 123          $45

## Customer Signature

Originator Name

CARLO DIPASQUALE

Originator Signature



☐ Submit manually          Date
☐ Signature not required    11/11/2014

Case: 17-05084   Doc# 73   Filed: 07/01/19   Entered: 07/01/19 14:56:17   Page 129 of
140

## Agreement For Outgoing Wire Transfer Requests ("Wire Transfer Agreement")

**Responsibility of Wells Fargo.** The wire transfer described in the Outgoing Wire Transfer Request (Page 1) ("Order") may be sent by wire telegraph, telephone, cable or whatever other transmission method Wells Fargo considers to be reasonable. The wire transfer may be transmitted directly to the Beneficiary Bank (the financial institution designated in the Request as the Beneficiary Bank), or indirectly to the Beneficiary Bank through another bank, government agency, or other third party that Wells Fargo considers to be reasonable. Wells Fargo may utilize any funds transfer system or intermediary bank reasonably selected by Wells Fargo, even if its selection differs from instructions in the request.

**Agent.** Wells Fargo may use agents of its choice to perform any of its obligations.

**Limitation of Liability.** Wells Fargo will not be liable for any loss or damage due to the failure, delay, or error of: (1) the method of transmission selected by Wells Fargo, (2) a third party selected by Wells Fargo to receive the Order, or (3) the Beneficiary Bank. IN NO EVENT WILL WELLS FARGO BE LIABLE FOR DAMAGES ARISING DIRECTLY OR INDIRECTLY IF THE ORDER IS EXECUTED BY WELLS FARGO IN GOOD FAITH AND IN ACCORDANCE WITH THE TERMS OF THIS AGREEMENT. REGARDLESS OF THE FORM OR NATURE OF ANY CLAIM OR ACTION, IN NO EVENT WILL WELLS FARGO BE LIABLE FOR PUNITIVE, INCIDENTAL OR CONSEQUENTIAL DAMAGES, WHETHER OR NOT WELLS FARGO SHALL HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

**Reliance on Information Provided.** If a wire transfer request describes the person to receive the wire transfer ("Beneficiary") inconsistently by name and account number, the wire transfer may be made on the basis of the account number even if the account number identifies a person different from the Beneficiary. If a wire transfer request describes a financial institution inconsistently by name and identification number, the identification number may be relied upon as the proper identification of the financial institution.

**International Wire Transfers.** A Payment Order expressed in U.S. Dollars will be sent in U.S. Dollars. Company may request that prior to executing a Payment Order, Wells Fargo convert the amount to be transferred from U.S. Dollars to the currency of a designated foreign government or intergovernmental organization ("Foreign Currency") at Wells Fargo's sell rate for exchange in effect on the date Wells Fargo executes the Payment Order. If the financial institution designated to receive the funds does not pay the beneficiary specified in a Payment Order payable in Foreign Currency and the funds are returned to Wells Fargo, Wells Fargo will not be liable for a sum in excess of the value of the funds after they have been converted from Foreign Currency to U.S. Dollars at Wells Fargo's buy rate for exchange at the time the cancellation of the Payment Order is confirmed by Wells Fargo. Wells Fargo will not be liable for any failure or delay by any financial institution or other third party in the designated foreign country in executing or failing to execute any Payment Order Wells Fargo transmits to a foreign country.

**Refund.** If the Beneficiary Bank does not pay the Beneficiary specified on the Order, a refund will be made only after Wells Fargo has received confirmation of the effective cancellation of the Order and Wells Fargo is in free possession of the funds debited or earmarked in connection with the Order. If the order is payable in Foreign Currency, Wells Fargo will not be liable for a sum in excess of the value of the Order after it has been converted from Foreign Currency to U.S Dollars at Wells Fargo's buying rate for exchange at such time as the cancellation of the Order is confirmed by Wells Fargo.

**Failure to Transfer Proper Amount.** If Wells Fargo is notified that it did not transfer the full amount stated in the Request, Wells Fargo's sole liability will be to promptly execute a second Payment Order in the amount of the stated deficiency. If Wells Fargo executes an instruction in excess of the amount stated in the Request, to the extent that the originator does not receive the benefit of the Order, Wells Fargo will only be liable for any loss of the principal amount transferred in excess of the amount stated in the Request instructions. Additionally, Wells Fargo will be liable for the amount of interest the originator has lost due to the transfer of the excess amount, computed at the then current Federal Funds rate. However, Wells Fargo's liability for loss of interest shall be limited to twenty (20) calendar day's interest. This section sets forth Wells Fargo's complete liability for the order issued under this agreement.

**Finality of orders.** The order will be final and will not be subject to stop payment or recall, except that Wells Fargo may, at the originator's request, make an effort to effect such stop payment or recall. In such case, Wells Fargo will incur no liability for its failure or inability to do so.

**Fees.** In addition to the outgoing wire transfer fee, additional fees may apply. Additional fees can include, but are not limited to: an additional fee for bank initiated transactions, amendment fees, statement fees, fees assessed by beneficiary and intermediary banks, etc. On international outgoing wires, if a SWIFT BIC, IRC, IBAN, or CLABE number is not provided the foreign banks may return the wire or assess a surcharge. Wells Fargo Wire Transfer Fees are disclosed in your most recent Fee and Information Schedule and related amendments.

**Acts of God.** Wells Fargo is excused for delays or failure to execute the Order to the extent that the delay or failure results from a cause beyond the reasonable control of Wells Fargo.

## Wire Transfer Information

**General Information:** You can NOT have a bank as the final beneficiary, unless the wire is a payment to Wells Fargo (i.e.: mortgage, auto loan, etc.). We are required to know who the money is going to, to ensure the funds are not being used to support terrorist or drug activity. We need an account number for the beneficiary OR a complete physical address. No PO Boxes may be used when no account number is provided for the Beneficiary.

**International Wires:** Wires going to foreign countries require different numbers depending on the receiving foreign country. All wire transfer payments destined for Europe should include the SWIFT Bank Identifier Code (SWIFT BIC), International Routing Code (IRC) as applicable, and for participating countries the beneficiary's International Bank Account Number (IBAN). Mexican banks require a CLABE number in addition to the SWIFT BIC.

1. **SWIFT Bank Identifier Code (SWIFT BIC).** The 8 or 11 character SWIFT BIC is a unique series of alpha numeric characters that help to identify a specific financial institution. The SWIFT BIC should be obtained from the beneficiary. To ensure timely delivery please be sure that international outgoing wires include the SWIFT BIC where applicable.

2. **International Routing Code (IRC):** Some countries throughout the international banking community have created International routing codes, which are used in combination with the SWIFT BIC to aid in routing the payment through a main office to a branch. Each country has a specific name for their routing code (i.e., Sort Code in the United Kingdom, Canadian Payments Association Routing Numbers in Canada). Your beneficiary must provide the International routing code to facilitate receipt of an international payment. Sending a wire without the IRC number can delay the wire, or the receiving bank may return the wire when this number is not included in the payment instructions, and additional fees may be assessed.

3. **International Bank Account Number (IBAN):** The IBAN varies by country/institution. Warning! Only the bank servicing an account can provide the correct IBAN of that account and must be obtained from the beneficiary of the wire. Sending a wire to a participating country without the IBAN can delay the wire, or the receiving bank may return the wire when the IBAN is not included in the payment instructions, and additional fees may be assessed.

Case: 17-05084    Doc# 73    Filed: 07/01/19    Entered: 07/01/19 14:56:17    Page 130 of 140

Participating Countries that require an IBAN:

| Albania | Denmark | Greece | Liechtenstein | Netherlands | Slovak Republic |
|---------|---------|--------|---------------|-------------|-----------------|
| Andorra | Dominican Republic | Guadeloupe | Lithuania | New Caledonia | Slovenia |
| Austria | Estonia | Hungary | Luxembourg | Norway | Spain |
| Bahrain | Finland | Iceland | Macedonia | Poland | Sweden |
| Belgium | France | Ireland (Republic of) | Malta | Portugal | Switzerland |
| Bosnia and Herzegovina | French Guiana | Isle of Man | Martinique | Reunion Island | Tunisia |
| Bulgaria | French Polynesia | Italy | Mauritania | Romania | Turkey |
| Croatia | Georgia | Kazakhstan | Mauritius | San Marino | United Arab Emirates |
| Cyprus | Germany | Kuwait | Monaco | Saudi Arabia | United Kingdom |
| Czech Republic | Gibraltar | Latvia | Montenegro | Serbia | |

4. **Mexico CLABE Account Number:** Mexican banks now require an 18 digit CLABE account number be added to the Beneficiary instructions to ensure payment. The CLABE number is required on all Mexican Peso (MXN) and USD payments sent to Mexico. The CLABE account number must be obtained from the beneficiary. If the beneficiary does not have the CLABE account number, please have the beneficiary contact their bank. Wells Fargo does not provide or calculate the CLABE. Sending a wire without a CLABE account number can delay the wire, or the receiving bank may return the wire if the CLABE is not included in the payment instructions, and additional fees may be assessed.

5. **Wells Fargo recommends** that if you do not have a SWIFT BIC, IBAN, IRC, or Mexican CLABE number, that you contact the beneficiary of the wire.If the beneficiary does not have the needed information, please have the beneficiary contact their bank to obtain the appropriate information. Sending international wires without the required information can cause the wire to be delayed, returned, or assessed additional fees. For International outgoing wires only. When sending in foreign currency, please ensure the beneficiary's account accepts the designated foreign currency. International foreign currency wires are generally less expensive to send as compared with International USD wires (the Wells Fargo wire fee is always less when the wire is sent in foreign currency and Wells Fargo does not charge a converting fee; we also offer competitive exchange rates.) For International wires in foreign currency that are equal to or over $100,000 U.S. equivalent, please call your local Foreign Exchange Specialist at 800-786-5593, to obtain a contract number.

**EXHIBIT 3**

ISNA, LLC

83-751/631 11019

Date 05/30/12

PAY to the order of _Allepiant Title_ | $ 500.00

_J.V. hundred_ _____ Dollars

Wells Fargo Bank, N.A.
Florida
wellsfargo.com

For _Refle the renewal of the LLC_     _Leb Diozu_

⑆063107513⑆  1048⑈

ʹ MorganChaseBank          3251

FOR DEPOSIT ONLY
Allegiant T. He, LLC
Acct #
9389

REQUEST 0000721 0156000000 500.00
ROLL ECIA    0531      2991
JOB ECIA E ACCT        1048
REQUESTOR U540701
19872462 05/14/2018 Research 19872681 HOGAN HISTORICAL: 000

Summons and Subpoenas Department
S4001-01F
Phoenix AZ 85038

132

83-751/631 11019

07/12/13

Date

PAY to the order of    CHS    LLC                                      $ 75.00

-Seventyfive-                                                         Dollars

Wells Fargo Bank, N.A.
Florida
wellsfargo.com

For    Invoice # 501-2996                          Cal Jay

⑆063107513⑆        1048⑈

Seq: 169
Batch: 293971
Date: 07/30/13

Seq:00169 07/30/13
BAT:293971 CC:0750109386
WT:01 LTPS:Jacksonville
BC:Alton Road BC FL7-515

ENDORSE HERE
CMS. //C

REQUEST 0000721 0156000000 75.00
ROLL ECIA      0730          9230
JOB ECIA E ACCT              1048
REQUESTOR U540701
19872462 05/14/2018 Research 19872681 HOGAN HISTORICAL: 000

Summons and Subpoenas Department
S4001-01F
Phoenix AZ 85038

133

**Withdrawal**

3827

WELLS FARGO

(Check One)  ☒ Checking  ☐ Savings  ☐ Money Market Access  ☐ Command

Account Number

\* _____ 1048    Date    1/17/14

Please print. Name
CARLO DIPASQUALE

I authorize this withdrawal and acknowledge receipt of the amount indicated below
Please sign in teller's presence  Two forms of ID may be required.

Please print  Street Address, City, State, Zip Code

twenty    Thousand                          $20,000.

**Dollars**

Bank Use Only (When SVT Is Not Available)

| Customer Id | Exp date | Token Verified (✓) ☐ | Approval |
|---|---|---|---|

TLR8586 (05/11)  write to 12352257

⑈3827⑈ ⑆5000006941⑆

7040400291

REQUEST 00007210156000000 20000.00
ROLL ECIA ____ 0117 _____ 0292
JOB ECIA E ACCT _____ 1048
REQUESTOR U540701
19872462 05/14/2018 Research 19872681 HOGAN HISTORICAL: 000

Summons and Subpoenas Department
S4001-01F
Phoenix AZ 85038

63-751/631 11019

Date 1/23/2014

PAY to the order of  Oscar Ry CPA

$ 2,500.00

Two thousand five Hundred and 00/100 — Dollars

Wells Fargo Bank, N.A.
Florida
wellsfargo.com

For Inv. 2897

⑈063107513⑈  ⑈1048⑈

ENDORSE HERE

PAY TO THE ORDER OF
WACHOVIA BANK, N.A.
8432
FOR DEPOSIT ONLY
OSCAR O. REY, CPA, PA
8975

REQUEST 000072101 56000000 2500.00
ROLL ECIA       0123        5742
JOB ECIA E ACCT            1048
REQUESTOR U540701
19872462 05/14/2018 Research 19872681 HOGAN HISTORICAL: 000

Summons and Subpoenas Department
S4001-01F
Phoenix AZ 85038

135

# Withdrawal

8253

WELLS FARGO

(Check One) ☐ Checking ☐ Savings ☐ Money Market Access ☐ Command ☒

Account Number

\* ~~████~~048

Date

Please print Name

CARLO DIRASQUALI

Please print. Street Address, City, State, Zip Code

I authorize this withdrawal and acknowledge receipt of the amount indicated below.
Please sign in teller's presence. Two forms of ID may be required.

X _____

for Teenthassun oblias

$ 14,000.00

**Dollars**

Bank Use Only (When SVT Is Not Available)

TLR8586 (06/11) wro11s 12382257

| Customer Id | Exp date | Token Verified (✓) ☐ | Approval |
|---|---|---|---|

⑈8253⑈ ⑆500000694⑆

7840310257

REQUEST 0000721 01 56000000 14000.00
ROLL ECIA ████ 0124 ████ 0257
JOB ECIA E ACCT ████ 1048
REQUESTOR U540701
19872462 05/14/2018 Research 19872681 HOGAN HISTORICAL: 000

Summons and Subpoenas Department
S4001-01F
Phoenix AZ 85038

136

83-751/631 11019

Date 1/24/13

PAY to the order of   SUN TRUST TITLE

$ 10,000.00

— ten Thousand —   Dollars

WELLS FARGO   Wells Fargo Bank, N.A.
Florida
wellsfargo.com

1605 Euclid Ave.

For  DEPOSIT  UNIT A-2   Cole Dyes   MP

⑈063107513⑈  ⑈1048⑈

20140127622390843386 03  1346

Regions Bank >062000019<

3386 03  1346
Regions Bank >062000019<

FOR DEPOSIT ONLY
SUN TRUST TITLE, LLC
ACCT #         5265

REQUEST 00007210156000000 10000.00
ROLL ECIA      0127        7330
JOB ECIA E ACCT            1048
REQUESTOR U540701
19872462  05/14/2018 Research 19872681 HOGAN HISTORICAL: 000

Summons and Subpoenas Department
S4001-01F
Phoenix AZ  85038

137



65-751/631 11019

Date 01/31/14

PAY to the order of     Allepiant TiTe LLC                    $ 500.00

five hundred                                                 Dollars

Wells Fargo Bank, N.A.
Florida
wellsfargo.com

For  ISNA LLC  INVOICE # ATL-113        Carl Prez

⑆063107513�⑆        1048⑆

For Dpsit only
Allegiant Title, LLC
Acct # ____9389

JPMorganChaseBank        11165

CREDITED TO ACCOUNT OF
WITHIN NAMED PAYEE
FOR DEPOSIT ONLY
JPMorgan Chase Bank, N.A.

REQUEST 0000721 01 56000000 500.00
ROLL ECIA     0226     1211
JOB ECIA E ACOT        1048
REQUESTOR U540701
19872462  05/14/2018 Research 19872681 HOGAN HISTORICAL: 000

Summons and Subpoenas Department
S4001-01F
Phoenix AZ 85038

138

# Withdrawal

4453

WELLS FARGO

(Check One)  [X] Checking  [ ] Savings  [ ] Money Market Access  [ ] Command

Account Number

＊ ▓▓▓ 1 0 4 8     Date  2/26/14        sig ok

Please print: Name

Isng LLC

Please print: Street Address, City, State, Zip Code

I authorize this withdrawal and acknowledge receipt of the amount indicated below. Please sign in teller's presence. Two forms of ID may be required.

x ▓▓▓

Two thousand and ten

$2,010.00  $  2010.00
02/26/14 Dollars AM Co 287

Bank Use Only (When SVT is Not Available)

| Customer Id. | Exp. date: | Token Verified (✓) Q | Approval: |

TL76508 (09/11) WF0116 12382257

01 ▓▓▓ 0009
RT ▓▓ 7513 Acct ▓▓▓ 1048

⑈4453⑈ ⑆500000694⑆

REQUEST 000072101 56000000 2010.00
ROLL ECIA  ▓ 0226 ▓▓▓ 7942
JOB ECIA  E  ACCT ▓▓▓ 1048
REQUESTOR U540701
19872462  05/14/2018 Research 19872681 HOGAN HISTORICAL: 000

Summons and Subpoenas Department
S4001-01F
Phoenix AZ  85038

139