

The following constitutes the order of the Court.
Signed: August 20, 2019

_____
M. Elaine Hammond
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br>CECCHI GORI PICTURES, a California corporation; CECCHI GORI USA, INC., a California corporation,<br><br>Debtor(s). | Case No. 16-53499 MEH<br>(Jointly Administered with Cast No. 16-53500)<br><br>Chapter 11 |
| CECCHI GORI PICTURES and CECCHI GORI USA, INC.,<br><br>Plaintiffs.<br>v.<br>GABRIELE ISRAILOVICI, an individual, GIOVANNI NAPPI, an individual, and KLAGI LIMITED (aka KLAGI MANAGEMENT LIMITED and KLAGI LTD.), a Hong Kong corporation,<br><br>Defendants. | Adv. No. 17-5084<br><br><br><br>Date: July 15, 2019<br>Time: 11:00 a.m.<br>Ctrm: 3020 |

## MEMORANDUM DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Gabriele Israilovici and Giovanni Nappi seek to have this court find as a matter of law that the § 541 Claims are time-barred. The applicable statute of limitations for

these claims is three years pursuant to California Code of Civil Procedure § 338. Defendants argue Plaintiffs, Cecchi Gori Pictures, Inc. and Cecchi Gori USA, Inc. ("Debtors" or "Plaintiffs") were on notice of the potential claims no later than September 18, 2013, and therefore, the three-year statute of limitations ran prior to Debtors' filing Chapter 11 petitions on December 16, 2016. They further argue that no equitable tolling applies to extend the statute of limitations beyond the Petition Date, which would have initiated the two-year tolling period provided by 11 U.S.C. § 108.

The question of when Plaintiffs discovered or should have discovered a claim is a question of fact. *Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1309 (9th Cir. 1982). Where the "uncontroverted evidence irrefutably demonstrates plaintiff discovered or should have discovered the fraudulent conduct," it may be decided as a matter of law. *Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873, 877 (9th Cir. 1984). The burden of proof is on Plaintiffs to designate specific facts demonstrating the existence of genuine issues for trial. This requires evidence from which a jury could reasonably infer a decision in Plaintiff's favor. *Dzung Chu v. Oracle Corp.*, 627 F.3d 376, 387 (9th Cir. 2010).

For the reasons set forth below, I find that the standard for termination of tolling based on adverse domination advocated by Defendants is not applicable as a matter of law. Even if the standard they assert were to apply, then genuine issues of material fact preclude summary judgment. In addition, Defendants' request to limit Plaintiffs' assertions based on judicial estoppel is without merit. Accordingly, Defendants' motion is denied.

*Background*

The parties agree on a number of key facts:

1. On July 25, 2011, Davide Franco and Sergio Torri, liquidators of Nous, S.r.l. ("Nous"), filed suit in Los Angeles Superior Court (the "LASC Action"). The complaint included three causes of action seeking (i) declaratory relief, (ii) recognition of a foreign country judgment, and (iii) appointment of a receiver. The purpose of the suit was to gain control over proceeds of a judgment entered in separate litigation (the "Nunnari Judgment") and prevent Vittorio

1  Cecchi Gori ("Gori") (or anyone purporting to act on his behalf) from
2  transferring proceeds of the Nunnari Judgment, until such time as Nous'
3  attempt to seek ownership and control of the Debtors was resolved.

4  2. Nous asserted ownership of Debtors through its 100% ownership of Promint
5  Holdings, S.A. ("Promint"). Promint owned 100% of Cecchi Gori Group
6  Europe B.V. ("BV). BV then owned all the shares of Debtors.

7  3. Gori and Debtors, under Gori's control, disputed this and asserted that Gori
8  owned all the shares of Debtors.

9  4. The LASC Action resulted in five years of litigation, including a request for
10  temporary restraining order, extensive discovery, and a stay pending appeal.
11  Ultimately, the judge in the LASC Action issued an order striking the answers
12  filed by Gori and the Debtors. On September 8, 2016, a judgment was issued
13  in favor of Nous finding that Nous was the owner of Debtors and entitled to
14  exercise control over them.

15  5. In December 2016, Andrew De Camara was appointed CEO of the Debtors.

16  6. While the LASC Action was pending, Gori and the Debtors entered into a
17  settlement of the Nunnari Judgment with Nunnari dated November 13, 2012
18  (the "Nunnari Settlement"). Pursuant to it, Nunnari paid $5,450,000 to Cecchi
19  Gori USA the following day. In connection with the Nunnari Settlement, Gori
20  and the Debtors executed a satisfaction of judgment.

21  Correspondence about this event indicates that by June 2013, Nous learned that a
22 settlement between Gori with the Debtors and Nunnari may have occurred. Through counsel,
23 Nous requested confirmation of the settlement. Subsequently, Gori's counsel confirmed the
24 existence of the Nunnari Settlement but refused to provide details of it based on a
25 confidentiality provision in the document.

26  The parties dispute how correspondence from July and September 2013 regarding the
27 Nunnari Settlement should be interpreted. Counsel for Nous sent their client a detailed letter
28 dated July 23, 2013, stating that recent information suggested that a settlement of the Nunnari

Judgment may have occurred. Two months later, counsel for Nous sent a letter dated September 18, 2013 to Gori's counsel with language that is subject to interpretation. In particular, the parties debate the meaning of the following sections (emphasis added):

- "You know well that I knew nothing about the purported settlement because when I asked you why, in the more than six months since the agreement was *allegedly* entered into, you had never informed Plaintiffs or the Court that such an agreement existed, you responded that you had no obligation to do so. You also know well that the vast amount of time and resources my clients and the Court have expended since the beginning of this year on the TRO and related exercises was explicitly for the purpose of protecting the Nunnari judgment *that your client had apparently already wasted.*"
- "Rather, you simply mentioned a willingness to discuss settlement now that your client had surreptitiously absconded with the very asset that this lawsuit was designed to protect. And, what I explicitly told you is that it would be impossible for my clients to discuss settlement with your client until the true facts surrounding the secret settlement were discovered . . . . *We still have not seen any evidence reflecting a settlement agreement – only what appears to be an unfiled Satisfaction of Judgment.*"
- "On that point, you refused to provide any information about the settlement agreement, other than the approximate date and the fact that *the settlement proceeds are "gone."* You would not provide any other information."
- "and at the end of the day, it is our perspective that nothing can move forward *until we obtain full disclosure of your client's and the CG Entities' disposition of the Nunnari judgment.*"

Defendants assert that this language establishes that Debtors (via Nous' counsel) were on notice of the transfers.

Yet, two and a half years later, in March 2016, Gori stated in response to an interrogatory that no dissipation of the Nunnari Judgment funds had occurred.

In considering these issues it is important that recognize that Nous was seeking information on whether the Nunnari Settlement existed, and if so, its terms and what happened with the funds – but the Nunnari Settlement does not underly the § 541 Claims. Instead, Plaintiffs allege claims based on the argument that Defendants, with or without the knowledge of Gori, transferred funds received from the Nunnari Settlement for their own benefit.

*Analysis*

1. **Adverse Domination Doctrine**

The parties dispute the standard to be applied to determine when equitable tolling based on the "adverse domination" doctrine should terminate. The adverse domination doctrine in California has been expressed in various ways over time. In *Beal v. Smith*, 46 Cal. App. 271, 279 (1920), the court stated:

But where, as alleged here, the corporation and its board of directors were wholly under the domination of those who committed the original fraud the corporation is deemed to be in the same position as an incompetent person or a minor without legal capacity either to know or to act in relation to the fraud so committed, and during such period of incapacity the statute of limitations does not run, at least, against an innocent stockholder who was without knowledge of the fraud.

Subsequently, the California Supreme Court in *San Leandro Canning Co. v. Perillo*, 211 Cal. 482, 487 (1931) stated that it is a "well-settled principle of [California] law[] that the statute of limitations does not commence to run against unlawful acts and expenditures made by or under the direction of the directors of the corporation while they were in full control of its affairs and of the expenditure of its funds."

Defendants assert that where adverse domination exists, the party seeking to terminate the tolling period must show "that there was someone who had the knowledge, ability and motivation to bring suit during the period in which the defendants controlled the corporation."

*Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873, 879 (9th Cir. 1984). Relying on this line of cases, Defendants assert that Nous had the knowledge, ability and motivation to bring suit, such that any tolling based on adverse domination expired more than three years prior to Debtors' bankruptcy filings.

In contrast, Debtors assert that where adverse domination is asserted by a corporate successor to prior wrongdoers, the only question is when the former directors were no longer in control of the corporation pursuant to *San Leandro Canning*.

The parties agree that the adverse domination doctrine applies to agents, employees, and third-parties that participated in the wrongdoing. *See Admiralty Fund v. Peerless Ins. Co.*, 143 Cal. App. 3d 379, 390 (Cal. Ct. App. 1993).

Underlying the dispute over the applicable standard is Defendants' contention that the LASC Action was a shareholder derivative suit whereby Nous, the shareholder, was on notice of the Nunnari Settlement and the dissipation of assets that followed more than three-years prior to the Petition Date.

As a result, two issues must be addressed. First, whether the LASC Action was a shareholder derivative suit. Second, the standard to apply for termination of adverse domination tolling.

(a) <u>The LASC Action was not a shareholder derivative suit.</u>

The LASC Action was precipitated by an award of judgment in favor of Gori and Debtors, and against Nunnari for over $13,000,000 in 2011 ("Nunnari Judgment"). After learning of the Nunnari Judgment, the Criminal Court of Rome ordered seizure of the Nunnari Judgment for satisfaction of Debtors' obligations to an Italian bankruptcy estate. The liquidators of Nous then filed the LASC Action to gain control over the proceeds of the Nunnari Judgment by obtaining a declaration that they were the ultimate owners of Debtors, through two other entities.

The LASC Action sought relief on three claims: (1) declaratory relief, (2) recognition of foreign-country judgment, and (3) appointment of receiver. While Defendants recognize

that the LASC Action was not identified as a shareholder derivative action, they nevertheless contend that it was one in fact.

"It is fundamental that a corporation is a legal entity that is distinct from its shareholders." *Grosset v. Wenaas*, 42 Cal. 4th 1100, 1108 (Cal. 2008). The board of directors of a corporation has the authority to manage its business and affairs – its shareholders do not. As the corporation is a separate legal entity, its shareholders may not bring a direct cause of action. Instead, their alternative is to "bring a derivative suit to enforce the corporation's rights and redress its injuries when the board of directors fails or refuses to do so. When a derivative suit is brought to litigate the rights of the corporation, the corporation is an indispensible party and must be joined as a nominal defendant." *Id.* As recognized in Federal Rule of Civil Procedure 23.1, a derivative action is present "when one or more shareholders or members of a corporation . . . bring a derivative action to enforce a right that the corporation . . . may properly assert but has failed to enforce."

In the LASC Action, Nous was not seeking to have an officer of the Debtors enforce a corporate right or redress an injury resulting from a failure to act. Instead, it was seeking to establish its ownership of Debtors. California Corporations Code § 800(b)(1) imposes stock ownership requirements for standing to pursue a shareholder's derivative suit. In order to bring a derivative action, an individual must be a shareholder both when the derivative action is filed and when the event complained of occurred. *See Grosset*, 42 Cal. 4th at 1114. As such, Nous could not bring a derivative suit until its ownership interest was recognized— which occurred years after the Nunnari Judgment was issued or settled.

Defendants' reliance on *Starbird v. Lane*, 203 Cal. App. 2d 247, 254-55 (Cal. Ct. App. 1962) is misplaced. This case briefly states the general elements of a derivative action. Yet it does not address the key issues here – an assertion of ownership interest and standing.

(b) <u>Adverse domination tolling terminates with change of control.</u>

In their Motion, Defendants relied upon the standard provided in *Mosesian*, that a moving party seeking to establish the end of adverse domination must show "that there was

someone who had the knowledge, ability and motivation to bring suit during the period in which the defendants controlled the corporation." *Mosesian*, 727 F.2d at 879.

Debtors assert that this is an action brought directly by Debtors through new management and not a shareholder derivative action; therefore, adverse domination tolling ends once the wrongdoers are no longer in control of a corporation and its use of funds. *San Leandro Canning*, 211 Cal. at 487. As stated above, I agree that neither the LASC Action or this adversary proceeding are shareholder derivative actions.

The facts in *San Leandro Canning* are similar to those presented – the plaintiff, a California corporation, brought claims against its former directors who were alleged to have illegally withdrawn money from the corporation for their own benefit. In its analysis, the California Supreme Court recognized "what we deem to be a well-settled principle of law, that the statute of limitations does not commence to run against unlawful acts and expenditures made by or under the direction of the directors of the corporation while they were in full control of its affairs and of the expenditure of its funds." *Id.* at 487. The court grounded its statement on the prior cases of *City of Oakland v. Carpentier*, 13 Cal. 540, 552 (1859), *Pacific Vinegar Works v. Smith*, 152 Cal. 507, 514 (1907), and *Whitten v. Dabney*, 171 Cal. 621, 629 (1915). From this, Debtors assert that so long as they remained subject to Gori's control, equitable tolling continued. Defendants do not contest that Nous gained actual control of Debtors in September 2016, upon entry of judgment in the LASC Action.

In response, Defendants assert that equitable tolling based on control is limited by discovery of the fraud by a protesting shareholder. Yet, none of the cases they cite stand for this principle. Instead, the cases they rely upon stand for the principle that adverse domination tolling only applies to claims based on fraud, not negligence. *See FDIC v. Dawson*, 4 F.3d 1303, 1312 (5th Cir. 1993) (principle stated in finding that an action for fraud committed against a corporation is tolled but the tolling does not apply to a claim based upon negligence); *Burt v. Irvine Co.*, 237 Cal. App. 2d 828, 867 (general statement of the doctrine, citing *Fox v. Hale & Norcross Silver Min. Co.*, 108 Cal. 369 (1895), which addresses the

shorter period for asserting a claim against directors based on negligence than for fraud). Accordingly, I find these arguments without merit.

While this motion presents a strong case for sua sponte entry of summary judgment for Plaintiffs, I decline to enter it here as Defendants were not provided with notice and a reasonable time to respond in accordance with Federal Rule of Civil Procedures 56(f)(1), made applicable by Federal Rule of Bankruptcy Procedure 7056.

(c) <u>Even if the court were to apply the standard proposed by Defendants, disputed issues of material fact preclude summary judgment.</u>

Defendants assert that Nous had the knowledge, ability and motivation to bring suit, such that equitable tolling based on adverse domination ended as of September 2013. Their analysis relies on disputed issues of fact.

*Knowledge:* The heart of Defendants' motion is that Nous had the requisite knowledge that Debtors' assets were missing as of the September 18, 2013 letter from Nous' counsel to Gori's counsel. While this letter confirms knowledge of the Nunnari Settlement, the meaning of the disputed language relied upon by Defendants is subject to multiple interpretations.[1] While Defendants appears to argue that Nous' counsel refers to dissipation of the settlement proceeds in the letter, the disputed language could also be interpreted as referencing the Nunnari Judgment – the very asset that the LASC Action was designed to protect – which Gori settled for a significantly reduced, undisclosed payment. That the settlement proceeds are "gone" does not resolve this question on its own, particularly in light of Gori's statement of the exact opposite three years later under penalty of perjury. Knowledge of the Nunnari Settlement fails to provide Nous or Debtors with the requisite knowledge of wrongdoing. The § 541 Claims do not arise from Gori receiving the proceeds of the Nunnari Settlement; they arise from events that occurred after Cecchi Gori USA received the funds. Thus, whether Nous had sufficient knowledge of the subsequent transfer of the settlement proceeds is a material fact subject to genuine dispute.

---

[1] The disputed language is quoted in the background section.

*Ability*: Defendants contend that Nous was the ultimate shareholder of Debtors from the moment it filed the LASC Action in 2011, thereby transforming the LASC Action into a shareholder derivative action. As made clear at the hearing on the motion, the point at which Nous became a shareholder of Debtors is highly contested. Defendants contend that because the complaint brought by Nous used the present tense in referring to its interest in Debtors and a default judgment was entered five years later, that Nous was a shareholder upon filing of the complaint in 2011. Plaintiffs argue that the shareholder interest of Nous was not manifest from the prior Italian proceedings[2] and not recognized and enforceable until entry of judgment in 2016. If the superior court had found that Gori was the ultimate shareholder of Debtors then Nous would have had no claim to Debtors or their assets.

*Motivation*: It is undisputed that if Nous had knowledge of the dissipation of assets and the ability to pursue a claim to recover them, it had the motivation to pursue their recovery. Given the highly contentious nature of the LASC Action, the fact that Nous did not pursue additional discovery or take further action to seek their recovery is a strong indicator that it lacked the requisite knowledge.

In sum, Defendants' assertion that equitable tolling was ended by Nous' obtaining the knowledge, ability and motivation to pursue actions against the wrongdoers no later than September 2013 is not established by undisputed facts. As such, summary judgment must be denied on this theory.

**2. Judicial Estoppel**

In the alternative, Defendants assert that judicial estoppel should apply to limit Debtors' position in this adversary proceeding. They identify two acts warranting judicial estoppel. First, they argue that Nous' filing of the LASC Action should bar Debtors from asserting Nous "did not really control the stock of Debtors." Motion, Dkt 62-1, p. 23, lines 17-19. Second, they contend that filings made by Nous in the LASC Action should bar Debtors from asserting that Nous "neither knew or suspected Gori's alleged defalcations by January 8, 2013." Motion, p. 24, lines 15-16.

---

[2] As the Italian Criminal Court found that Gori controlled Debtors, the Italian proceedings would indicate that Gori, not Nous, as the shareholder of Debtors.

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 782 (9th Cir. 2001). The doctrine is intended "to protect against a litigant playing 'fast and loose with the courts' by asserting inconsistent positions." *Rockwell Int'l Corp. v. Hanford Atomic Metal Trades Council,* 851 F.2d 1208, 1210 (9th Cir.1988).

Three factors are considered in determining whether judicial estoppel should apply:

(1) "a party's later position must be 'clearly inconsistent' with its earlier position";

(2) whether the party succeeded in its prior position, because "[a]bsent success in a prior proceeding, a party's later inconsistent position introduces no 'risk of inconsistent court determinations' "; and

(3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."

*New Hampshire v. Maine,* 532 U.S. 742, 750–51 (2001) (citations omitted).

Application of judicial estoppel is at the discretion of the court. *See Hamilton*, 270 F.3d at 782; *New Hampshire v. Maine,* 532 U.S. at 752.

(a) <u>Nous is not judicially estopped from asserting that it did not control Debtors prior to entry of judgment in the LASC Action.</u>

Defendants' position that Debtors are estopped from asserting that Nous was not in control of them prior to entry of judgment in the LASC Action is inconsistent with Nous filing suit to adjudicate and obtain recognition of its ownership interest in Debtors. In fact, this argument provides the perfect example of why judicial estoppel is at the discretion of the court rather than by rote application.

Defendants would have this court focus solely upon entry of default judgment in the LASC Action. Applying the basic principle that entry of default is deemed an admission of all well-pled facts, Defendants extrapolate that any statements made by Nous in the complaint or TRO application should be attributed to Debtors, resulting in a finding that Nous was always subject to Debtors' control. This argument ignores the five years of litigation between filing

of the complaint and entry of judgment. Within that time period, extensive discovery, a TRO request, an appeal, and a stay of proceedings occurred. To view the allegations of a complaint as pre-ordained, and thereby bar the subsequent beneficiaries of the LASC Action from pursuit of claims made possible by the result of five years of litigation is a mockery of judicial estoppel.

    (b) <u>Debtors' position that Nous did not know or suspect Gori's alleged defalcations is not clearly inconsistent with Nous' seeking of a TRO in the LASC Action.</u>

Finally, Defendants assert that Debtors should be judicially estopped from asserting that Nous did not know or suspect Gori's alleged defalcations by the issuance of a TRO in January 2013. This allegation fails on the first factor – whether Debtors' position is clearly inconsistent with Nous' position in seeking the TRO. Nous sought the TRO based upon Gori's continuing denial of Nous's ownership and control over Debtors and his refusal to stand down as their officer or director. *See* Ex Parte Application for Temporary Restraining Order, Komorsky Decl, Exh. 6. Based on Gori's past history, they requested and obtained a TRO maintaining the status quo. The TRO Application in no way references the Nunnari Settlement or the subsequent transfers that underlie this adversary proceeding. As such, there is nothing "clearly inconsistent" in the requests for relief such that Debtors should be judicially estopped from pursuing the § 541 Claims.

**3. Remaining equitable arguments need not be addressed.**

Debtors assert additional arguments in opposition to summary judgment. The court need not address them here as Defendants have not prevailed on their requests for a finding that the § 541 Claims are time-barred as a matter of law.

*Conclusion*

For the reasons stated herein, summary judgment is denied. An order will be entered contemporaneously herewith.

For the reasons set forth in the Memorandum Decision filed contemporaneously herewith, the Motion for Summary Adjudication that the Statute of Limitations Bars the First,

Second and Third Claims for Relief filed by defendants Gabriele Israilovici and Giovanni Nappi is hereby DENIED.

**END OF ORDER**

**COURT SERVICE LIST**

All ECF Recipients